**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

PEDRO LUGO,

*Individually and on Behalf of a Class of*
*similarly situated individuals*,

        Plaintiff,

    v.

INOVA HEALTH CARE SERVICES,

 Serve:  CT Corporation System
       4701 Cox Road, Suite 285
       Glen Allen, VA 23060

        Defendant.

Case Number:

**CLASS ACTION COMPLAINT**

 Jury Trial Demanded

**CLASS ACTIONT COMPLAINT**

    Plaintiff Pedro Lugo (hereinafter referred to as "Plaintiff"), individually and on behalf of other similarly situated individuals, brings this Class Action Complaint against Defendant Inova Health Care Services (hereinafter "Inova Health" or "Defendant") for Inova Health's willing and unlawful disclosure of patients' personally identifiable information and protected health information, and to obtain redress for all persons harmed by Defendant's conduct. Plaintiff alleges the following based on personal knowledge as to Plaintiff's own experiences, and as to all other matters, upon information and good faith belief, including an investigation conducted by Plaintiff's attorneys.

**INTRODUCTION**

    1.    This case concerns Inova Health's misuse and disclosure of Plaintiff's and putative Class Members' statutorily protected Personally Identifiable Information ("PII") and Protected

Health Information ("PHI") (collectively referred to as "Private Information") to third parties, including Facebook and Google.

2.      Specifically, Inova Health disclosed Plaintiff's and other Class Members' Private Information via tracking technology known as a tracking pixel that was installed on Inova Health's websites and/or MyChart Patient Portal.

3.      A pixel is a piece of code that "tracks the people and type of actions they take" while visiting a website.[1] Pixels are routinely used to target specific customers with advertisements by utilizing the data gathered through the pixel to build profiles for the purposes of retargeting and future marketing.

4.      Facebook and Google employ multiple tools to aid in the effectiveness of their tracking pixels in gathering data and information and to enhance their own ad placement conversions, or ads that lead to sales or services provided by its customers. For example, some of the Google tools are known as Google Analytics and Google Tag Manager. Facebook uses Conversions API, among other tools.

5.      Information about a person's physical and mental health is among the most confidential and sensitive information in our society, and the mishandling or misuse of PHI can have serious repercussions to the patient, including workplace discrimination and denial of insurance coverage. Despite these risks, Inova Health deployed the Pixels' tracking technology to surreptitiously collect patients' Private Information including, but not limited to, demographic information such as email address, phone number, computer internet protocol ("IP") address and contact information entered into Inova Health's websites, and information such as appointment type and date, physician selected, button/menu selections and/or content, including PHI, typed into

---

[1] www.facebook.com/business/goals/retargeting.

free text boxes on Inova Health's websites without Plaintiff's and Class Members' knowledge or consent.

6.      Inova Health willfully and intentionally incorporated the tracking pixels into its websites and MyChart portal and did not disclose to its patients or potential patients that their Private Information would be shared with any third parties, including Facebook and Google.

7.      Plaintiff and the other Class Members are unaware that their Private Information has been surreptitiously transmitted to Facebook and Google and did not consent to the collection, disclosure, and/or use of their Private Information in this manner.

8.      The use of tracking pixels on its websites and patient portal, MyChart, was a conscious decision by Inova Health to prioritize profit over its own responsibility to its patients' and their HIPAA protected privacy rights and constitutes and has caused Plaintiff and the other Class Members actual harm and entitles them to statutory damages under the Electronics Communication Privacy Act ("ECPA") 18 U.S.C. § 2511(1).

9.      As such, Plaintiff seeks to remedy these harms and brings causes of action for (i) Breach of Implied Contract; (ii) Unjust Enrichment; and (iii) Violations of the ECPA 18 U.S.C. § 2511(1).

## JURISDICTION AND VENUE

10.      This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as the action arises under the federal Electronics Communication Privacy Act, 18 U.S.C. § 2511.  The court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the state law claims because they form part of the same case or controversy as the claims arising under federal law.

11.    This court has personal jurisdiction over Defendant because Defendant's principal place of business is in this District and the acts and omissions giving rise to Plaintiff's claims occurred in and emanated from this District.

12.    Venue is proper in this District. Defendant is headquartered and, thus, located in this District; Defendant regularly conducts business in this District; and because a substantial part of the events or omissions giving rise to the claims herein occurred within this District.

## PARTIES

13.    Inova Health is a non-profit hospital organized under the laws of the state of Virginia and headquartered within Falls Church, Virginia. Inova conducts substantial business throughout Virginia and in several parts of Maryland. Inova's headquarters are located at 8110 Gatehouse Road Suite 200-East Tower, Falls Church, VA.

14.    At all relevant times, Plaintiff Pedro Lugo has been a resident of the state of Virginia. Plaintiff is a patient at Inova Health and has used Inova Health's websites and MyChart Patient Portal.

## COMMON FACTUAL ALLEGATIONS

15.    Inova Health is a not-for-profit health organization based in Falls Church, Virginia. Providing over 2 million patient visits annually, Inova Health is one of the largest healthcare providers in the DC metro area. Despite its position as a massive and trusted healthcare provider, Inova Health knowingly configured and implemented a software device known as a tracking pixel to collect and transmit information from its websites to third parties, including confidential patient searches performed through the "Find a Doctor" tab on its websites and, upon information and good faith belief, information communicated in the sensitive and presumptively confidential Patient Portal.

16.    Inova Health's websites and patient portal are used to connect Plaintiff and putative Class Members to Inova's Health's services with the goal of increasing profitability.

17.    In furtherance of that goal, and to increase the success of its profitability, advertising, and marketing, Inova Health purposefully installed tracking pixels on its websites and patient portal. In doing so, Inova Health surreptitiously tracked, recorded, transmitted, and disseminated Plaintiff's and the other Class Members' private and protected communications with Google, Facebook, and other third parties, including communications that contained Plaintiff's and the other Class Members' Private Information.

18.    Plaintiff and the other Class Members did not intend or have any reason to suspect their Private Information would be shared with Facebook, Google, or other third parties, or that Inova Health was tracking their every communication and disclosing the same to third parties when they entered highly sensitive information on Inova Health's websites and/or patient portal.

