IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| PEDRO LUGO, *Individually and on Behalf of a Class of Similarly Situated Individuals,* | ) | CASE NO.: 1:24-CV-00700 |
| | ) | JUDGE PATRICIA TOLLIVER GILES |
| Plaintiff, | ) | |
| v. | ) | |
| INOVA HEALTH CARE SERVICES, | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS</u>**

Laurie L. Kirkland, VSB No. 75320
BLANKINGSHIP & KEITH, P.C.
4020 University Drive, Suite 300
Fairfax, Virginia 22030
(703) 691-1235 (telephone)
(703) 691-3913 (facsimile)

Bryan T. Kostura *pro hac vice*
Timothy J. Lowe *pro hac vice*
McDonald Hopkins LLC
600 Superior Avenue, East, Suite 2100
Cleveland, Ohio 44114
T: 216.348.5400
bkostura@mcdonaldhopkins.com
tlowe@mcdonaldhopkins.com

*Attorneys for Defendant*
*Inova Health Care Services*

# TABLE OF CONTENTS

INDEX OF AUTHORITIES ..... 3
I. INTRODUCTION ..... 7
II. THE ALLEGATIONS ..... 8
III. LEGAL STANDARD ..... 9
IV. ARGUMENT ..... 10
A. Plaintiff Fails to State a Claim for Violation of the Electronic Communications Privacy Act 18 U.S.C. § 2510 *et seq* ..... 10
B. Plaintiff's Breach of Implied Contract Claim Fails Because No Implied Contract Exists Between Plaintiff and Inova ..... 19
C. Unjust Enrichment. ..... 25
V. CONCLUSION ..... 29

## INDEX OF AUTHORITIES

**Page(s)**

**Cases**

*AB Staffing Sols., LLC v. Asefi Cap., Inc.*,
No. 3:22CV32 (DJN), 2022 WL 16555707 (E.D. Va. Oct. 31, 2022) .......... 22, 23

*In re All Pending Chinese Drywall Cases*,
80 Va. Cir. 69 (2010) .......... 25

*Allen v. Aetna Cas. & Sur. Co.*,
281 S.E.2d 818 (Va. 1981) .......... 22

*Amazon.com Inc. v. WDC Holdings LLC*,
2023 WL 2815140 .......... 25, 29

*American Hospital Association v. Becerra*,
No. 4:23-cv-01110-P (N.D. Tex. June 20, 2024) .......... 17

*Boddie v. ABC, Inc.*,
881 F.2d 267 (6th Cir. 1989) .......... 15

*Bojorquez-Moreno v. Shores & Ruark Seafood Co.*,
92 F. Supp. 3d 459 (E.D. Va. 2015) .......... 21, 22

*Caro v. Weintraub*,
618 F.3d 94 (2d. Cir. 2010) .......... 12, 13, 15, 16

*Centre Law and Consulting, LLC v. Axiom Resource Management, Inc.*,
456 F.Supp.3d 765 (E.D. Va. 2020) .......... 10

*Cherrie v. Virginia Health Servs., Inc.*,
787 S.E.2d 855 (Va. 2016) .......... 19

*City of Norfolk v. Norfolk Cty.*,
120 Va. 356, 91 S.E. 820 (1917) .......... 19

*DiMarco Constructors, LLC v. Staunton Plaza, LLC*,
No. 5:09cv00001, 2009 WL 2058686 (W.D.Va. July 14, 2009) .......... 21

*DiMuroGinsberg, P.C. v. VLOX, LLC*,
No. 1:18-cv-1046, 2019 WL 3728254 (E.D. Va. Aug. 7, 2019) .......... 19

*DIRECTV, Inc. v. Beecher*,
296 F. Supp. 2d 937 (S.D. Ind. 2003) .......... 10

*Doe v. Kaiser Foundation Health Plan, Inc.*,
2024 WL 1589982 (N.D. Cal, Apr. 11, 2024) .......... 14

*Doe v. Washington & Lee Univ.*,
439 F. Supp. 3d 784 (W.D. Va. 2020) .......... 20

*In re DoubleClick Inc. Priv. Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001) .......... 15

*E. Shore Mkts., Inc., v. J.D. Assocs. Ltd. P'ship*,
213 F.3d 175 (4th Cir. 2000) .......... 10

*Erickson v. Pardus*,
551 U.S. 89 (2007) .......... 10

*In re Google Inc.*,
806 F.3d 125 (3d Cir. 2015) .......... 12, 14

*Green v. Smith*,
146 Va. 442, 131 S.E. 846 (1926) .......... 22

*In re Hackman*,
534 B.R. 867 (Bankr. E.D. Va. 2015) .......... 27

*Harvey v. United States*,
2022 WL 17405826 (E.D. Va., 2022) .......... 19

*Hendrickson v. Meredith*,
161 Va. 193, 170 S.E. 602 (1933) .......... 20

*J.R. v. Walgreens Boots Alliance, Inc.*,
2021 WL 4859603 (4th Cir. 2021) .......... 18

*Kern v. Freed Co.*,
224 Va. 678, 299 S.E.2d 363 (1983) .......... 20, 24

*Lacey v. Cardwell*,
217 S.E.2d 835 (Va. 1975) .......... 23

*McConnell v. Servinsky Eng'g, PLLC*,
22 F. Supp. 3d 610 (W.D. Va. 2014) .......... 20

*In Re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... 15, 16

*Montagna v. Holiday Inns, Inc.*,
221 Va. 336, 269 S.E.2d 838 (1980) .......... 21

*Multiscaff Ltd. v. APTIM Fed. Servs., LLC*,
No. 1:23CV1369 (DJN), 2024 WL 234736 (E.D. Va. Jan. 22, 2024) .......... 22

*Nedrich v. Jones*,
245 Va. 465, 429 S.E.2d 201 (1993) .......... 24

*In re Nickelodeon Consumer Privacy Litigation*,
C.A.3 (N.J.) 2016, 827 F.3d 262, certiorari denied 137 S.Ct. 624, 580 U.S. 1048, 196 L.Ed.2d 516 .......... 11

*Nienaber v. Overlake Hospital Med. Ctr.*,
2024 WL 2133709 (W.D. Wash., May 13, 2024) .................... 14

*Payne v. Taslimi*,
998 F.3d 648 (4th Cir. 2021) .................... 19

*Pena v. Gamestop*,
670 F. Supp.3d 1112 (S.D. Cal. 2023) .................... 12, 14

*Persinger & Co. v. Larrowe*,
477 S.E.2d 506 (Va. 1996) .................... 23

*Po River Water & Sewer Co. v. Indian Acres Club of Thornburg, Inc.*,
255 Va. 108, 495 S.E.2d 478 (1998) .................... 23

*Reynolds v. USAA Life Ins. Co.*,
678 F. Supp. 3d 736 (E.D. Va. 2023), aff'd, No. 23-1770, 2024 WL 2795185 (4th Cir. May 31, 2024) .................... 21

*Riley v. Barringer*,
337 F. Supp. 3d 647 (W.D. Va. 2018).................... 20, 24