19.    Plaintiff and the other Class Members never consented, agreed, authorized, or otherwise permitted Inova Health to disclose their Private Information.

20.    Upon information and good faith belief, Inova Health intercepted and disclosed Plaintiff's and the other Class Members': (1) status as medical patients; (2) communications with Inova Health through its websites and patient portal; and (3) information about their medical appointments, location of treatments, specific medical providers, specific medical conditions and treatments, and related information.

21.    Inova Health deprived Plaintiff and the other Class Members of their privacy rights when it implemented tracking pixels that surreptitiously tracked, recorded, and disclosed Plaintiff's and the other Class Members' confidential communications and Private Information to

Facebook, Google, and/or other unauthorized third parties without notifying them and without obtaining their express written consent.

### *Google Tracking Pixels, Analytics and Tag Managers*

22.     Google is one of the largest companies in the world with a market capitalization of over $1 trillion dollars. While Google has operations in the "tech" sector, the largest portion of its business is made in advertising. In 2022 alone Google generated over $224 billion in advertising revenue.[2]

23.     For the last several years, Google has seen approximately 80% of its total revenue come from advertising.

24.     Google's pixel integrates with Google's advertising products, such as Google Ads and Search Ads 360, in order to direct individuals to Google's ad networks and products by creating and expanding upon profiles and data points on individuals so as to place more effective advertisements.

25.     Google Analytics launched in 2005 as a tool for companies to use to analyze website traffic. Since then, Google has expanded upon Google Analytics in order to improve data collection and accuracy of the information collected. It now also offers new tracking code and tools to track user behavior across multiple devices.[3]

---

[2] *See* www.statista.com/statistics/266249/advertising-revenue-of-google.
[3] Google Analytics provides "a complete understanding of your customers across devices and platforms" with the ability to "understand how your customers interact across your sites and apps throughout their entire lifestyle" and "uncover new insights and anticipate future customer actions with Google's machine learning to get more value out of your data". *Analytics*, GOOGLE, http://marketingplatform.google.com/about/analytics/ (Last Visited 2/19/24)

26.    Google's Tag Manager is an additional offering to Google clients that allows for all the different Google tracking products that are in use to be viewed in one central location so that visitor's activity can be tracked across websites and apps.[4]

27.    Due to the amount of user information obtainable to its clients, Google Tracking Technology is one of the most popular tracking and analytics platforms available.

28.    Google's tracking pixel is incorporated into its partners' websites and apps, in this case Inova Health's websites and MyChart patient portal, by inserting a piece of code into each page on the website or app. This code tracks a visitor's interaction with the website and app every time they visit it, including what they visit, what they click on, and what they type into any form fields on the website. This code also collects identifiable information, including IP addresses, User IDs, and Client IDs.

29.    After the Google pixel collects the data, it packages and sends it to Google for processing using its analytics platforms. Once it is sent to Google for processing, the data is stored in a Google database where it can be used for further profile building and advertising decisions.

30.    Google will then send its clients data reports derived from the analysis of the website and/or app. traffic which includes where visitors originated from (i.e. what website brought them to the client's website), visitor engagement with their website, and user demographics such as age, location, and gender.

31.    Thus, while the data collected through Google's tracking pixel is used to provide marketing and analytics to its clients, it is also used to expound on Google's own advertisement targeting capabilities and to build all-encompassing profiles on its users.

---

[4] *See* https://marketingplatform.google.com/about/tag-manager/benefits/ (Last Visited 2/19/24)

### *Facebook Meta Pixels and Tracking Technology*

32.     Facebook runs the world's largest social media company, generating $117 billion dollars in 2021 predominantly from the sale of advertisement space viewed by its social media users.[5]

33.     Facebook encourages and promotes entities and website owners, such as Inova Health, to utilizes its "Business Tools" to gather, identify, target, and market products and services to individuals.

34.     Facebook's Business Tools, including its Meta Pixel and Conversions API, are bits of code that advertisers can integrate into their webpages, mobile applications, and servers, thereby enabling the interception and collection of user activity on those platforms.

35.     The Business Tools are automatically configured to capture "Standard Events" such as when a user visits a particular webpage, the webpage's URL, as well as metadata, button clicks, and other information. Businesses that want to target customers and advertise their services, such as Inova Health, can also track other user actions and can create their own tracking parameters by building a "custom event."[6]

36.     Facebook's Meta Pixel is a piece of code that "tracks people and the types of actions they take" while they visit a website.[7] Facebook's pixel is one of the most widely distributed website trackers on the internet given the massive ad network that Facebook has created.

37.     Facebook's pixel operates such that when a visitor accesses a webpage that is hosting it, the communications with the host webpage are instantaneously and surreptitiously duplicated and sent to Facebook, traveling from the visitor's browser to Facebook's server.

---

[5], https://investor.fb.com/investor-news/press-release-details/2022/Meta-Reports-Fourth-Quarter- and-Full-Year-2021-Results/default.aspx.

[6] www.facebook.com/business/help/964258670337005

[7] *Retargeting*, META, https://www.facebook.com/business/goals/retargeting (Last Visited 12/6/23).

38.    Notably, this transmission only occurs on webpages that contain the pixel. A website owner can configure its website to use the pixel on certain webpages that don't implicate patient privacy (such as the homepage) and disable it on pages that do implicate patient privacy (such as Inova Health's "Find a Doctor" page[8]).

39.    As with Google's tracking pixel, the Facebook pixel's primary purpose is for marketing and ad targeting and sales generation.[9]

40.    Facebook users maintain social media profiles that are accessible and useful to Facebook. These profiles include personal identifiers such as names, locations, birthdates, friends, email addresses, and communications which Facebook connects with other personal identifiers such as IP addresses.