*Roe v. Amgen Inc.*,
No. 2:23-CV-07448-MCS-SSC, 2024 WL 2873482 (C.D. Cal. June 5, 2024).................... 16, 17

*Rosetta Stone, Ltd. v. Google, Inc.*,
676 F.3d 144 (4th Cir. 2012) .................... 20, 26, 27

*Santoro v. Tower Health*,
2024 WL 1773371 (E.D. Pa. April 24, 2024).................... 17

*Simons v. Montgomery Cnty. Police Officers*,
762 F.2d 30 (4th Cir. 1985) .................... 9

*Smart v. Main Line Health*,
2024 WL 2943760 (E.D. Pa. June 10, 2024).................... 17

*Smith v. Mountjoy*,
280 Va. 46, 694 S.E.2d 598 (2010) .................... 21

*Spectra-4, LLP v. Uniwest Com. Realty, Inc.*,
772 S.E.2d 290 (Va. 2015) .................... 21, 22

*Staltzer, Tr. for Est. of Morse v. Am. Merch., Inc.*,
No. 1:19CV00023, 2020 WL 7023892 (W.D. Va. Nov. 30, 2020).................... 25

*Sussman v. Am. Broad. Companies, Inc.*,
186 F.3d 1200 (9th Cir.1999) .................... 16

*T.G. Slater & Son, Inc. v. Donald P. & Patricia A. Brennan LLC*,
385 F.3d 836 (4th Cir. 2004) .................... 23, 24

*TransDulles Ctr. Inc. v. USX Corp.*,
976 F.2d 219 (4th Cir.1992) ........ 21

*In re Virginia Block*,
16 B.R. 771 (W.D. Va. Bankr. 1982) ........ 20

*Walsh v. Fam. First Home Healthcare LLC*,
No. 2:22-CV-368, 2023 WL 9317547 (E.D. Va. July 21, 2023) ........ 9

*Wells v. Weston*,
326 S.E.2d 672 (Va. 1985) ........ 22

*Williams v. Dukehealth*,
2024 WL 898051 (M.D. N. Car., Mar. 1, 2024) ........ 11

**Statutes**

Electronic Communications Privacy Act 18 U.S.C. § 2510 *et seq* ........ 10, 11, 12, 13, 15, 16

Health Insurance Portability and Accountability Act, 42 U.S.C. § 1320d-6 ........ 18

Virginia Health Records Privacy Act, Va.Code Ann. § 32.1–127.1:03 (2010) ........ 15, 18, 19

**Other Authorities**

114 Cong. Rec. 14694-95 (May 23, 1968) ........ 15

Civ. R. 12(b)(6) ........ 25, 29

90th Cong., 2d Sess., p. 2182 (1968) ........ 15

Federal Rule of Civil Procedure 12(b)(6) ........ 9

S. Rep. No. 90-1097 (1968) ........ 16

# I. INTRODUCTION

This is one of dozens of cases around the country alleging that a hospital system's use of now-ubiquitous analytics technology on its website violates medical privacy rules, giving rise to various equitable and statutory claims. Specifically, in this case, Plaintiff claims that Defendant Inova Health Care Services ("Inova") employed a commonplace tool known as the Google and Meta "Pixels" and other tracking pixels to analyze user interactions with its website, and as a result, shared information regarding those interactions with Google and Meta (a.k.a. Facebook) and other third parties for analytical purposes.

Plaintiff does not claim to have suffered identity theft or any other specific harm as a result of Inova's alleged actions. Nevertheless, he asserts claims for breach of implied contract (Count I), unjust enrichment (Count II), and violation of the federal Electronic Communications Privacy Act (the "Wiretap Act"). Despite the absence of any pecuniary loss, malicious intent or criminal violation by Inova, Plaintiff asks this Court to impose massive damages, including potentially ruinous statutory penalties of up to $10,000 per class member under the Wiretap Act alone. Contrary to Plaintiff's assertions, their claims are without merit and fail for the following reasons.

Count I of the Complaint, which asserts a claim for breach of implied contract, fails because Plaintiff has not alleged a legally enforceable agreement between him and Inova.

Count II, which asserts a claim for unjust enrichment in the alternative to breach of implied contract, fails because Plaintiff has not adequately plead that he conferred a benefit on Inova for which he should expect payment.

Count III, which asserts a claim for violation of the federal Wiretap Act, fails because the Act does not apply when the defendant was a party to the communication, and because the Wiretap Act's crime-tort exception is similarly inapplicable. Inova was a party to the communications at issue, and no alleged basis exists—or reasonably could exist—on which to invoke the statute's

crime-tort exception for liability.

## II. THE ALLEGATIONS

Inova is a non-profit hospital system organized under Virginia law, providing health care services throughout Virginia and several parts of Maryland. (Class Action Complaint, "Compl."), PageID 4, ¶ 13.) Inova is headquartered in Fairfax, Virginia. (*Id.*) Plaintiff is a resident of Virginia who claims to be a patient at Inova who has used Inova's website and patient portal. (*Id.* at PageID 4, ¶ 14.)

Inova operates a website, https://www.inova.org/ (the "Website") and patient portal. (*See id.*, PageID 2, ¶ 2.) The Website is a public website through which anyone with an internet connection (including patients, non-patients, their families, doctors, researchers, visitors, prospective employees, donors, etc.) can access general information about Inova, identify Inova's facilities and services, seek employment, register for events, and more. (*See id.*) The patient portal, unlike the Website, requires a username and password for access and can be used by patients to, among other things, interact with their health care providers.

Plaintiff generally alleges the Website and patient portal contain tracking pixels that disclosed patients' personally identifiable information and protected health information (Plaintiff's "Information") to third parties like Facebook and Google. (*Id.*, PageID 2, ¶ 3; *id.*, PageID 3, ¶ 6.) According to Plaintiff, Inova "deployed the Pixels' tracking technology to surreptitiously collect patients' Private information […] without Plaintiff's and Class Members' knowledge or consent." (*Id.*, PageID 2-3, ¶ 5.) These communications are not messages between patients and doctors; rather, they allegedly include web addresses, page views, search terms, providers, conditions, button clicks, and so on. (*See id.* ¶ 3; *see also id.* ¶¶ 20, 35, 43, 61-62.) Plaintiff alleges Inova utilized pixels for the purpose of improving marketing and profits. (*Id.*, PageID 5, ¶ 17; *id.*, PageID 19-20, ¶ 86.) Plaintiff further alleges Inova's purpose when using pixels was to commit crimes and

torts, (*id*., PageID 30, ¶¶ 155; *id*, PageID31, ¶¶ 158-159) – though he provides no facts in support of this baseless allegation.

Plaintiff alleges that he first became a patient of Inova in 2020 and has since used Inova's website and patient portal. (*Id.*, PageID 21, ¶¶ 92-94.) He also alleges that he has a Facebook account, (*see id.*, PageID 21, ¶ 96), and alleges that due to Inova's use of tracking pixels, his Private Information has been disclosed to Google, Facebook, and unnamed third parties. (*Id.*, PageID 21, ¶¶ 95-96.) However, Plaintiff does not allege that Inova or any tracking technologies disclosed his (or anyone else's) Social Security number, birth date, medical diagnoses, physician-patient communications or records, or financial information to any third parties, including Google and Facebook.