41.    Facebook then sells advertising space by highlighting its ability to target users.[10] Facebook can target users so effectively because it surveils user activity both on and off its site.[11] Therefore, Facebook can compile a profile of a user that includes interests seen inside and outside of its social media platform. Facebook compiles this information into a generalized data set called "Core Audiences," which advertisers use to apply highly specific filters and parameters for their targeted advertising.[12]

42.    Facebook's own website informs companies that "[t]he Meta Pixel is a piece of code that you put on your website that allows you to measure the effectiveness of your advertising

---

[8]

https://www.inova.org/doctors?overridden_route_name=inova_doctors.landing_page&base_route_name=
inova_doctors.landing_page&page_manager_page=provider_search&page_manager_page_variant=provi
der_search-layout_builder-0&page_manager_page_variant_weight=0
[9] https://developers.facebook.com/docs/meta-pixel/
[10] www.facebook.com/business/help/205029060038706.
[11] www.facebook.com/business/help/742478679120153.
[12] www.facebook.com/business/ads/ad-targeting.

by understanding the actions people take on your website."[13]

43.    According to Facebook, the Meta Pixel can collect and transmit the following data:

**Http Headers** - Anything present in HTTP headers. HTTP Headers are a standard web protocol sent between any browser request and any server on the internet. HTTP Headers include IP addresses, information about the web browser, page location, document, referrer, and other information.

**Pixel-specific Data** – Includes Pixel ID and Facebook Cookie.

**Button Click Data** – Includes any buttons clicked by site visitors, the labels those buttons and any pages visited as a result of the button clicks.

**Optional Values** - Developers and marketers can optionally choose to send additional information about the visit through Custom Data events. Example custom data events are conversion value, page type and more.

**Form Field Names** - Includes website field names like email, address, quantity, etc., for when you purchase a product or service.[14]

44.    Facebook further advertises to prospective users that the Meta Pixel can be used to:

1) Make sure ads are shown to the right people – Find new customers, or people who have visited a specific page or taken a desired action on your website.

2) Drive more sales – Set up automatic bidding to reach people who are more likely to take an action you care about, like making a purchase.

3) Measure the results of ads – Better understand the impact of your ads by

---

[13] www.facebook.com/business/help/742478679120153.

[14] https://developers.facebook.com/docs/meta-pixel/

measuring what happens when people see them.

45.    Critically, a visitor's FID is linked to their Facebook profile, which generally contains a wide range of demographics and other information about the user, including pictures, personal interests, work history, relationship status, and other details. Because the visitor's Facebook Profile ID, or FID, uniquely identifies an individual's Facebook account, Meta—or any ordinary person—can easily use the Facebook Profile ID to quickly and easily locate, access, and view the user's corresponding Facebook profile.

46.    As such, by incorporating a Facebook pixel on its websites and patient portal, Inova Health routinely provided Facebook with its patients' Facebook IDs, IP addresses, and/or device IDs and the other information they input into its websites, including not only their medical searches, treatment requests, and the webpages they viewed, but also their home address, zip code, or phone number. This is precisely the type of identifying information that HIPAA requires healthcare providers to de-anonymize to protect the privacy of patients.[15] Plaintiff's and Class Members identities can be easily determined based on the Facebook ID, IP address and/or reverse lookup from the collection of other identifying information that was improperly disclosed.

47.    With substantial work and technical know-how, internet users can sometimes circumvent this browser-based wiretap technology. To counteract this, third parties, intent on gathering data and Private Information, implement workarounds that are difficult to detect or evade. Facebook's workaround is its Conversions API tool, which is particularly effective because the data transmitted via this tool does not rely on the website visitor's web browsers. Rather, the information travels directly from an entity's server using the tool to Facebook's server.

---

[15] www.hhs.gov/hipaa/for- professionals/privacy/special-topics/de-identification/index.html

48.    Facebook's Conversions API tool "is designed to create a direct connection between an advertiser's marketing data (such as website events, app events, business messaging events and offline conversions) from an advertiser's server, website platform, mobile app, or CRM to [Facebook]Meta systems that optimize ad targeting, decrease cost per result, and measure outcomes."[16] More succinctly, data collected through the Conversion API tool is sent directly to Facebook.

49.    Accordingly, without any knowledge, authorization, or action by a user, an operator of websites like Inova Health can use its websites to essentially commandeer its patients' computing devices, causing the device's web browser to contemporaneously and invisibly re-direct the patients' communications to hidden third parties like Facebook.

50.    Put simply, Facebook's Pixel and related tracking technology are bits of code that companies like Inova Health can put onto their websites, applications, and servers that track and collect website visitors' actions, data, and information, including HIPAA protected Private Information and then transmit such Private Information to Facebook.

### Inova Health's Use of Pixels

51.    Inova Health is one of the largest healthcare providers in the State of Virginia and operates 5 hospitals and serves over 2 million patients annually.[17]

52.    Inova Health disregarded the privacy rights of millions of visitors to its websites and patient portal by intentionally, willfully, recklessly and/or negligently failing to implement adequate and reasonable measures to ensure that that their Private Information was safeguarded.

---

[16] *Conversions API*, META, https://developers.facebook.com/docs/marketing-api/conversions-api/ (Last Visited 2/19/24).
[17] www.centretek.com/work/inova.

53.    By utilizing pixels on its websites and Patient Portal without user's consent, Inova Health provided Facebook, Google, and other third parties with a vast amount of private, personal, sensitive, and valuable Personal Information concerning Plaintiff's and other Class Members' medical conditions, appointments, and treatments.

54.    Using WireShark, Fiddler, and other tools, an investigation performed on behalf of Plaintiff revealed how Inova Health incorporated Facebook and Google pixels, as well as other tracking technology, onto its websites and patient portal and which disclosed visitors' Private Information to such third parties.