Based on these allegations, Plaintiff asserts the following three causes of action against Inova: Count I – breach of implied contract; Count II – unjust enrichment (in the alternative to Count I); and, Count III – violation of the Electronic Communications Privacy Act 18 U.S.C. § 2510 *et seq* (*i.e.*, the Wiretap Act). Plaintiff purports to represent a presently-unknown class of "[a]ll individuals who visited Inova Health's websites and whose Private Information was disclosed to third parties through the Facebook or Google pixel and other related tracking technology without their authorization." (*Id.*, PageID 23, ¶ 103.)

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of actions that fail to state a claim upon which relief can be granted. For the purposes of a Rule 12(b)(6) motion, courts may only rely upon the complaint's allegations and those documents attached as exhibits or incorporated by reference. *Walsh v. Fam. First Home Healthcare LLC*, No. 2:22-CV-368, 2023 WL 9317547, at *2 (E.D. Va. July 21, 2023) (citing *Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985). Courts will favorably construe the allegations of the complainant

and assume that the facts alleged in the complaint are true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, a court "need not accept the legal conclusions drawn from the facts," nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc., v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

## IV. ARGUMENT

### A. Plaintiff Fails to State a Claim for Violation of the Electronic Communications Privacy Act 18 U.S.C. § 2510 *et seq*.

In Count III, Plaintiff alleges a violation of the Electronic Communications Privacy Act ("ECPA" or "Wiretap Act"), 18 U.S.C. § 2510 *et seq*., based on Inova's alleged use of tracking pixel technology on its website and patient portal pursuant to 18 U.S.C. §§ 2520, 2511(1), and 2511(2), (Compl., PAGEID 28-33, ¶¶ 139-169), and asks the Court to impose crippling statutory penalties of $10,000 per putative class member. (*Id*., PAGEID 32-33, ¶169); *see, e.g. DIRECTV, Inc. v. Beecher*, 296 F. Supp. 2d 937, 943 (S.D. Ind. 2003) (describing Wiretap penalties as "draconian"). According to Plaintiff, this draconian relief is justified because Inova allegedly intercepted and subsequently disclosed Plaintiff's Information for the purpose of committing various criminal or tortious acts. (*Id*., PAGEID 30-31, ¶¶ 155-158.) Plaintiff, however, falls well short of stating a viable wiretap claim.

A plaintiff alleging a violation under these sections of the ECPA is required to show that the defendant: 1) intentionally 2) intercepted or endeavored to intercept 3) the contents of 4) an electronic communication 5) using a device. *Centre Law and Consulting, LLC v. Axiom Resource Management, Inc.*, 456 F.Supp.3d 765 (E.D. Va. 2020). As described below, however, the ECPA contains an exception stating that a party to the communication at issue cannot be found to have violated the statute. In short, a party to such communications cannot "intercept" that which was intended for them to receive. Plaintiff admits that Inova was a party to the communications at

issue. Because Inova was a party to the at-issue communications, the issue then becomes whether the alleged conduct was conducted with a criminal and/or tortious purpose, which would render the party exception inapplicable. This narrow "crime-tort exception" states that a party to the communication can be liable under the ECPA if "such communication is intercepted for the purpose of committing any criminal or tortious act..." 18 U.S.C. § 2511(2)(d) (emphasis added). Plaintiff has failed to plead sufficient facts to support an inference that Inova, as the intended recipient of the communications *initiated by the plaintiff*, intercepted the communication for the purpose of a tortious or criminal act. Plaintiff did not allege any such purpose nor, indeed, any plausible reason that Inova would intentionally set a scheme in place to harm the very patients it has set out to serve, nor that Inova committed any crime or tort. For these and further reasons described below, Plaintiff fails to state a valid claim under the ECPA, and thus, Count III must be dismissed.

*i. In General, A Party to a Communication Cannot Be Liable for a Violation of ECPA.*

The Wiretap Act does not apply where the alleged interceptor was a party to the communications in question. 18 U.S.C. § 2511(2)(d). Specifically, the Wiretap Act provides:

> It shall not be unlawful . . . for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or any State.

*Id*. *See also Williams v. Dukehealth*, 2024 WL 898051 (M.D. N. Car., Mar. 1, 2024)(dismissing plaintiff's ECPA claim because defendant was a party to the communication and finding that "[c]ourts interpreting [the ECPA] have held that a mere receipt of a communication does not constitute a violation of [the ECPA]); *In re Nickelodeon Consumer Privacy Litigation*, C.A.3 (N.J.) 2016, 827 F.3d 262, certiorari denied 137 S.Ct. 624, 580 U.S. 1048, 196 L.Ed.2d 516

(finding that operators of websites that placed cookies on users' computers did not violate the Wiretap Act in part because website operators were parties to the communications with the computers).

Here, the only communications Plaintiff claims Inova intercepted were his interactions with Inova's website and patient portal. (*See* Compl., PAGEID 29-30, ¶¶ 148-152.) Inova was thus a party to the communications, which Plaintiff admits. (*Id*. PAGEID 30, ¶ 157.) Consequently, Plaintiff has no claim under the Wiretap Act absent application of the exception-to-the-exception, *i.e.*, the "crime-tort exception," which requires him to plausibly allege that Inova intercepted the communications that plaintiff initiated "for the purpose" of committing a crime or tort. 18 U.S.C. § 2511(2)(d).

*ii. The Crime-Tort Exception Does Not Apply.*

a. Plaintiff Fails to Allege an Independent Tort.

The ECPA contains several specifically-defined statutory exceptions. One is the "crime-tort" exception, which states that a party to a communication cannot violate the ECPA "unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or any State." 18 U.S.C. § 2511(d). (Emphasis added.)

To trigger the crime-tort exception, the alleged crime or tort must be distinct from the interception itself. *See Caro v. Weintraub*, 618 F.3d 94, at 100-01 (2d. Cir. 2010); *In re Google Inc.*, 806 F.3d 125, 145 (3d Cir. 2015) ("[A]ll authority of which we are aware indicates that the criminal or tortious acts contemplated by § 2511(d) are acts secondary to the acquisition of the communication involving tortious or criminal use of the interception's fruits."). *See also Pena v. Gamestop*, 670 F. Supp.3d 1112, 1119 (S.D. Cal. 2023) (A plaintiff must plead sufficient facts to support an inference that the defendant "intercepted the communication for the purpose of a

tortious or criminal act that is *independent* of the intentional act of recording or interception itself.") (Emphasis added.) In other words, a "simultaneous tort arising from the act of recording itself is insufficient," because "[n]othing more is required after the interception is made for liability to attach based on this tort." *Caro*, 618 F.3d at 100-01. Thus, to state a claim, Plaintiff must allege Inova engaged in a criminal or tortious act *beyond* the use of pixels on its website and patient portal.