55.    In addition to Plaintiff's investigation revealing Inova Health's unlawful use of pixels, in July 2023, the Department of Health and Human Services as well as the Federal Trade Commission warned 130 hospital systems and telehealth providers that the use of pixels and related tracking technology could be sending HIPAA protected Private Information to third parties in violation of the law.[18]

56.    Critically, Inova Health, at its Falls Church headquarters, was one of the hospital systems that received this notice.[19]

57.    Not only did Inova Health receive this warning but, in an attempt to further warn hospitals against the use of Pixels and Tracking Technology, the Federal Trade Commission ("FTC") recently published a bulletin entitled *Protecting the privacy of health information: A Baker's dozen takeaways from FTC cases*, in which it noted that:

> [h]ealth information is not just about medications, procedures, and diagnoses. Rather, it is anything that conveys information—or enables an inference—about a consumer's health. Indeed, [recent FTC enforcement actions involving] Premom, BetterHelp, GoodRx and Flo Health make clear that the fact that a

---

[18] www.hhs.gov/about/news/2023/07/20/hhs-office-civil-rights-federal-trade-commission-warn-hospital-systems-telehealth-providers-privacy-security-risks-online -tracking-technologies.
[19] www.beckershospitalreview.com/healthcare-informtaion-technology/66-hospitals-health-systems-warned-about-pixel-tracking.

consumer is using a particular health- related app or website—one related to mental health or fertility, for example—or how they interact with that app (say, turning 'pregnancy mode' on or off) may itself be health information.[20]

58.     The FTC further noted that this conduct may violate the Health Breach Notification rule, which requires notification to consumers and the FTC of the disclosure of health information without authorization from the consumer.

59.     Additionally, in or around June 2022, The Markup, a nonprofit reporting agency and website focusing on technology and its effects on society, conducted an investigation of the use of tracking tools, such as Facebook's and Google's pixels, on the online platforms of Newsweek's top 100 hospitals in America.[21]

60.     The Markup discovered the Tracking Pixel was operating on 33 of the 100 hospitals investigated.[22] Inova Health was one of the hospital networks found operating pixels on its websites—including specifically the webpage that allows patients to book appointments with healthcare providers.[23]

61.     As the Markup found, when someone visits one of Inova Health's websites and clicks on the "Find a Doctor" tab, the visitor's browser sends a request to the server requesting that it load the webpage. Because Inova Health utilizes tracking pixels, the pixels send secret instructions back to the individual's browser, causing the browser to secretly duplicate the communication with Inova Health and transmitting it to the pixel providers' servers, alongside additional information that transcribes the communication's content and the individual's identity.

---

[20] www.ftc.gov/business-guidance/blog/2023/07/protecting-privacy-health-information-bakers-dozen-takeaways-ftc-cases.
[21] https://themarkup.org/pixel-hunt/2022/06/16/facebook- is-receiving-sensitive-medical-information-from-hospital-websites
[22] *Id.*
[23] *Id.*

62.     For example, if the visitor clicks "Find a Doctor" and enters their Zip Code and the doctor's specialty, like "Addiction Psychiatry," or uses another search term to find a doctor, such as "heart disease," this information is shared with Facebook, Google, and other third parties that Inova Health has configured its pixels to interact with.

63.     After collecting and intercepting this information, Google, Facebook, and other third parties process it, analyze it, and assimilate it into datasets like Core Audiences and Custom Audiences.

64.     Furthermore, every time Inova Health sends a patient's website activity data to Google, Facebook, and other third parties, that patient's PII is also disclosed, including their Facebook ID, User ID, or Client ID. Critically, while Facebook can easily identify any individual on its platform with only their unique ID, so too can any ordinary person who comes into possession of a Facebook ID.

65.     Not only did Inova Health willfully and intentionally incorporate the Facebook and Google pixels and related tracking technology into its websites and patient portal, Inova Health also never disclosed to Plaintiff or the other Class Members that it shared their sensitive and confidential communications with third parties. As a result, Plaintiff and the other Class Members were unaware that their Private Information was being surreptitiously transmitted to third parties as they communicated with their healthcare providers, looked up their conditions and/or treatments, and logged into Inova Health's websites and patient portal.

66.     The full extent of Inova's disclosures is yet unknown, but the numbers are expected to be massive. According to Centretek, in 2019 Inova Health served more than 2,000,000 individuals annually.[24] With most people using the internet to book appointments or view doctor

---

[24] *Supra,* n. 17.

profiles and reviews, the numbers of visits to Inova Health's websites and patient portal which have been tracked via the unlawful pixels and tracking technology could be in the millions.

67.     Despite the FTC's warning, Inova Health failed to issue a notice that Plaintiff's and Class Members' Private Information had been disclosed to an unauthorized third party. In fact, Inova Health has never disclosed to Plaintiff or the other Class Members that it shared their sensitive and confidential communications, data, and Private Information with any third parties.[25]

***Inova Health's Use of Pixels Was In Violation of Its Own Privacy Policies***

68.     Inova Health's conduct was in violation of its own Notice of Privacy Practices which explains its legal duties with respect to Private Information and when Inova Health can lawfully disclose Private Information, none of which includes or contemplates its use of pixels to disclose Private Information to Google and Facebook.[26]

69.     Inova Health's Code of Conduct also informs its employees that "[y]ou are expected to understand the sensitive nature of this information and to uphold Inova's commitment to maintaining the confidentiality of patient information. You must not use or disclose patient-specific information except when it is permitted or required by law, unless the patient has authorized such disclosure."[27]

70.     In fact, Inova Health outlines in its Notice of Privacy Practices that patients "have a right to be notified following breach of your unsecured PHI."

---

[25]www.inova.org/sites/default/files/patient_visitor/privacy_compliance/notice_of_privacy_practices/inova-notice-of-privacy-practices-09.23.english.pdf.
[26] *Id*.
[27] www.inova.org/sites/default/files/for_employees/compliance/inova-code-of-conduct-rebrand-sept-2023.pdf.

71.     However, Inova Health violated its own Standards of Practice and Code of Conduct by allowing Google and Facebook, and other third parties, to collect data and Private Information of Plaintiff and the other Class Members.

**_Inova Violated HIPAA Standards_**

72.     Pursuant to HIPAA, a healthcare provider may not disclose personally identifiable, non-public medical information (PHI) and data about a patient, a potential patient, or family member of a patient for marketing purposes without the patient's express written consent.[28]

73.     HIPAA defines protected health information as individually identifiable health information transmitted or maintained by a covered entity or its business associates in any form or medium. [29]

74.     The Department of Health and Human Services instructs that patients' identities and information are protected under HIPAA and full disclosure to and authorization from the patient is needed if Private Information is divulged or will be divulged.