Plaintiff's own allegations belie the separateness he must show. Plaintiff alleges that Inova supposedly "intercepted the contents of Plaintiff's and other Class Members' electronic communications for the purpose of committing a tortious or criminal act in violation of the Constitution or laws of the United States or any State." (Compl., PAGEID 30, ¶ 155.) But that act is alleged to have occurred *at the very moment* the communications were allegedly intercepted. Plaintiff alleges that his communications with Inova's website and patient portal were "instantaneously" intercepted and transmitted to Facebook, (*id*., PAGEID 8, ¶37), and that the pixels intercepted and disclosed his communications "contemporaneously," (*id*., PAGEID 12, ¶ 49; *id*. PAGE ID 29-30, ¶¶ 148-152). Plaintiff thus alleges only one action – with no intervening human act or decision-making required. That is inherent in the nature of technology; the alleged interception and disclosure are a singular function, according to Plaintiff. Consequently, the alleged unlawful act occurs at the moment of, and *simultaneously* with, the interception. The two are inseparable, which defeats the claim.

There are no cases in Virginia or its related federal courts applying the crime-tort exception where a violation of the ECPA was alleged based on a company's use of ubiquitous "pixel" technology on its website. But other courts have found that the supposed criminality alleged by Plaintiff in this matter—the collection of personal information in violation of privacy laws—

"inheres in the alleged interception," such that where "[t]he collection of information itself was not for the purpose of committing a crime or tort […]; rather, the apparent purpose was to use the information collected for market research and consumer analysis solely for the benefit of [defendant] in better reaching and serving its patients," there is no violation of the ECPA. *Doe v. Kaiser Foundation Health Plan, Inc.*, 2024 WL 1589982, at *10 (N.D. Cal, Apr. 11, 2024) (Dismissing plaintiff's ECPA claim, that alleged a violation of HIPAA, because "the act of interception itself cannot be the crime or the tort. Violation of HIPAA was not the purpose of the alleged interception.") (Emphasis added). The Western District of Washington found that a party's use of pixels does not violate the ECPA. *See, e.g. Nienaber v. Overlake Hospital Med. Ctr.*, 2024 WL 2133709, at *15 (W.D. Wash., May 13, 2024) (dismissing ECPA claim against medical center in pixel tracking case, holding "the 'criminal or tortious acts contemplated by §2511(2)(d) are acts secondary to the acquisition of the communication involving tortious or criminal use of the interception's fruits.' [*Pena*] (quoting *In re Google Cookie*, 806 F.3d at 145)). The same logic applies to alleged violation of the VHRPA. Violation of that statute, which states that "no health care entity ... may disclose an individual's health records" without permission from the patient or other legal authorization, Va.Code Ann. § 32.1–127.1:03 (2010), was not the purpose of the alleged interception or disclosure. Further Plaintiff fails to allege what "health record" was disclosed, which is dipositive to Plaintiffs' alleged criminal or tortious act.

Since Plaintiff has pled no plausible tortious or criminal act that was independent from the alleged recording, the ECPA's crime-tort exception does not apply.

b. Plaintiff Does Not Identify a Criminal or Tortious Purpose Sufficient to Invoke the Crime-Tort Exception.

Even if Plaintiff had sufficiently articulated a separate and independent act, he still fails to identify any criminal or tortious purpose to the alleged interception of Plaintiff's information, as

required under the ECPA's crime-tort exception because as referenced in the Complaint, "[a]s with Google's tracking pixel, the Facebook pixel's primary purpose is for marketing and ad targeting and sales generation." (See Compl., PAGEID 9,¶ 39.)The importance of such purpose is highlighted in *Caro v. Weintraub*, 618 F.3d 94 (2d. Cir. 2010), where the Second Circuit Court of Appeals found:

> Congress chose the word "purpose" for a reason. Therefore, the offender must have as [its] objective a tortious or criminal result. Had Congress intended for the act of recording itself to provide the tortious intent necessary, it could have chosen to define the exception in terms of interception of oral communications *resulting in* a tortious or criminal act. But Congress limited the cause of action to instances *where one party to the conversation deliberately seeks to harm the other participant* through the information intercepted.

*Id*. at 100 (2d Cir. 2010) (second emphasis added).

*Caro*, in affirming the dismissal of an ECPA claim, found "[t]here is a temporal thread that runs through the fabric of the statute and the case law. At the time of the recording the offender must intend to use the recording to commit a criminal or tortious act. Merely intending to record the plaintiff is not enough. [...] We join the courts that have considered this question, and hold that a cause of action under §2511(2)(d) requires that the interceptor intend to commit a crime or tort independent of the act of recording itself." *Id.* at *99-100. *See also In Re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022)("Under this exception, plaintiffs must allege that either the 'primary motivation or a determining factor in [the defendant's] actions has been to injure plaintiffs tortuously.");[1] and, *Boddie v. ABC, Inc.*, 881 F.2d 267, 270 (6th Cir. 1989)("We

---

[1] The Wiretap Act's legislative history demonstrates "that the 'criminal' or 'tortious' purpose requirement is to be construed narrowly, covering only acts accompanied by a specific contemporary intention to commit a crime or tort." *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 515 (S.D.N.Y. 2001) (emphasis added). In *Doublelick*, the court noted the Wiretap Act originally exempted all interceptions when done with the consent of a party to the communication. Id. (citing 2 U.S. Code Cong. & Ad. News, 90th Cong., 2d Sess., p. 2182 (1968)). Given concern this exception was too permissive, Congress added the exception-to-the-exception. *DoubleClick*, 154 F. Supp. 2d at 515. In adding the limitation on party consent, the record demonstrates the "key distinction" between permissible and impermissible disclosures was that "defendant's intent in recording was to injure another party." *Id*. (comparing 114

think it is the *use* of the interception *with the intent to harm* rather than the fact of interception that is critical to liability" (second emphasis added)). ("[T]he defendant must have the intent to use the illicit recording to commit a tort or crime beyond the act of recording itself.... Intent may not be inferred simply by demonstrating that the intentional act of recording itself constituted a tort. A simultaneous tort arising from the act of recording itself is insufficient."); *Sussman v. Am. Broad. Companies, Inc.,* 186 F.3d 1200, 1202–03 (9th Cir.1999) ("Under section 2511, the focus is not upon whether the interception itself violated another law; it is upon whether the *purpose* for the interception—its intended use—was criminal or tortious.... Where the purpose is not illegal or tortious, but the means are, the victims must seek redress elsewhere.").

*Caro* also examined several decisions by other federal circuit courts: "Several of our sister circuits have tackled the issue, each reaching the conclusion that [...] the defendant must have the *intent to use* the illicit recording to commit a tort or crime beyond the act of recording itself." *Caro*, 618 F.3d 94, at 98 (emphasis added). The same analysis applies in this case.