75.     Any identifying information associated with health data content or PHI could be a violation of HIPAA standards and would require the entity, in this case Inova Health, to first receive authorization or, subsequently, to inform the patient that their information has been unlawfully disclosed.[30] In fact, simply releasing where the individual was seen or treated is enough to be considered health data content. Here, far more specific, and personal, data is at issue.

76.     HHS has provided guidance on the Methods of De-Identification of Protected Health Information in Accordance with the HIPAA Privacy Rule, saying the identifying information alone such as personal names, residential addresses, or phone numbers, would not

---

[28] 42 U.S.C. § 1320; 45 C.F.R. §§ 164.502; 164.508(a)(3), 164.514(b)(2)(i).
[29] *See* 45 C.F.R. 160.103
[30] www.hhs.gov/sites/default/files/ocr/privacy/hipaa/understanding/coveredentities/De-identification/hhs_deid_guidance.pdf, at 5.

necessarily be designated as PHI. For instance, if such information was reported as part of a publicly accessible data source, such as a phone book, then this information would not be considered PHI because it is not related to health data and is publicly available. However, if such information was listed with health condition, health care provision, or payment data, such as an indication that the individual was treated at a certain clinic, then this information would be PHI.[31]

77.    HHS also provides guidance with regard to marketing:

The HIPAA Privacy Rule gives individuals important controls over whether and how their protected health information is used and disclosed for marketing purposes. With limited exceptions, the Rule requires an individual's written authorization before a use or disclosure of his or her protected health information can be made for marketing. … Simply put, a covered entity may not sell [or disclose] protected health information to a business associate or any other third party for that party's own purposes. Moreover, covered entities may not sell lists of patients or enrollees to third parties without obtaining authorization from each person on the list.[32]

78.    Moreover, HHS's Office for Civil Rights issued a bulletin stating that regulated entities such as Inova Health, "are not permitted to use tracking technologies in a manner that would result in impermissible disclosures of PHI to tracking technology vendors or any other violations of HIPAA Rules."[33]

79.    Accordingly, Inova Health's use of the tracking pixels and the information that Google, Facebook, and other third parties received through its use of such trackers is a violation of HIPAA Privacy Rules.

***Inova Health Violated Industry Standards***

80.    As a medical provider, Inova Health has a duty of confidentiality. It is a cardinal rule and is embedded in the physician-patient and hospital patient relationship.

---

[31] *Id.*

[32] www.hhs.gov/sites/default/files/ocr/privacy/hipaa/understanding/coveredentities/marketing.pdf.

[33]  www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html.

81.    The American Medical Association's ("AMA") Code of Medical Ethics enumerates multiple rules regarding the protection and privacy of patient's data and communications.

82.    The AMA's Code of Ethics Opinion 3.1.1 states that "protecting information gathered in association with the care of the patient is a core value in health care… Patient privacy encompasses a number of aspects, including…personal data."[34]

83.    Further, Opinion 3.2.4 states:

Information gathered and recorded in association with the care of the patient is confidential. Patients are entitled to expect that the sensitive personal information they divulge will be used solely to enable their physician to most effectively provide needed services. Disclosing information for commercial purposes without consent undermines trust, violates principles of informed consent and confidentiality, and may harm the integrity of the patient-physician relationship. Physicians who propose to permit third-party access to specific patient information for commercial purposes should: (A) Only provide data that has been de-identified. [and] (b) Fully inform each patient whose record would be involved (or the patient's authorized surrogate when the individual lacks decision-making capacity about the purposes for which access would be granted.[35]

84.    Hospital and physician standards, according to the AMA, require that information collected and recorded in association with the care of a patient is confidential and can only be released when the ethical guidelines for confidentiality are being followed.

85.    Inova Health released protected Private Information to Facebook, Google, and other third parties through its use of pixels and related tracking technology in clear violation of industry standards.

***Inova Health Financially Benefitted From Its Use of the Pixels and the Unauthorized Disclosers at Issue***

86.    The purpose and end-outcome of Inova Health's use of Facebook and Google's

---

[34] https://code-medical-ethics.ama-assn.org/ethics-opinions/privacy-health-care.
[35] *Id.*

pixels, as well as other related tracking technology was marketing and profits.

87.    In exchange for disclosing the Private Information of its patients, Inova Health is compensated by Facebook, Google, and other third parties in the form of enhanced advertising services and more cost-efficient marketing on their platforms.

88.    Retargeting is a form of online marketing that targets users with ads based on their previous internet communications and interactions. Upon information and belief, as part of its marketing campaign, Inova Health re-targeted patients and potential patients.

89.    By utilizing the Facebook and Google pixels and related tracking technology the cost of advertising and retargeting was reduced, thereby benefiting Inova Health.

90.    Furthermore, Plaintiff's and the other Class Members's Private Information that was collected and shared by Inova Health has tremendous economic value. Data collected via the Facebook pixel and CAPI allows Facebook to build its own massive, proprietary dataset, to which it then sells access in the form of targeted advertisements.[36][37] These advertisements are the main source of Facebook's revenue. In 2019, Facebook generated nearly $70 billion dollars in advertising revenue alone, constituting more than *98%* of its total revenue for that year.[38]

91.    Indeed, consumer data is so valuable that conservative estimates suggest that in 2018, Internet companies earned $202 per American user from mining and selling their online data—with the figure not being limited to such valuable and specific data as the Private Information that Inova Health obtained through its websites and patient portal. Indeed, the health

---

[36] www.facebook.com/business/ads/ad-targeting.
[37] www.facebook.com/business/help/465262276878947.
[38] www.cnn.com/2020/06/30/tech/facebook-ad-business-boycott/index.html.

data market is a lucrative source of profit and poses significant risks to patients' privacy rights.[39][40]

***Facts Specific to Plaintiff***

92.     Plaintiff Lugo has been a patient with Inova Health since 2020.

93.     Plaintiff Lugo has been using Inova Health's websites, including the patient portal, since approximately 2020 to the present. Plaintiff accesses its websites and patient portal to receive healthcare services from Inova Health.