Further, courts typically do not find defendants liable under the ECPA when, as here, the alleged violation was for the alleged purpose of increasing profitability. *See, e.g. In re Meta Pixel Healthcare Litig.*, 647 F.Supp. 3d 778, 797 (N.D. Cal 2022)("Multiple courts in this district have found that the crime-tort exception … is inapplicable where the defendant's primary motivation was to make money, not to injure plaintiffs tortuously."); *Roe v. Amgen Inc.*, No. 2:23-CV-07448-MCS-SSC, 2024 WL 2873482, at *6 (C.D. Cal. June 5, 2024)(finding "the crime-tort exception is inapplicable where a defendant's primary motivation is to make money rather than to injure

Cong. Rec. 14694-95 (May 23, 1968) ("Such one-party consent is also prohibited when the party acts in any way with an intent to injure the other party to the conversation in any other way . . . For example, . . . for the purpose of blackmailing the other party, threatening him, or publicly embarrassing him . . . ."), with S. Rep. No. 90-1097 (1968) at 2236-37 ("There are, of course, certain situations in which consensual electronic surveillances may be used for legitimate purposes . . . [as with recordings made] without intending in any way to harm the nonconsenting party.")). The requirement that the defendant have some malicious purpose likely is why the Wiretap Act carries massive statutory penalties of $10,000 per violation, to punish those who act with a nefarious intent to inflict harm.

plaintiffs tortiously or criminally.") Here, Plaintiff alleges that Inova utilized pixels "to increase the success of its profitability, advertising and marketing." (Compl., PAGEID 5, ¶ 17; *see also id.*, PageID 19-20, ¶ 86.) Thus, as plead by Plaintiff, Inova did not have the requisite criminal or tortious purpose to activate the ECPA's crime-tort exception.

Plaintiff makes conclusory statements but does not plead sufficient facts to show Inova's intent to commit a tort or crime—because no such intent exists—and thus the crime-tort exception cannot apply, and this claim cannot stand.

*c.* As Pled, No Violation of HIPAA or VHRPA Occurred.

Not only has Plaintiff not sufficiently argued that Inova had the purpose to commit a crime or tort due to alleged violations of the Health Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C. § 1320d-6, and the Virginia Health Records Privacy Act ("VHRPA"), VA ST § 24.1-127.1:03(A), but he has not sufficiently plead that any violation occurred. Plaintiff generally alleges the type of information that may be transmitted when an individual visits the Website - web addresses, page views, search terms, providers, conditions, button clicks, and so on – he alleges no specific examples of information he allegedly provided. (*See id.* ¶ 3; *see also id.* ¶¶ 20, 35, 43, 61-62.) Courts in other districts have found that these types of allegations fall short of stating a Wiretap Act claim. *See Santoro v. Tower Health*, 2024 WL 1773371 (E.D. Pa. April 24, 2024); *Smart v. Main Line Health*, 2024 WL 2943760 (E.D. Pa. June 10, 2024). While Plaintiff argues that Inova's alleged actions involved "precisely the type of identifying information that HIPAA requires healthcare providers to de-anonymize to protect the privacy of patients," (Compl., PAGEID 11, ¶ 47,)[2] a recent ruling from Texas's Northern District makes clear that Plaintiff's cited HHS guidance is unlawful. *See American Hospital Association v. Becerra*, No.

[2] citing www.hhs.gov/hipaa/for-professionals/privacy/special-topics/de-identification/index.html.

4:23-cv-01110-P, at *29 (N.D. Tex. June 20, 2024). Accordingly, the facts as pled do not rise to the level of any kind of HIPAA violation, and so the crime-tort exception does not apply.

Similarly, Plaintiff's allegations do not substantiate any violation of the Virginia Health Records Privacy Act, or VHRPA. This act "recognize[s] an individual's right of privacy in the content of his health records." Va.Code Ann. § 32.1–127.1:03 (2010). Under VHRPA "no health care entity ... may disclose an individual's health records" without permission from the patient or other legal authorization. *Id*. However, the statute also clearly defines the term "health record" as "any written, printed or electronically recorded material maintained by a health care entity in the course of providing health services to an individual concerning the individual and the services provided." Va.Code Ann. § 32.1–127.1:03(B). The transmissions as pleaded by Plaintiff in this matter do not constitute a "health record" as contemplated by the Virginia legislature, and accordingly Plaintiff is unable to plead sufficient facts to uphold any claim of a violation of VHRPA. Indeed, none exist.

*d.* <u>Plaintiff Cannot Argue That Violations of HIPAA or VHRPA Are the Alleged Crime or Tort That Triggers the "Crime-Tort Exception" Because No Private Right of Action Exists Under Either Statute.</u>

Even if Plaintiff had alleged that Inova's purpose in using the pixel was to commit a crime or tort, and even if Inova's conduct violated HIPAA and VHRPA, Plaintiff's argument still fails because neither HIPAA nor VHRPA authorize private citizens to bring a cause of action for their violation. Neither, then, should be the basis of Plaintiff's attempt to rely on the crime-tort exception.

Indeed, the Fourth Circuit has affirmed dismissal of claims brought under tort, common law, or statute when based on alleged violations of HIPAA. *See, e.g. J.R. v. Walgreens Boots Alliance, Inc.*, 2021 WL 4859603 (4th Cir. 2021)(finding "[e]very circuit court to consider whether

HIPAA created a private right to sue has found that it does not. This is because HIPAA does not expressly allow for a private cause of action, but delegates enforcement authority to the Secretary of the Department of Health and Human Services, reflecting Congress's intent to forgo creating a private remedy. We see no reason to chart a different course from our sister courts. [The plaintiff] has no private right of action under HIPAA."); *see also Payne v. Taslimi*, 998 F.3d 648, 660 (4th Cir. 2021).

Similarly, this very court has previously ruled that no private cause of action exists based on VHRPA. This is because the "statute lacks any express or implied authorization that private parties may file civil actions in court and, critically, the Virginia Supreme court has held that '[w]hen a statute is silent ... courts have no authority to infer a statutory private right of action without demonstrable evidence that the statutory scheme necessarily implies it.'" *Harvey v. United States*, 2022 WL 17405826, at *5 (E.D. Va., 2022)(citing *Cherrie v. Virginia Health Servs., Inc.*, 787 S.E.2d 855, 858 (Va. 2016).

The same rule applies in this case. Plaintiff cannot circumvent the intended regulatory mechanisms of either HIPAA or VHRPA by bootstrapping alleged violations of these statutes to an ECPA claim. Doing so alters the statutory intent of both statues and impermissibly expands the scope of their intended enforcement coverage. Further, this would permit plaintiffs to allege any concocted criminal act to form the basis of a ECPA violation where one does not exist.

For all these reasons Plaintiff's claim under the ECPA fails.

## B. Plaintiff's Breach of Implied Contract Claim Fails Because No Implied Contract Exists Between Plaintiff and Inova.

In the absence of an express contract, Virginia law will in certain circumstances recognize an implied-in-fact or an implied-in-law contract. *DiMuroGinsberg, P.C. v. VLOX, LLC*, No. 1:18-cv-1046, 2019 WL 3728254, at *6 (E.D. Va. Aug. 7, 2019); *City of Norfolk v. Norfolk Cty.*, 120

Va. 356, 91 S.E. 820, 822 (1917). A contract implied in fact is a true contract, differing from an express contract only by its lack of express terms and conditions. Without the intent to contract, a court cannot find a contract implied in fact. *Doe v. Washington & Lee Univ.*, 439 F. Supp. 3d 784, 791 (W.D. Va. 2020) (citing *In re Virginia Block*, 16 B.R. 771, 774 (W.D. Va. Bankr. 1982)).