94.     Specifically, Plaintiff uses Inova Health's Websites to: communicate Private Information with his healthcare provider, search for physicians, schedule appointments and procedures, receive and discuss medical diagnoses and treatment from his healthcare providers, search for symptoms, receive and view lab results, receive and view medical records, receive and view medication changes, and view his appointment history.

95.     Through its use of Facebook and Google pixels on its websites and patient portal during the time that Plaintiff submitted the aforementioned Private Information to Inova Health, Inova Health unlawfully tracked and unlawfully transmitted his Private Information, including the specific contents and communications contained in ¶ 94, to Facebook and Google and other third parties.

96.     Importantly, the Private Information Inova Health sent to Google and Facebook through its pixels was sent alongside Plaintiff's Facebook ID, User ID, Client ID, IP address, and other personally identifying information, thereby allowing his confidential communications with Inova Health and the Private Information contained in those communications, to be linked to him, including specifically his Facebook account.

---

[39] https://time.com/4588104/medical-data-industry/
[40] www.cnbc.com/2019/12/l 8/hospital-execs-say-theyre- flooded-with-requests-for-your-health-data.html ("'[d]e- identified patient data has become its own small economy: There's a whole market of brokers who compile the data from providers and other health-care organizations and sell it to buyers").

97.     As a patient of Inova Health, Plaintiff Lugo reasonably expected that his online communications with Inova Health were solely between himself and Inova such that the communications would not be transmitted or intercepted by a third-party.

98.     In sum, Inova Health transmitted Plaintiff's highly sensitive communications and Private Information to Facebook and Google, alongside identifying information, without Plaintiff's knowledge, consent, or express authorization.

## TOLLING, CONCEALMENT, AND ESTOPPEL

99.     The applicable statutes of limitation have been tolled as a result of Inova Health's knowing and active concealment and denial of the facts alleged herein given the affirmative representations and assurances of confidentiality featured in its Privacy Policy and those of its member entities.

100.    Inova Health incorporated tracking pixels and related tracking technology into its websites and patient portal while providing users with no indication that their usage of such sites was being tracked and transmitted to third parties. Inova Health knew that its websites and patient portal incorporated Facebook and Google pixels as well as other tracking technology, yet it failed to disclose to Plaintiff and the other Class Members that their sensitive Private Information would be intercepted, collected, used by, and disclosed to Facebook and Google, and likely other third parties.

101.    Plaintiff and the other Class Members could not with due diligence have discovered the full scope of Inova Health's conduct, because there were no disclosures or other indication that they were interacting with websites employing pixels and tracking technology that would disclose their Private Information.

102.    All applicable statutes of limitation have also been tolled by operation of the discovery rule and the doctrine of continuing tort. Inova Health's illegal interception and disclosure of Plaintiff's and the other Class Members' Private Information has continued unabated through the present. What is more, Inova Health was under a duty to disclose the nature and significance of its data collection practices but did not do so. Inova Health is therefore estopped from relying on any statute of limitations defenses.

## CLASS ACTION ALLEGATIONS

103.    Plaintiff brings this action on his own behalf and as a class action under Fed. R. Civ. P. 23(a) and (b)(2) seeking equitable and injunctive relief on behalf of the following class (the "Class"):

> **Class: All individuals who visited Inova Health's websites and whose Private Information was disclosed to third parties through the Facebook or Google pixel and other related tracking technology without their authorization.**

104.    Excluded from the Class are: Inova Health and Inova Health's parents, subsidiaries, affiliates, officers, and directors, and any entity in which Inova Health has a controlling interest; all individuals who make a timely election to be excluded; any and all federal, state, or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards sections, groups, counsels, and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members..

105.    Membership of the Class is defined based on objective criteria, and individual members will be identifiable from Inova's and public records.

106.    Upon information and belief, there are hundreds of thousands of members of Class, making the members of the Class so numerous that joinder of all members is impracticable. Although the exact number of members of the Class is currently unknown to Plaintiff, membership

of the Class is defined based on objective criteria and the members can be easily identified through

Inova's records.

107.     There are many questions of law and fact common to the claims of Plaintiff and the

Class, and those questions predominate over any questions that may affect individual members.

Common questions for the Class include, but are not limited to, the following:

    a.  Whether Inova Health had a duty to protect Plaintiff and Class Members' Private Information;

    b.  Whether Inova Health had a duty not to disclose the Plaintiff's and Class Members' Private Information to unauthorized third parties;

    c.  Whether Inova Health had a duty not to use Plaintiff's and Class Members' Private Information for non-healthcare purposes;

    d.  Whether Inova Health had a duty not to use Plaintiff's and Class Members' Private Information for unauthorized purposes;

    e.  Whether Inova Health disclosed Plaintiff's and Class Members' Private Information without their authorization through its use of tracking pixels on its websites and patient portal;

    f.  Whether Inova Health failed to adequately safeguard Plaintiff and Class Members' Private Information by implementing tracking pixels on its websites;

    g.  Whether Inova Health adequately, promptly, and accurately informed Plaintiff and Class Members that their Private Information had been disclosed without their authorization through its use of tracking Pixels on its websites;

    h.  Whether Inova Health failed to properly implement and configure the tracking pixels on its websites to prevent the disclosure of Private Information;

    i.  Whether Inova Health breached its contract with Plaintiff and the Class Members; or in the alternate, whether Inova Health was unjustly enriched;

    j.  Whether Inova Health's conduct was in violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2510 *et seq*;

    k.  Whether Inova Health breached its contract with Plaintiff and the other Class Members; or in the alternative, whether Inova was unjustly enriched; and

l.   Whether Class Members are entitled to actual, statutory, consequential, and/or nominal damages, and/or injunctive relief as a result of Inova's wrongful conduct.

108.   Plaintiff's claims are typical of those of other Class Members because all had their Private Information compromised as a result of Inova Health's use and incorporation of tracking pixels on its websites and patient portal.

109.   Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitively expensive and would thus have no effective remedy. The class treatment of common questions of law and fact is superior to multiple individual actions in that it conserves the resources of the courts and the litigants and promotes consistency of adjudication.