On the other hand, an implied-in-law contract, also known as a "quasi-contract," is not a contract at all in the ordinary sense of the word; rather, it is "a remedy imposed by the court." *Id*. A court imposing an implied-in-law contract imposes liability based upon the facts and circumstances, independent of agreement or presumed intention. *Hendrickson v. Meredith*, 161 Va. 193, 170 S.E. 602, 605 (1933); *Rosetta Stone, Ltd. v. Google, Inc.*, 676 F.3d 144, 166 (4th Cir. 2012) (noting that under Virginia law, "the concept of an implied-in-law contract, or quasi contract, applies only when there is not an actual contract or meeting of the minds"). Said differently, in Virginia, a contract implied in law is based in the same principles as an equitable claim of unjust enrichment. ("It is true the law will imply a promise to pay for goods received. However, this implied or quasi-contract is based on equitable principles ... that a man shall not be allowed to enrich himself unjustly at the expense of another.") (internal citations omitted). *Riley v. Barringer*, 337 F. Supp. 3d 647, 654 (W.D. Va. 2018), *see Kern v. Freed Co*., 224 Va. 678, 299 S.E.2d 363, 364–65 (1983). Plaintiff's Complaint does not establish the existence of either an implied-in-fact or implied-in-law contract.

*i. Count I for Breach of Implied Contract Fails Because Plaintiff Has Not Alleged Any Legally Enforceable Agreement Exists Between Him and Inova.*

Under Virginia law, an implied-in-fact contract is a true contract, containing all elements of an enforceable agreement. "It differs from an actual contract in that the parties have not reduced it to a writing or to an oral agreement; rather, the court infers the implied-in-fact agreement from the course of conduct of the parties." *McConnell v. Servinsky Eng'g, PLLC*, 22 F. Supp. 3d 610,

618 (W.D. Va. 2014). Consideration and mutual assent are required elements. *See Spectra-4, LLP v. Uniwest Com. Realty, Inc.*, 772 S.E.2d 290, 295 (Va. 2015). Further, an implied-in-fact contract must be adequately alleged; it will not be assumed. *See, e.g., DiMarco Constructors, LLC v. Staunton Plaza, LLC*, No. 5:09cv00001, 2009 WL 2058686, at *3 (W.D.Va. July 14, 2009); *TransDulles Ctr. Inc. v. USX Corp.*, 976 F.2d 219, 228 (4th Cir.1992). Strikingly, Plaintiff did not adequately allege consideration or a meeting of the minds—essential elements for an implied-in-fact contract—therefore, his claim for breach of implied contract must fail.

a. Plaintiff Has Not Alleged Adequate Consideration.

It is elementary that any valid contract requires consideration. *See Montagna v. Holiday Inns, Inc.*, 221 Va. 336, 269 S.E.2d 838, 844 (1980). Consideration is the price bargained for and paid for a promise; "it may be in the form of a benefit to the party promising or a detriment to the party to whom the promise is made. *Reynolds v. USAA Life Ins. Co.*, 678 F. Supp. 3d 736, 746 (E.D. Va. 2023), aff'd, No. 23-1770, 2024 WL 2795185 (4th Cir. May 31, 2024) (citing *Smith v. Mountjoy*, 280 Va. 46, 694 S.E.2d 598, 602 (2010)). However, "[a] party's agreement to do or refrain from doing something that it is already legally obligated to do or refrain from doing is not consideration." *Bojorquez-Moreno v. Shores & Ruark Seafood Co.*, 92 F. Supp. 3d 459, 468 (E.D. Va. 2015).

Plaintiff alleges that, as part of the implied contract, Inova agreed to "safeguard and not disclose their Private Information without consent," (Compl., PAGE ID 26, ¶ 127), yet makes no mention of any consideration given to Inova in exchange for such agreement. Further, this alleged agreement by Inova is once again not supported by any facts whatsoever. The closest that Plaintiff gets to alleging Inova made any such "bargain" with him is his reference to Inova's Notice of

Privacy Practices.[3] (*Id.*, PAGEID 16-17, ¶¶ 68-71.) However, this notice is a legal obligation. At the beginning Inova's privacy policy, it says: "The Health Insurance Portability and Accountability Act (HIPAA) requires that we provide you with a notice regarding how your PHI may be used or disclosed and your rights concerning that information." A legal obligation, such as one created by HIPAA, is not sufficient consideration under Virginia law. *Bojorquez-Moreno*, 92 F. Supp. 3d 459 (E.D. Va. 2015). Simply put, Inova's Notice of Privacy Practices does not constitute consideration sufficient to establish an implied-in-fact contract between the Parties. Thus, he has alleged no implied contract that Inova could have breached.

b. Plaintiff Has Not Alleged Mutual Assent.

"Mutual assent by the parties to the terms of a contract is crucial to the contract's validity." *AB Staffing Sols., LLC v. Asefi Cap., Inc.*, No. 3:22CV32 (DJN), 2022 WL 16555707, at *9 (E.D. Va. Oct. 31, 2022) (citing *Wells v. Weston*, 326 S.E.2d 672, 676 (Va. 1985)). Further, "there must be mutual assent of the contracting parties to terms *reasonably certain* under the circumstances" to form an enforceable contract under Virginia law. *Id.* (citing *Allen v. Aetna Cas. & Sur. Co.*, 281 S.E.2d 818, 820 (Va. 1981))(emphasis added). A meeting of the minds cannot exist simply because the parties independently believe the exact same thing. *Spectra-4, LLP*, at 295 (*citing Green v. Smith*, 146 Va. 442, 452, 131 S.E. 846, 848 (1926)). "Instead, mutuality of assent exists by an *interaction* between the parties, in the form of offer and acceptance, manifesting by word, act, or conduct, which evidence the intention of the parties to contract." *Id.*

Earlier this year, in finding no mutual assent, this Court emphasized that a meeting of the minds requires "a distinct intention common to both and without doubt or difference." *Multiscaff Ltd. v. APTIM Fed. Servs., LLC*, No. 1:23CV1369 (DJN), 2024 WL 234736, at *9 (E.D. Va. Jan.

---

[3] https://www.inova.org/sites/default/files/patient_visitor/privacy_compliance/notice_of_privacy_practices/inova-notice-of-privacy-practices-09.23.english.pdf

22, 2024) (citing *Lacey v. Cardwell*, 217 S.E.2d 835, 843 (Va. 1975); *Persinger & Co. v. Larrowe*, 477 S.E.2d 506, 509 (Va. 1996)). This Court has also found there is no mutual assent requisite to form a contract when a party fails to allege that parties agreed on the scope or other definite terms of an alleged contract. *See AB Staffing Sols., LLC v. Asefi Cap., Inc.*, No. 3:22CV32 (DJN), 2022 WL 16555707, at *16 (E.D. Va. Oct. 31, 2022).