110.   Inova Health has acted and failed to act on grounds generally applicable to Plaintiff and the other members of the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making injunctive or corresponding declaratory relief appropriate for the Class as a whole.

111.   Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and Plaintiff's counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class and have the financial resources to do so. Neither Plaintiff nor Plaintiff's counsel have any interest adverse to those of the other members of the Class.

112.   Plaintiff reserves the right to revise the foregoing class allegations and definitions based on facts learned and legal developments following additional investigation, discovery, or otherwise.

<u>**COUNT I**</u>
**Breach of Implied Contract**
**(On behalf of Plaintiff and the National Class)**

126.     Plaintiff re-alleges and incorporates by reference all other paragraphs in the Complaint as if fully set forth herein.

127.     When Plaintiff and the other Class Members provided their user data to Inova Health in exchange for services, they entered into an implied contract pursuant to which Inova Health agreed to safeguard and not disclose their Private Information without consent.

128.     Plaintiff and the other Class Members accepted Inova Health's offers and provided their Private Information to Inova.

129.     Plaintiff and the other Class Members would not have entrusted Inova Health with their Private Information in the absence of an implied contract between them and Inova Health obligating Inova Health not to disclose Private Information without consent.

130.     Inova Health breached these implied contracts by disclosing Plaintiff's and Class Members' Private Information to a third party, *i.e.*, Google and Facebook.

131.     As a direct and proximate result of Inova Health's breaches of these implied contracts, Plaintiff and the other Class Members sustained damages as alleged herein. Plaintiff and the other Class Members would not have used Inova Health's services, or would have paid substantially less for these services, had they known their Private Information would be disclosed.

132.     Plaintiff and the other Class Members are entitled to compensatory and consequential damages as a result of Inova Health's breach of implied contract.

**COUNT II**
**Unjust Enrichment**
**(On behalf of Plaintiff and the National Class)**

133.    Plaintiff re-alleges and incorporates by reference all other paragraphs in the Complaint as if fully set forth herein, with the exception that this claim is brought in the alternative to the foregoing breach of implied contract claim.

134.    Inova Health benefits from the use of Plaintiff's and Class Members' Private Information and unjustly retained those benefits at their expense.

135.    Plaintiff and the other Class Members conferred a benefit upon Inova Health in the form of valuable Private Information that Inova Health collected from Plaintiff and the other Class Members and distributed without authorization and proper compensation. Inova Health consciously collected and used this information for its own gain, providing Inova Health with economic, intangible, and other benefits, including substantial monetary compensation.

136.    Inova Health unjustly retained those benefits at the expense of Plaintiff and the other Class Members because Inova Health's conduct damaged Plaintiff and the other Class Members, all without providing any commensurate compensation to Plaintiff and the other Class Members.

137.    The benefits that Inova Health derived from Plaintiff and the other Class Members, which was not offered by Plaintiff and the other Class Members, gratuitously and rightly belongs to Plaintiff and the other Class Members. It would be inequitable under unjust enrichment principles in Virginia and every other state for Inova Health to be permitted to retain any of the profit or other benefits wrongly derived from the unfair and unconscionable methods, acts, and trade practices alleged in this Complaint.

138.    Inova Health should be compelled to disgorge into a common fund for the

benefit of Plaintiff and the other Class Members all unlawful or inequitable proceeds that Inova

Health received, and such other relief as the Court may deem just and proper.

## COUNT III

**VIOLATION OF THE ELECTRONIC COMMUNICATIONS PRIVACY ACT**
**18 U.S.C. § 2510 *et seq***
**(On Behalf of Plaintiff and the Class)**

139.    Plaintiff re-alleges and incorporates the above allegations as if fully set forth herein.

140.    The ECPA protects both the sending and receipt of electronic communications.

141.    The ECPA provides a private right of action to any person whose wire, oral, or

electronic communication is intercepted. 18 U.S.C. § 2520(a).

142.    A violation of the ECPA occurs where any person/entity "intentionally intercepts,

endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any . . .

electronic communication" or "intentionally discloses, or endeavors to disclose, to any other

person the contents of any . . . electronic communication, knowing or having reason to know that

the information was obtained through the [unlawful] interception of a[n] . . . electronic

communication" or "intentionally uses, or endeavors to use, the contents of any . . . electronic

communication, knowing or having reason to know that the information was obtained through the

[unlawful] interception of a[n] . . . electronic communication." 18 U.S.C. §§ 2511(1)(a), (c)-(d).

143.    "Intercept" means "the aural or other acquisition of the contents of any wire,

electronic, or oral communication through the use of any electronic, mechanical, or other device."

18 U.S.C. § 2510(4).

144.    "Electronic communication" means "any transfer of signs, signals, writing, images,

sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio,

electromagnetic, photoelectronic or photo optical system that affects interstate or foreign

commerce." 18 U.S.C. § 2510(12).

145.    "Contents" includes "any information relating to the substance, purport, or meaning" of the communication at issue. 18 U.S.C. § 2510(8).

146.    Inova Health's websites, including the MyChart Patient Portal, are an electronic communication service under the ECPA.

147.    Plaintiff and the other Class members' interactions with Inova Health's websites, including the MyChart Patient Portal, are electronic communications under the ECPA.

148.    Whenever Plaintiff and Class members interacted with Inova Health's websites and patient portal, Inova Health contemporaneously and intentionally intercepted, and endeavored to intercept Plaintiff's and the other Class members' electronic communications without authorization or consent through its use of tracking pixels.

149.    Whenever Plaintiff and the other Class members interacted with Inova Health's websites, including the MyChart Patient Portal, Inova Health contemporaneously and intentionally disclosed, and endeavored to disclose the contents of Plaintiff's and the other Class members' electronic communications to third parties, including Facebook and Google, without authorization or consent, and knowing or having reason to know that the electronic communications were obtained in violation of the ECPA.