Nowhere in Plaintiff's Complaint does he allege facts that could establish a manifestation of mutual assent or the parties' meeting of the minds based on either party's conduct. For example, Plaintiff does not make any allegation regarding how Inova possibly understood that it entered into—or intended to enter into—an implied contract with Plaintiff. Critically, there are no allegations whatsoever regarding how and when the terms of the allegedly-implied contract were agreed upon, much less any facts demonstrating Inova's supposed agreement or understanding of the contract's scope or any 'definite' terms. Said differently, there are no allegations from which this Court could infer a contract from the circumstances surrounding the transactions that Plaintiff describes. Even when reading the Complaint in a light most favorable to Plaintiff, Plaintiff has no magic wand with which he can create an implied-in-fact contract between himself and Inova; he still must allege *facts* requisite to establish a contract implied-in-fact in order for Count I to go forward. Since he has not done so, Plaintiff's claim for breach of implied contract must be dismissed.

*ii. Plaintiff Has Not Alleged a Contract Implied in Law.*

Virginia courts also recognize an action for breach of a contract implied-in-law because, as a principle, it "requir[es] one who accepts and receives the services of another to make reasonable compensation for those services." *T.G. Slater & Son, Inc. v. Donald P. & Patricia A. Brennan LLC*, 385 F.3d 836, 843 (4th Cir. 2004) (citing *Po River Water & Sewer Co. v. Indian*

*Acres Club of Thornburg, Inc.*, 255 Va. 108, 495 S.E.2d 478, 482 (1998)). Specifically, to state a claim for breach of contract implied-in-law, plaintiffs must allege that: (1) they rendered valuable services, (2) to the defendant, (3) which were requested and accepted by the defendant, (4) under circumstances that reasonably notified the defendant that the plaintiff expected to be paid by the defendant. *T.G. Slater & Son, Inc,* at 843. This claim is based in the same principles as an equitable claim of unjust enrichment. *Riley v. Barringer*, 337 F. Supp. 3d 647, 654 (W.D. Va. 2018); *see Kern v. Freed Co*., 224 Va. 678, 299 S.E.2d 363, 364–65 (1983).

According to the Virginia Supreme Court, "[o]ne may not recover under a theory of implied contract simply by showing a benefit to the defendant, without adducing other facts to raise an implication that the defendant promised to pay the plaintiff for such benefit." *Nedrich v. Jones*, 245 Va. 465, 476, 429 S.E.2d 201, 207 (1993). Thus, Count I fails not only because Plaintiff has not alleged the first and fourth elements required to establish a claim of breach of implied-in-law contract, but also for the reason that Plaintiff adduces no facts that would raise an implication that Inova promised to compensate Plaintiff for his Information.

Regarding the first and fourth elements (and assuming, *arguendo*, that the facts contained in the Complaint are true) Plaintiff has not alleged that he rendered valuable services to Inova (Plaintiff merely used Inova's website and patient portal), nor that the circumstances reasonably notified Inova that Plaintiff expected to be paid by the defendant. In fact, Plaintiff does not even allege that he expected to be paid in exchange for his Information, so it is unclear how the facts alleged would have notified Inova of such an expectation on Plaintiff's part. For these reasons, and for the reasons outlined in the unjust enrichment claim analysis below, Plaintiff has failed to allege a contract implied-in-law, and Count I must be dismissed.

**C. Unjust Enrichment.**

*i. Plaintiff Failed to Plead All Necessary Elements of Unjust Enrichment Under Virginia Law.*

To state a cause of action for unjust enrichment, Plaintiff must allege that: 1) Plaintiff conferred a benefit upon Inova; 2) Inova knew of the benefit and should reasonably have expected to repay Plaintiff; and, 3) Inova accepted or retained the benefit without paying for its value. *Amazon.com Inc. v. WDC Holdings LLC*, 2023 WL 2815140. As is discussed below, Plaintiff's claim fails because he does not plead the required elements under Virginia law.

a. <u>Plaintiff Does Not Allege That Inova Should Reasonably Have Expected to Pay Plaintiff for Plaintiff's Use of Inova's Website.</u>

Plaintiff's unjust enrichment claim must be dismissed because Plaintiff, in neglecting to plead the second element of unjust enrichment, failed to state a claim upon which relief can be granted. Civ. R. 12(b)(6). Under Virginia law, "the heart of an unjust enrichment claim is the implied promise that a defendant would pay for the benefit that [it] received." *In re All Pending Chinese Drywall Cases*, 80 Va. Cir. 69 (2010), WL 7378659, *7. As such, "[t]he failure to plead anything about [a] [d]efendant's reasonable expectation to pay [p]laintiffs for some benefit that [a defendant] received is fatal to" a claim for unjust enrichment. *Id*. "The bare allegation that a defendant should be expected to repay whatever" Plaintiff claims unjustly enriched Defendant "does not state a claim for unjust enrichment." *Id*. *See also Staltzer, Tr. for Est. of Morse v. Am. Merch., Inc.*, No. 1:19CV00023, 2020 WL 7023892 (W.D. Va. Nov. 30, 2020) (Dismissing plaintiff's unjust enrichment claim under Virginia law where the complaint "does not contain facts supporting the second element, that [defendants] knew of the benefit and should reasonably have expected to repay [plaintiff] (internal citations omitted).)

This rule applies even when the alleged benefit conferred to a defendant is of the type that is protected by federal law, *and* where that alleged benefit was later utilized to improve the

defendant's advertising and marketing efforts. Take, for example, *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144 (4th Cir. 2012), where the Fourth Circuit affirmed this Court's dismissal of a claim for unjust enrichment based on the use of plaintiff's trademarks. There, defendant Google, through its "AdWords" program, allowed companies to "purchase" specific words and phrases for the purpose of boosting the companies' search engine optimization. So, for example, when Rosetta Stone "purchased" the word "stone" for the purposes of AdWords, anyone who typed "stone" into their Google search bar would see Rosetta Stone's website above the non-sponsored search results. Rosetta Stone purchased several more terms through AdWords, many of which were also trademarked by Rosetta Stone. Google then allowed other companies to purchase those same words through AdWords, despite the facts that they were Rosetta Stone's trademarks and Rosetta Stone had also purchased them. Rosetta Stone claimed unjust enrichment against Google, arguing that Rosetta Stone conferred a benefit to Google by initially purchasing its trademarks through AdWords, thus increasing the value that Google could receive from the "sale" of those same words from other companies.