150.    Whenever Plaintiff and the other Class members interacted with Inova Health's websites, including the MyChart Patient Portal, Inova Health contemporaneously and intentionally used, and endeavored to use the contents of Plaintiff's and the other Class members' electronic communications for purposes other than providing health care services to Plaintiff and Class members and without authorization or consent.

151.    Whenever Plaintiff and the other Class members interacted with Inova Health's

websites, including the MyChart Patient Portal, Inova Health contemporaneously and intentionally redirected the contents of Plaintiff's and Class members' electronic communications while those communications were in transmission, to persons or entities other than an addressee or intended recipient of such communication, including Facebook and Google.

152.    Whenever Plaintiff and the other Class members interacted with Inova Health's websites, including the MyChart Patient Portal, Inova Health contemporaneously and intentionally divulged the contents of Plaintiff's and Class Members' electronic communications while those communications were in transmission, to persons or entities other than an addressee or intended recipient of such communication, including Facebook and Google.

153.    Inova Health intentionally intercepted and used the contents of Plaintiff's and Class members' electronic communications for the unauthorized purpose of disclosing and, on information and belief, profiting from, Plaintiff's and Class members' communications by selling the contents to third parties including Facebook and Google.

154.    Plaintiff and the other Class members did not authorize Inova Health to acquire the content of their communications for purposes of sharing and selling the personal information contained therein.

155.    Inova Health intentionally intercepted the contents of Plaintiff's and the other Class Members' electronic communications for the purpose of committing a tortious or criminal act in violation of the Constitution or laws of the United States or of any State.

156.    The ECPA provides that a "party to the communication" may be liable where a "communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C § 2511(2)(d).

157.    Inova Health is a "party to the communication" with respect to patient

communications. However, Inova Health's simultaneous, unknown duplication, forwarding, and interception of Plaintiff's and Class Members' Private Information does not qualify for the party exemption.

158.    Inova Health's acquisition of patient communications that were used and disclosed to Facebook, Google, and other third parties was done for purposes of committing a criminal and tortious act in violation of the laws of the United States and Virginia, including:

    a.    Criminal violation of HIPAA, 42 U.S.C. § 1320d-6; and

    b.    Violation of the Virginia Health Records Privacy Act ("VHRPA") § 32.1-127.1:03(A).

159.    Under 42 U.S.C. § 1320d-6, it is a criminal violation for a person to "use[] or cause[] to be used a unique health identifier" or to "disclose[] individually identifiable health information to another person . . . without authorization" from the patient.

160.    The penalty for violation is enhanced where "the offense is committed with intent to sell, transfer, or use individually identifiable health information for commercial advantage, personal gain, or malicious harm." 42 U.S.C. § 1320d-6.

161.    Inova Health's conduct violated 42 U.S.C. § 1320d-6 in that it:

    a.    Used and caused to be used cookie identifiers associated with specific patients without patient authorization; and

    b.    Disclosed individually identifiable health information to Facebook, Google, and other third-parties without patient authorization.

162.    Inova Health's conduct would be subject to enhanced provisions of 42 U.S.C. § 1320d-6 because Inova Health's use of Facebook's and Google's pixels was for Defendant's commercial advantage to increase revenue from existing patients and gain new patients.

163.    The VHRPA § 31.1-127.1:03(A) codifies a patient's right to the privacy of their health records.

164.    Plaintiff's and Class Members' communications of Private Information to Inova Health via its websites are "Health Records" defined under § 31.1-127.1:03(B).

165.    The VHRPA provides that "expect when permitted or required by this section . . ., no health care entity, or other person working in a health care setting, may disclose an individual's health records." § 31.1-127.1:03(A)

166.    Inova Health's conduct violated the VHRPA where it disclosed its patients' Private Information to Facebook, Google, and other third-parties without their express authorization or consent.

167.    As such, Inova Health cannot viably claim any exception to ECPA liability.

168.    As a direct and proximate result of Inova Health's violation of the ECPA, Plaintiff and Class members were damaged by Inova Health's conduct in that:

a.    Inova Health took something of value from Plaintiff and the other Class members and derived benefit therefrom without Plaintiff's and the other Class members' authorization, informed consent, or knowledge, and without sharing the benefit of such value;

b.    Plaintiff and the other Class members did not get the full value of the medical services for which they paid, which included Inova Health's duty to maintain confidentiality; and

c.    Inova Health's actions diminished the value of Plaintiff's and Class members' personal information.

169.    As a result of Inova Health's violation of the ECPA, Plaintiff and the other Class

Members are entitled to all damages available under 18 U.S.C. § 2520, including statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000, equitable or declaratory relief, compensatory and punitive damages, and attorney's fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on his own behalf and on behalf of the other Class Members, requests judgment against Inova Health and that the Court grant the following:

a. For an Order certifying the Class and appointing Plaintiff and his Counsel to represent such Class;

b. For equitable relief enjoining Inova from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of the Private Information of Plaintiff and Class Members;

c. For injunctive relief requested by Plaintiff, including, but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the other Class Members;

d. For an award of damages, including, but not limited to, actual, consequential, statutory, punitive, and nominal damages, as allowed by law in an amount to be determined;

e. For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

f. For prejudgment interest on all amounts awarded; and

g. Such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands that this matter be tried before a jury.

DATE: April 29th, 2024                    Respectfully Submitted,

                                          _/s/ Kyle McNew_____

                                          Kyle McNew (Va. Bar # 73210)
                                          MICHIE HAMLEETT
                                          310 4th St. NE

{01483651-2 }

33

Charlottesville, VA 22902
T: (434) 951-7234
F: (434) 951-7254
kmcnew@michiehamlett.com

Eugene Turin (*pro hac vice* forthcoming)
William Kingston (*pro hac vice* forthcoming)
Jordan Frysinger (*pro hac vice* forthcoming)
MCGUIRE LAW, P.C.
55 W. Wacker Drive 9th Fl
Chicago, IL, 60601
T: (312) 893-7002
F: (312) 275-7895
eturin@mcgpc.com
wkingston@mcgpc.com
jfrysinger@mcgpc.com


ATTORNEYS FOR PLAINTIFF PEDRO LUGO,
individually and on behalf of similarly situated
individuals