Even though Google had *actually* profited from the "benefit" Rosetta Stone alleged to have bestowed upon Google—and despite the fact that Google was in turn profiting off of Rosetta Stone's registered trademarks—the Fourth Circuit found that Rosetta Stone committed error fatal to its own claim when it "failed to allege facts showing that it 'conferred a benefit' on Google for which Google 'should reasonably have expected' to repay." *Id*. at 166. The Fourth Circuit also pointed out Rosetta Stone's failure to even allege or contend that Google pays any other trademark holders for the right to use their marks in the AdWords program. *Id*. Rosetta Stone's failure to plead the second element of unjust enrichment, or even so much as contend that Google pays others in the same situation, rendered Rosette Stone's allegations "insufficient to surmount even the

minimal barrier presented by a motion to dismiss" here in the Fourth Circuit. *Id*.

Here, Plaintiff's unjust enrichment claim fails for the same reasons. Plaintiff in this case has made no allegation that Inova should have reasonably expected to pay for any information allegedly disclosed via the Google or Meta Pixel. Plaintiff does not allege that Inova pays other users for information gathered by pixels, nor that other companies pay users for such information. Incredibly, Plaintiff does not even allege that he expected to be paid for this information. (*See generally*, Compl.)

Plaintiff has failed to allege the second element of an unjust enrichment claim under Virginia Law, and Plaintiff's second claim fails as a result.

b. <u>Plaintiff's Unjust Enrichment Claim Fails Because the Benefit Inova Allegedly Retained Was Not Conferred by Plaintiff.</u>

A critical element of an unjust enrichment claim under Virginia law is that the plaintiff conferred a benefit upon the defendant. If the benefit at issue was not conferred by the plaintiff, then the claim cannot stand. Take, for example, *In re Hackman*, 534 B.R. 867 (Bankr. E.D. Va. 2015). There, the plaintiff alleged the defendant-bank had been unjustly enriched as a result another party's embezzlement of funds into an account at the defendant-bank. Plaintiffs suggested that the defendant-bank was unjustly enriched from this transaction because the bank's rate of return on the improperly-deposited funds "would have exceeded the amount of interest [the bank] paid to its depositor." *Id*. at 878. This benefit, the court found, was "too attenuated from the nature of the wrong," such that "[c]ertainly, the [p]laintiffs did not confer this benefit" on the defendant-bank. *Id*. Because the plaintiff did not confer a benefit upon the defendant, the plaintiff's claim for unjust enrichment was dismissed.

Here, Plaintiff alleges that 1) he conferred a benefit to Inova in the form of his submission of private information by using Inova's website and patient portal; 2) Inova benefited from

Plaintiff's information by way of "economic, intangible, and other benefits, including substantial monetary compensation," (Compl., PAGEID 27, ¶135.) (emphasis added); and, 3) that Inova retained such alleged benefits without compensating Plaintiff. (*Id*., PAGEID 27, ¶136.) These baseless allegations are not even supported by Plaintiff's own Complaint.

Notably, Plaintiff provides no facts in support of his allegation that Inova sold Plaintiff's Information, or was monetarily compensated (let alone that it received "substantial monetary compensation") for Plaintiff's Information throughout the Complaint. (*See generally*, Compl.) While Plaintiff describes the purported "tremendous economic value" of Plaintiff's information in the Complaint, he makes no allegation that Inova actually benefitted from that economic value. (*Id*. PAGEID 20-21, ¶¶90-91.) In fact, Plaintiff only discusses the benefits to Facebook (*not* Inova) and provides a general statement as to the value of consumer data. (*Id*.) Nowhere does Plaintiff describe any monetary benefit that befell Inova as a direct result of Plaintiff's use of Inova's website and patient portal. Thus, Plaintiff's claim that Inova received "substantial monetary compensation" in exchange for Plaintiff's information is wholly unsupported, even by Plaintiff's own Complaint.

Worse yet, a plain reading of the Complaint makes clear that any "benefit" to Inova under Plaintiff's telling of the facts was not conferred by Plaintiff at all, but rather, by non-parties to this litigation. Plaintiff describes the alleged benefit conferred to Inova in paragraphs 86 – 89, and merely alleges that Inova was "compensated by Facebook, Google, and other third parties in the form of enhanced advertising services and more cost-efficient marketing on their platforms." (*Id*., PAGEID 20, ¶87.)(Emphasis added). Plaintiff further alleges that Inova received and improperly retained the benefit of reduced advertising costs. (*Id*., PAGEID 20, ¶89.) Plaintiff, a person who used Inova's website and patient portal, is in no position to confer the alleged benefits of enhanced

advertising services, cost-efficient marketing on Google and Meta platforms, and reduced advertising costs, to Inova, nor does Plaintiff plead as much.

It is clear from Plaintiff's Complaint that the benefits Plaintiff alleges in support of the first and third elements of an unjust enrichment claim are not benefits that he conferred at all. Thus, because Plaintiff has not adequately alleged that he conferred a benefit to Inova, and that Inova retained such alleged benefits without compensating Plaintiff, his unjust enrichment claim fails and must be dismissed.

*ii. Plaintiff's Unjust Enrichment Claim Cannot Go Forward if This Court Finds That a Contract Existed Between the Parties.*

Finally, under Virginia law, a plaintiff cannot sustain an unjust enrichment claim if the parties are found to have operated under a contract. *Amazon.com Inc. v. WDC Holdings LLC*, 2023 WL 2815140 ("where there is a valid contract, or where a party affirms a disputed contract, the contract precludes a recovery for unjust enrichment.") Thus, insofar as this Court finds an implied or express contract exists between Plaintiff and Inova - though for the reasons stated above, it should not - Plaintiff's claim for unjust enrichment fails as a matter of law.

## V. CONCLUSION

Plaintiff has failed to state a claim under Counts I, II, and III, and so Defendant respectfully requests this Court deny Plaintiff's Complaint pursuant to Civ. R. 12(b)(6). Plaintiff's first claim, for breach of implied contract, fails because Plaintiff's complaint does not allege facts to support an implied contract between the parties. Count II, for unjust enrichment, fails because Plaintiff does not plead all necessary elements of an unjust enrichment claim under Virginia Law—namely, that Plaintiff conferred a benefit to Inova, and that Inova should reasonably have expected to pay for such benefit. Finally, Count III, under the Wiretap Act, fails because Inova was a party to all communications and so could not have "intercepted" the communications, and because the crime-

tort exception does not apply.

Dated: July 1, 2024

Respectfully submitted,

/s/ *Laurie L. Kirkland*
Laurie L. Kirkland, VSB No. 75320
lkirkland@bklawva.com
BLANKINGSHIP & KEITH, P. C.
4020 University Drive, Suite 300
Fairfax, Virginia 22030
(703) 691-1235 (telephone)
(703) 691-3913 (facsimile)

Bryan T. Kostura *pro hac vice*
Timothy J. Lowe *pro hac vice*
McDonald Hopkins LLC
600 Superior Avenue, East, Suite 2100
Cleveland, Ohio 44114
T: 216.348.5400
bkostura@mcdonaldhopkins.com
tlowe@mcdonaldhopkins.com

*Attorneys for Defendant*
*Inova Health Care Services*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of July, the foregoing *Defendant's Memorandum in Support of Motion to Dismiss* was filed electronically with the Clerk of Court. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

*/s/ Laurie L. Kirkland*
Laurie L. Kirkland, VSB No. 75320