UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| PEDRO LUGO, individually and on behalf of all similarly situated individuals, | ) | |
| | ) | No. 1:24-cv-00700-PTG-WEF |
| *Plaintiff*, | ) | |
| v. | ) | Hon. Patricia T. Giles |
| INOVA HEALTH CARE SERVICES, | ) | |
| *Defendant*, | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

# TABLE OF CONTENTS


**TABLE OF AUTHORITIES** .......... ii

**INTRODUCTION** .......... 1

**BACKGROUND** .......... 2

- **A. Facts Specific To Plaintiff** .......... 3

**LEGAL STANDARD** .......... 4

**ARGUMENT** .......... 4

- **A. Plaintiff States A Claim For A Violation Of The Electronic Communications Privacy Act ("ECPA").** .......... 4
  - **1. Defendant cannot escape ECPA liability because the "Crime-Tort" exception applies** .......... 6
  - **2. Defendant's arguments regarding the application and pleading requirements of HIPAA and the VHRPA should be ignored** .......... 11
- **B. Plaintiff Sufficiently Alleges A Breach Of Implied Contract Claim** .......... 13
- **C. Plaintiff Sufficiently Alleges A Claim For Unjust Enrichment Under Virginia Law** .......... 15

**CONCLUSION** .......... 18

# TABLE OF AUTHORITIES

**Case** **Page(s)**

*American Hospital Association v. Becerra*,
No. 23-cv-01110 (N.D. Tex. June 20, 2024) ....... 11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....... 4

*Bell Atl. Corp. v. Twombly*,
550 US. 544 (2007) ....... 4

*B.K., v. Desert Care Network*,
No. 2:23-cv-05021 SPG (PDx), 2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) ....... 9, 12

*Brown v. Google LLC,*
525 F.Supp.3d 1049 (N.D. Cal. 2021) ....... 9

*Caro v. Weintraub*,
618 F.3d 94 (2d. Cir. 2010)....... 6

*Cully v. Smith*,
No. CL-2017-9142, 2019 WL 8883731, 102 Va. Cir. 293 (2019)....... 13

*Deteresa v. Am. Broadcasting Cos., Inc.*,
121 F.3d 460 (9th Cir. 1997) ....... 8

*Doe v. Kaiser Foundation Health Plan, Inc.*,
2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ....... 7

*Dulany Foods, Inc. v. Ayers,*
260 S.E.2d, 202 (1979) ....... 14

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*,
637 F.3d 435 (4th Cir. 2011)....... 4

*Erickson v. Pardus*,
551 U.S. 89 (2007) ....... 4

*Hartley v. Univ. of Chicago Med. Ctr.*,
No. 22 C 5891, 2024 WL 1886909 (N.D. Ill. Apr. 30, 2024)....... 5, 9, 13

*In re Capital One Consumer Data Security Breach Litigation*,
488 F.Supp.3d 374 (E.D. Va. 2020)....... 16, 17, 18

*In re Facebook, Inc. Internet Tracking Litigation*,
956 F.3d 589 (9th Cir. 2020) ....................4, 5

*In re Group Health Plan Litigation*,
No. 23-cv-267 (JWB/DJF), 2023 WL 8850243 (D.
Minn. Dec. 21, 2023) .................... 5, 9, 11, 12

*In re Hackman*,
534 B.R. 867 (Bankr. E.D. Va. 2015) ....................18

*In re High Fructose Corn Syrup Antitrust Litigation*,
216 F.3d 621 (7th Cir. 2000) ....................6

*In re: Pharmatrak*,
329 F.3d 9 (1st Cir. 2003) ....................4

*James G. Davis Construction Corporation v. FTJ, Inc.*,
298 Va. 582 (2020)....................16

*Kane v. University of Rochester*,
No. 23-cv-6027-FPG, 2024 WL 1178340
(W.D.N.Y. Mar. 19, 2024) .................... 5, 9, 11, 12

*Kurowski v. Rush System for Health*,
No. 22 C 5380, 2023 WL 8544084 (N.D. Ill. Dec. 11, 2023) .................... 5, 9, 12

*Kurowski v. Rush System for Health*,
No. 22 C 5380, 2024 WL 3455020 (N.D. Ill. Jul. 18, 2024) ....................6, 7

*Lane Const. Corp. v. Brown & Root, Inc.*,
29 F.Supp.2d 707 (E.D. Va. 1998)....................16

*McConnell v. Servinsky Engineering, PLLC*,
22 F.Supp.3d 610 (W.D. Va. May 20, 2024.)....................13

*Mekhail v. North Memorial Health Care*,
No. 23-cv-00440(KMM/TNL), 2024 WL 1332260
(D. Minn. Mar. 28, 2024) ....................5, 7, 8, 9, 11, 12

*Moorman v. Blackstock, Inc.*,
276 Va. 64 (2008)....................14

*Nienaber v. Overlake Hospital Med. Ctr.*,
2024 WL 2133709 (W.D. Wash. May 13, 2024)....................7

*Nossen v. Hoy*,
750 F.Supp. 740 (E.D. Va. 1990)....................13

*Price v. Taylor*,
251 Va. 82 (1996) .......... 14

*Reynolds v. USAA Life Insurance Company*,
678 F.Supp.3d 736 (E.D. Va. Jun. 22, 2023) .......... 14, 15

*Rosetta Stone Ltd. v. Google, Inc.*,
676 F.3d 144 (4th Cir. 2012) .......... 17

*Smith v. Loyola University Medical Center*,
No. 23-cv-15828, 2024 WL 3338941 (N.D. Ill., Jul. 9, 2024) .......... 5, 10, 11, 12, 13

*Soucie v. Virginia Utility Protection Service, Inc.*,
No. 7:22-cv-00552, 2023 WL 2991487 (W.D. Va. Apr. 18, 2023) .......... 13

*Sweat v. Houston Methodist Hospital*,
No. H-24-775, 2024 WL 3070184 (S.D. Tex. Jun. 20, 2024) .......... 5, 9, 11, 13

**Statutes**

18 U.S.C. § 2511(1) .......... 4

18 U.S.C. § 2511(2)(d) .......... 5

42 U.S.C. § 1320d-6 .......... 7, 8, 10

VHRPA § 32.1-127.1:03(A) .......... 10, 12

## INTRODUCTION

Defendant Inova Health Care Services ("Defendant" or "Inova") is a major provider of healthcare services in the DC metro area, trusted with safeguarding the private health information of more than 2 million patients annually. While it is difficult to think of any category of information that is more sensitive and private than a patient's communication with their healthcare provider, in an effort to take advantage of modern online marketing tools and leverage its patient's data for its own benefit, Defendant installed tracking pixel software ("Tracking Pixels" or "Pixels") on its websites that transmitted and disclosed patients' identifiable information ("PII") and protected health information ("PHI") (collectively referred to as "Private Information" or "PII and PHI") to third-parties, including Facebook and Google. Rather than acknowledging its misuse of its patients' Private Information and attempting to resolve their privacy violations, Defendant instead advances a number of meritless arguments including that it can freely disclose such information as long as the primary purpose is to generate profits through marketing. Defendant also further argues that: 1) Plaintiff fails to allege a tort independent of his Electronic Communications Privacy Act ("ECPA") claim; 2) Plaintiff fails to state a claim under the ECPA because he did not allege a violation of a number of federal and state laws that include a private right of action; 3) Plaintiff's unjust enrichment claim fails because he failed to plead the elements required to sustain the claim; and 4) Plaintiff's breach of an implied contract claim fails because no implied contract exists between Plaintiff and Defendant. (Motion to Dismiss or "Motion," Dkt. 22.)

However, the allegations in Plaintiff's Class Action Complaint (Dkt. 1) ("Complaint") are directly in line with numerous courts across the country that have rejected these same exact arguments raised by healthcare providers that installed unlawful tracking software which disclosed their patients' confidential healthcare information. As explained in further detail below, Plaintiff

has adequately alleged Defendant's privacy violations in his Complaint and Defendant's Motion to Dismiss should be denied in its entirety.

## BACKGROUND

Defendant Inova is a healthcare provider in the DC metro area that provides its services to more than 2 million patients annually. (Compl. at ¶ 15.) Despite its position as a massive and trusted healthcare provider, Inova configured and implemented tracking pixels to collect and transmit information from its websites ("Websites") and MyChart patient portal. (*Id*.) A pixel is a piece of code that tracks every detail about a website visitor's interaction with a website, including information about the pages they visit, and the text or phrases they type into any search boxes or fields on the website. (*Id*. at ¶¶ 3, 5.) Thus, by installing Tracking Pixels on its Websites and patient portal, Defendant surreptitiously tracked and recorded Plaintiff's and other Class members' private and protected communications and transmitted or disseminated the same to third parties, like Google and Facebook. (*Id.* at ¶¶ 17.) Such tracked and disclosed information includes statutorily protected Private Information, including information regarding medical appointment types and dates, the physician selected, medical condition selections, and PHI typed into fillable fields. (*Id.* at ¶¶ 1, 5.) Furthermore, every time Defendant sends a patient's website activity data to Google, Facebook, and other third parties, the patient's Private Information is disclosed alongside their Facebook ID, User ID, or Client ID such that third parties can easily identify the patient alongside their sensitive medical information. (*Id.* at 64.) Such information allows third parties, like Facebook, to know that a specific patient was seeking confidential medical care for specific medical conditions. (*Id.* at ¶ 53.) However, Plaintiff and the other Class members never consented, agreed, authorized or otherwise permitted Defendant to disclose their Private Information. (*Id.* at ¶ 19.) Patients like Plaintiff and the Class members do not anticipate that their trusted healthcare

provider will send Private Information obtained from their visits to Defendant's website to unknown third parties without their consent and Plaintiff and the other Class members were unaware that their Private Information was being surreptitiously transmitted to unauthorized third parties. (Compl. at ¶¶ 18, 19.) Critically, the disclosure of such Private Information via Tracking Pixels is in violation of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and various other statues which govern how health care providers and related entities must safeguard and protect Private Information. (*Id*. at ¶ 79.)

**Facts Specific To Plaintiff**.

Plaintiff has been a patient of Defendant since 2020 and has consistently used Defendant's website since then. (Compl. at ¶ 92.) On numerous occasions Plaintiff used Defendant's website, as well as the MyChart Portal, to communicate Private Information to Defendant. (*Id*. at ¶¶ 93, 94.) Specifically, Plaintiff used Defendant's website to: communicate Private Information with his healthcare provider, search for physicians, schedule appointments and procedures, receive and discuss medical diagnoses and treatment from his healthcare providers, search for symptoms, receive and view lab results, receive and view medical records, receive and view medication changes, and view his appointment history. (*Id*. at ¶ 94.) However, because Defendant utilized Tracking Pixels on its website, Defendant unlawfully tracked and unlawfully transmitted Plaintiff's Private Information identified above to Facebook and Google and other third parties. (*Id*. at ¶ 95.) The Private Information disclosed via the Tracking Pixels Defendant embedded on its website was sent alongside specific identifying information, including Plaintiff's Facebook IDs, thereby allowing his confidential communications with Defendant and the Private Information contained in those communications to be linked to his identity. (*Id.* at ¶ 96.) As Defendant's patient, Plaintiff reasonably expected that his online communications with Defendant were solely between

him and Defendant such that the communications would not be transmitted or intercepted by a third party. (Compl. at ¶¶ 97–98.)

## LEGAL STANDARD

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 US. 544, 556 (2007). In deciding a Rule 12(b)(6) motion to dismiss, the court "must accept as true all the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (internal quotations omitted). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

## ARGUMENT

### A. Plaintiff States A Claim For A Violation Of The Electronic Communications Privacy Act ("ECPA").

"The Wiretap Act [ECPA] prohibits the unauthorized 'interception' of an 'electronic communication.'" *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d at 606 (quoting 18 U.S.C. § 2511 (1)(a)–(e)). A claim under the ECPA requires the plaintiff to establish the following elements: that the defendant (1) intentionally (2) intercepted (3) the contents of (4) plaintiff's electronic communications (5) by using an electronic, mechanical, or other device. *In re: Pharmatrak*, 329 F.3d 9, 18 (1st Cir. 2003).

Admittedly, Defendant is a party to the communication between itself and Plaintiff and

under the ECPA there are exceptions to liability where a "party" to the communication has consented to the interceptions or the alleged interception is made by a "party" to the communication. 18 U.S.C. § 2511(2)(d). However, the party exception does not apply where the interceptor acts "for the purpose of" committing any crime or tort in violation of state or federal law *i.e.*, the "crime-tort exception." 18 U.S.C. § 2511(2)(d); *see also In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d at 608 ("[p]ermitting an entity to engage in the unauthorized duplication and forwarding of unknowing users' information would render permissible the most common methods of intrusion, allowing the exception to swallow the rule"). As such, Defendant asserts that it cannot violate the ECPA because its actions do not implicate the "crime-tort exception" where it has not intercepted communications for the purpose of committing any criminal or tortious act. (Motion at 12-16.) However, Defendant's arguments are unconvincing as Plaintiff's Complaint alleges several of Defendant's violations in crime or tort within the purview of the crime-tort exception exposing Defendant to ECPA liability. Indeed, courts have routinely upheld claims for ECPA violations where, as here, the plaintiffs allege that their health care providers are disclosing sensitive health information by the use of tracking pixels. *See, e.g.*, *Kurowski v. Rush Sys for Health*, No. 22-cv-5380, 2023 WL 8544084, at *3 (N.D. Ill. Dec. 11, 2023); *Kane v. University of Rochester*, No. 23-cv-6027, 2024 WL 1178340, at *8 (W.D.N.Y. Mar. 19, 2024); *Mekhail v. North Memorial Health Care*, No. 23-cv-00440, 2024 WL 1332260, at *5–*6 (D. Minn. Mar. 28, 2024); *In re Group Health Plan Litigation*, No. 23-cv-267, 2023 WL 8850243, at *8 (D. Minn. Dec. 21, 2023); *Hartley v. Univ. of Chicago Med. Ctr.*, No. 22-cv-5891, 2024 WL 1886909, at *2–*3 (N.D. Ill. Apr. 30, 2024); *Sweat v. Houston Methodist Hospital*, No. H-24-775, 2024 WL 3070184, at *4 (S.D. Tex. Jun. 20, 2024); *Smith v. Loyola University Medical Center*, No. 23-cv-15828, 2024 WL 3338941, at *7 (N.D. Ill., Jul. 9, 2024). Accordingly, this

Court should similarly allow Plaintiff's ECPA claims to stand.

1. Defendant cannot escape ECPA liability because the "Crime-Tort" exception applies.

Defendant contends that it cannot be held liable under the ECPA because Plaintiff has failed to allege a crime or tort which is distinct from the interception itself, and because Plaintiff failed to allege any criminal or tortious purpose to the alleged interception. (Motion at 12-16.) Both arguments are unconvincing.

First, Defendant states that Plaintiff must allege a criminal or tortious act that goes "beyond the use of pixels on its website and patient portal." (*Id*. at 13.) Defendant's reliance on *Caro* misinterprets the "separateness" required to invoke the crime-tort exception, and rather, supports Plaintiff's argument that he has sufficiently pled his ECPA claim. *Caro v. Weintraub*, 618 F.3d 94, at 100-101 (2d. Cir. 2010); (Motion at 12-13.) In *Caro*, the court analyzed the "temporal thread that runs through the fabric" of the crime-tort exception stating that "merely intending to record the plaintiff is not enough." *Id*. 618 F.3d at 100. That, if "at the moment he hits record, the offender does not intend to use the recording for criminal or tortious purposes, there is no violation. But if, at the time of the recording, the offender plans to *use* the recording to harm the other party to the conversation, a civil cause of actions exists. . ." *Id*. (emphasis added). Therefore, Defendant's attempt to curb Plaintiff's ECPA claim because the tortious or criminal violation occurred "at the very moment" the communications were intercepted holds no argumentative value because the proper inquiry asks whether Defendant had a criminal or tortious intention that existed. *See Kurowski v. Rush System for Health*, No. 22 C 5380, 2024 WL 3455020, at *5 (N.D. Ill. Jul. 18, 2024) (citing *In re High Fructose Corn Syrup Antitrust Litigation*, 216 F.3d 621, 626 (7th Cir. 2000) ("the crime-or-tort exception turns on the defendant's 'intended use' of the interception at the time it is intercepted, not on the defendant's "motive"). Put simply, intending to use a tracking

pixel to record communications on a website does not invoke the crime-tort exception, however, using tracking pixels with the intent to collect and use individually identifiable and sensitive health information for commercial gain, or any other criminal or tortious purpose, *does* invoke the crime-tort exception. *See Kurowski*, 2024 WL 3455020, at *5 (citing *Mekhail*, 2024 WL 1332260, at *5 n. 4) ("Many crimes and torts are motivated by a desire to make money, and 'it defies common sense that a clearly harmful act could escape liability as long as it was done for profit.'")

Defendant relies on *Doe v. Kaiser Foundation Health Plan, Inc.*, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) and *Nienaber v. Overlake Hospital Med. Ctr.*, 2024 WL 2133709 (W.D. Wash. May 13, 2024) to try to bolster its "separateness" argument. (Motion at 14.) However, both cases are distinguishable as neither court analyzed whether a separate criminal intent to *use* such collected sensitive health information for *commercial advantage* is sufficient to invoke the crime-tort exception. In both instances, the courts determined that the plaintiffs failed to allege a tortious or criminal use of the acquired communications, separate from the recording. *See Nienaber*, 2024 WL 2133709, at *15 ("Plaintiff fails to plead a tortious or criminal *use* of the acquired communications. . .") (emphasis added); *See also Kaiser Foundation Health Plan, Inc*., 2024 WL 1589982, at *10 ("[p]laintiffs have not sufficiently alleged a tortious purpose in [defendant]'s collection of information"). Thus, neither case contemplates whether the crime-tort exception can be invoked for the disclosure of *sensitive private health information* when *used* for commercial gain or any other purpose that would invoke the crime-tort exception. This factual difference is critical because the disclosure and sale of health information is in itself a criminal act. (*See* 42 U.S.C. § 1320d-6) (making it a *criminal violation* for a person to "disclose[] individually identifiable health information to another person" and enhancing the penalty for the violation when the "offense is committed with intent to *sell, transfer or use individually identifiable health*

*information for commercial advantage, personal gain*”) (emphasis added).

To that end, Plaintiff specifically pled that Defendant had the requisite criminal or tortious intention where he alleged Defendant’s acquisition of patient communications that were used and disclosed to Facebook, Google, and other third parties were done for purposes of committing a criminal and tortious act. (Compl. at ¶ 158.) Specifically, 42 U.S.C. § 1320d-6 makes it a criminal violation for a person to “use[] or cause[] to be used a unique health identifier” or to “disclose [] individually identifiable health information to another person. . . without authorization” from the patient. (Compl. at ¶ 159.) Further, the penalty for the violation is enhanced where the “offense is committed with intent to sell, transfer, or use individually identifiable health information for commercial advantage, personal gain, or malicious harm.” 42 U.S.C. § 1320d-6. Therefore, in addition to merely intending to use tracking technology on its Websites and patient portal, Defendant had a separate criminal and tortious intent to disclose Private Information to Facebook, Google, and other third parties without patient authorization, and intended to commit further criminal and tortious acts by *using* its patients’ Private Information for a commercial advantage. (Compl. at ¶¶ 161, 162.)

Defendant also argues that Plaintiff’s alleged criminal “purpose” of increasing profitability, and for marketing, ad targeting, and sales generation is insufficient to invoke the crime-tort exception. (Motion at 14-16.) In other words, Defendant argues that because it generates profits from the illegal disclosure of its patients’ Private Information it cannot face liability under the ECPA. Such an argument justifying its improper handling of its patients’ health information should not carry persuasive weight. *See Mekhail*, 2024 WL 1332260, at *5 n. 4. Regardless, courts have determined that illegal purposes may include invasion of privacy, defrauding, and committing unfair business practices. *Deteresa v. Am. Broadcasting Cos., Inc.*, 121 F.3d 460, 467 n.4 (9th Cir.

1997) ("For this [ECPA] claim to survive . . . [plaintiff] ha[s] to . . . show that [defendant] taped the conversation for the purpose of violating Cal. Penal Code § 632, for the purpose of invading her privacy, for the purpose of defrauding her, or for the purpose of committing unfair business practices"). In addition, courts have routinely upheld claims for ECPA violations and invoked the crime-tort exception in similar cases, including where healthcare providers utilize tracking pixels on their websites to collect and disclose their patients' sensitive information. *See e.g. Kurowski*, 2023 WL 8544084, at *2–*3 (finding that the plaintiff plausibly stated an ECPA claim where they invoked the crime-tort exception by alleging that the defendant's use of tracking pixels violated HIPAA); *Kane*, 2024 WL 1178340, at *7–*8 (finding that the plaintiffs invoked the crime-tort exception by alleging that the defendant used tracking pixels to collect and disclose health information); *Mekhail*, 2024 WL 1332260, at *5 (allegations that tracking pixels allowed Facebook to access the plaintiff's private health data with the purpose of monetizing that data were sufficient to plead violations of law and HIPAA to invoke the crime-tort exception); *In re Group Health Plan Litigation.,* 2023 WL 8850243, at *8 (plaintiff's claims for invasion of privacy and violations of state law sufficient to invoke the crime-tort exception); *Brown v. Google LLC,* 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021) (concluding that the crime-tort exception applied where the plaintiff alleged that "Google's association of their data with preexisting user profiles violated state law, including CDAFA, intrusion upon seclusion, and invasion of privacy"); *B.K. v. Desert Care Network*, No. 2:23-cv-05021 SPG (PDx), 2024 WL 1343305, at *6 (C.D. Cal. Feb. 1, 2024) (plaintiff's allegations that health provider intercepted and disclosed health information via tracking pixels in violation of various state and federal laws sufficient to invoke crime-tort exception); *Hartley*, 2024 WL 1886909, at *2-3 (plaintiff's allegations that health information was disclosed to Meta via pixel sufficient for ECPA claim to survive motion to dismiss); *Sweat*, 2024

WL 3070184, at *4 ("the plaintiffs have sufficiently pleaded a crime-tort exception under the Wiretap Act to withstand dismissal at this pleading stage"); *Loyola University Medical Center*, 2024 WL 3338941, at *7 (plaintiffs' allegations that the defendant's collection and disclosure of their personal health information being done for purposes of financial gain "sufficient to invoke HIPAA for purposes of the ECPA's crime-tort exception"). Thus, courts overwhelmingly agree that in cases with identical fact patterns as before the Court here, a plaintiff's allegations that a health care provider's uses tracking pixels in violation of HIPAA is sufficient to invoke the crime-tort exception and impose liability.

Here, as in the above cited authority, Plaintiff has alleged that he was unaware of Defendant's extensive tracking of his private communications containing Private Information and that this surreptitious tracking was done with criminal and tortious intent in violation of various laws. (Compl. at ¶¶ 147–155.) Specifically, Plaintiff alleges that Defendant's conduct is a criminal violation of HIPAA, 42 U.S.C. § 1320d-6; and a Violation of the Virginia Health Records Privacy Act ("VHRPA") § 32.1-127.1:03(A) and other state and federal laws that may apply. (Compl. at ¶ 158.) While Defendant contends that Plaintiff merely makes conclusory statements regarding Defendant's intent to commit a crime or tort (Motion at 17), Plaintiff's Complaint goes well beyond simply parroting various criminal and tortious statutes and pleads numerous factual allegations sufficient to allege such claims. For example, 42 U.S.C. § 1320d-6 makes it a criminal violation for a person to "disclose[] individually identifiable health information to another person . . . without authorization" from the patient and allows an enhanced penalty when the offense is committed for commercial advantage. (Compl. at ¶¶ 159, 160.) Plaintiff supports his allegation that Defendant has intentionally violated this statue where he alleges throughout his entire Complaint that Defendant intentionally implemented Tracking Pixels on its Website to collect and

transmit Private Information to third parties and did so with various criminal and tortious intents *including* to generate profits. (Compl. at ¶¶ 2, 5, 6, 8, 16, 20, 53, 55, 65, 79, 98, 148-168.) Plaintiff also supports his allegations by providing proof that the Tracking Pixels existed on Defendant's Website by conducting his own investigation, and citing to an independent third-party investigation that was conducted by the consumer privacy advocacy group The Markup. (*Id*. at ¶¶ 54, 59-61.) Therefore, Defendant's argument that Plaintiff fails to support his claims with facts is erroneous, and, as other courts have found, Plaintiff's allegations sufficiently invoke the crime-tort exception as Defendant's criminal "purpose" is detailed throughout his Complaint.

Further, the argument that Defendant presents is premature at this stage of the litigation. Ultimately, while Defendant can attempt to argue on the merits that its intent was not criminal or tortious, Defendant's *actual* purpose requires a factual undertaking to which Plaintiff has not had the benefit of discovery. Thus, Plaintiff has met his pleading requirement for the crime-tort exception, and his claim should not be barred for this reason at this stage. *See In re Group Health Plan Litigation*, 2023 WL 8850243 at *8; *Mekhail*, 2024 WL 1332260 at *6; *Kane*, 2024 WL 1178340, at *8; *Loyola University Medical Center*, 2024 WL 3338941, at *7; *Sweat*, 2024 WL 3070184 at *4.

2. Defendant's arguments regarding the application and pleading requirements of HIPAA and the VHRPA should be ignored.

Lastly, Defendant argues that Plaintiff's allegations fall short of alleging HIPAA or VHRPA violations, and that because neither statute has a private right of action that Plaintiff cannot rely on such statutes for the crime-tort exception. (Motion at 17-19.) Defendant additionally points out that the HHS guidance was deemed unlawful by the Northern District of Texas to attempt to bolster its argument. Motion at 17; *see American Hospital Association v. Becerra*, No. 23-cv-01110, at *29 (N.D. Tex. June 20, 2024). However, Plaintiff's Complaint does not

exclusively rely on the HHS guidance such that the out-of-circuit decision does not impact the sufficiently of his claim, and neither argument is convincing because Plaintiff has already cited an abundance of authority demonstrating that courts routinely invoke the crime-tort exception for plaintiffs who have made analogous allegations of HIPAA violations, including courts doing so *after* the *American Hospital Association* decision was issued. *See Loyola University Medical Center*, 2024 WL 3338941, at *7 ("such information qualifies as IIHI for purposes of HIPAA.") Also, Defendant cites no authority to support its assertion that the transmissions pled by Plaintiff "do not constitute a health record as contemplated by the Virginia legislature . . . to uphold any claim of a violation of VHRPA." (Motion at 18.) Indeed, Plaintiff has plainly alleged that his communications of Private Information to Defendant are "Health Records" as defined under § 31.1-127:03(B), and that Defendant violated the VHRPA where it disclosed its patients' Private Information to Facebook, Google, and other third parties. (Compl. at ¶¶ 164, 166.) Further, Plaintiff has pled an abundance of specific factual allegations throughout his Complaint which supports his argument that violations of the above-mentioned statutes are adequately pled. (*See* Complaint, generally.) Thus, Plaintiff has plainly alleged a violation of HIPAA and the VHRPA and to the extent that Defendant disputes the nature of what communications were transmitted, that sort of factual dispute is not to be adjudicated on a motion to dismiss. Further, Defendant cites no authority establishing that either statute (HIPAA or the VHRPA) cannot be used as a basis for the invocation of the crime-tort exception. Conversely, as thoroughly established above, courts routinely invoke the crime-tort exception when plaintiffs allege violations of HIPAA as its basis even though there is no private right of action. *Kurowski*, 2023 WL 8544084, at *2–*3; *Kane*, 2024 WL 1178340, at *7–*8; *Mekhail*, 2024 WL 1332260, at *5; *In re Group Health Plan Litigation.,* 2023 WL 8850243, at *8; *B.K. v. Desert Care Network*, No. 2:23-cv-05021 SPG (PDx), 2024 WL

1343305, at *6 (C.D. Cal. Feb. 1, 2024); *Hartley*, 2024 WL 1886909, at *2-3; *Sweat*, 2024 WL 3070184, at *4; *Loyola University Medical Center*, 2024 WL 3338941, at *7. And had congress intended to limit the crime-tort exception in the manner Defendant proposes, it would have drafted the ECPA to include such a limitation. However, no such limitation exists in the statutory language of the ECPA and this Court should not create one for Defendant.

Accordingly, Defendant's Motion to Dismiss Plaintiff's ECPA claims should be denied.

**B. Plaintiff Sufficiently Alleges A Breach Of Implied Contract Claim.**

Under Virginia law, an implied-in-fact contract is a true contract, containing all elements of an enforceable agreement. *McConnell v. Servinsky Engineering, PLLC*, 22 F.Supp.3d 610, 619 (W.D. Va. May 20, 2024.) "It differs from an actual contract that the parties have not reduced it to writing or to an oral agreement; rather, the court infers the implied-in-fact agreement from the course of conduct of the parties." *Nossen v. Hoy*, 750 F.Supp. 740, 744 (E.D. Va. 1990).

Defendant argues that Plaintiff's breach of implied contract claim fails because he fails to allege consideration and mutual assent as elements of his claim. However, Plaintiff plainly alleges that when Plaintiff provided his Private information to Defendant in exchange for its services, the parties entered into an implied contract pursuant to which Defendant agreed to safeguard and not disclose his Private Information without his consent. (Compl. at ¶ 127.) Thus, the elements of consideration and mutual assent are well established.

First, "mutual assent is a distinct intention common to the parties to a contract to create enforceable, reciprocal obligations governing their relationship as determined from the interaction between, and manifested intention of, the parties. *Soucie v. Virginia Utility Protection Service, Inc.*, No. 7:22-cv-00552, 2023 WL 2991487, at *4 (W.D. Va. Apr. 18, 2023) (citing *Cully v. Smith*, No. CL-2017-9142, 2019 WL 8883731, at *2, 102 Va. Cir. 293 (2019) (collecting cases)). Mutual

assent is determined "exclusively from those expressions of [the parties' intentions which are communicated between them." *Moorman v. Blackstock, Inc.*, 276 Va. 64 (2008). Plaintiff's Complaint alleges that Defendant agreed to safeguard and not disclose Plaintiff's Private Information without consent. (Compl. at ¶ 127.) The parties' mutual assent to this obligation is evidenced by Defendant's privacy policies, which explain Defendant's legal duties with respect to Plaintiff's Private Information and details when Defendant can lawfully disclose such information—none of which included or contemplated disclosing Plaintiff's Private Information to Google or Facebook. (Compl. at ¶ 68.) Further, Defendant's Code of Conduct informs its employees that they are "expected to understand the sensitive nature of this information and to uphold Inova's commitment to maintaining the confidentiality of patient information." (*Id.* at ¶ 69). Stating that "[y]ou must not use or disclose patient-specific information except when it is permitted or required by law, unless the patient has authorized such disclosure." (*Id.*) Therefore, Plaintiff and Defendant mutually assented to the obligation to safeguard the Private Information that Plaintiff provided Defendant in exchange for its services.

Next, "consideration is, in effect, the price bargained for and paid for a promise. It may be in the form of a benefit to the party promising or a detriment to the party to whom the promise is made." *Reynolds v. USAA Life Insurance Company*, 678 F.Supp.3d 736, 746 (E.D. Va. Jun. 22, 2023) (quoting *Dulany Foods, Inc. v. Ayers,* 260 S.E.2d, 202 (1979)). A "very slight advantage to one party or a trifling inconvenience to the other is generally held sufficient to support the promise." *Ayers*, 260 S.E.2d at 202. Further, "it is well established that mutual promises in a contract constitute valuable consideration." *Price v. Taylor*, 251 Va. 82 (1996) (collecting cases).

Here, the implied contract between the two parties had sufficient consideration because there was a mutual exchange of promises. *See Price v. Taylor*, 251 Va. 82 (1996); *Reynolds*, 678

F.Supp.3d at 747. Specifically, and as Plaintiff alleged, the parties entered into an agreement that, for the exchange of health services, they entered into an implied contract pursuant to which Defendant agreed to safeguard and not disclose Plaintiff's Private Information. (Compl. at ¶ 127.) Thus, Plaintiff promised to provide his Private Information and monetary compensation to Defendant who promised to safeguard such Private Information and provide health services. Such an exchange of promises is sufficient to establish valuable consideration for the purposes of establishing an agreement.

Accordingly, because Plaintiff sufficiently established consideration and mutual assent between the parties regarding their implied-in-fact contact, Defendant's argument that such allegations are deficient should be ignored, and Plaintiff's claim for a breach of the implied contract should be allowed to proceed.[1]

**C. Plaintiff Sufficiently Alleges A Claim For Unjust Enrichment Under Virginia Law.**

Defendant argues that Plaintiff's unjust enrichment claim must fail because Plaintiff does not allege that Defendant should have expected to pay for Plaintiff's Private Information, and because Plaintiff did not confer a benefit on Defendant. (Motion at 25-29.) However, neither argument is persuasive and both ignore the allegations in Plaintiff's Complaint that demonstrate that it would be unequitable for Defendant to retain the benefit and profits it received from Plaintiff's Private Information.

As an initial matter, Defendant argues that Plaintiff cannot maintain his claim if the parties have operated under a contract. (Motion at 29.) However, such rule only exists to preclude recovery under unjust enrichment claims "where there is an *express* contract between the parties covering

[1] Defendant also argues that no implied-in-law contract exists between the parties. (Motion at 23-24). Plaintiff concedes that no implied-in-law contract exists, and that the basis for his claim regards a contract implied-in-fact.

the conduct at issue." *In re Capital One Consumer Data Security Breach Litigation*, 488 F.Supp.3d 374, 412 (E.D. Va. 2020) (emphasis added); *see also Lane Const. Corp. v. Brown & Root, Inc.*, 29 F.Supp.2d 707, 728 (E.D. Va. 1998) ("It is a well-settled principle under Virginia law that unjust enrichment claims arise only where there is no express contract.") Therefore, as Plaintiff alleges the existence of an implied contract, Defendant's contention is misplaced and should not preclude Plaintiff's recovery.

The Supreme Court of Virginia has generally adopted a three-part test to establish an unjust enrichment claim: "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant knew of the benefit and should reasonably have expected to repay the plaintiff; and (3) the defendant accepted or retained the benefit without paying for its value." *James G. Davis Construction Corporation v. FTJ, Inc.*, 298 Va. 582, 650 (2020). Importantly, and contrary to Defendant's assertions regarding Plaintiff's unjust enrichment claim, "courts have concluded that the failure to secure a party's data can give rise to an unjust enrichment claim where a defendant accepts the benefits accompanying plaintiff's data and does so at the plaintiff's expense by not implementing adequate safeguards, thereby making it 'inequitable and unconscionable' to permit defendant to retain the benefit of the data (and any benefits received therefrom), while leaving the plaintiff party to live with the consequences." *In re Capital One Consumer Data Security Breach Litigation*, 488 F.Supp.3d at 412.

In *In re Capital One Consumer Data Security Breach Litigation*, the court addressed claims for unjust enrichment in the data breach context. *Id.* at 411-413. There, the plaintiff credit card holders brough an action against Capital One and Amazon when their private information was compromised in a data breach. *Id.* at 388-390. The court declined to dismiss the plaintiffs' unjust enrichment claims upon finding that the plaintiffs had plausibly alleged that, "in consideration for

receiving credit services," the plaintiffs had delivered their PII to the defendants; had the plaintiffs known that the defendants would not adequately protect the data, they would not have sought and purchased those services. *In re Capital One Consumer Data Security Breach Litigation*, 488 F.Supp.3d at 412. Further, the court stated that defendant Amazon "profited from its storage and retention of [p]laintiffs' PII. . . Retaining these profits without adequately securing the data would be 'unjust.'" *Id.* at 413. Similarly, Plaintiff here alleges that Defendant benefits, and that he conferred such benefit, from the collection and use of Plaintiff's Private Information and unjustly retained those benefits at his expense; that Plaintiff conferred a benefit on Defendant in the form of valuable Private Information that Defendant collected and distributed without his authorization; and that Defendant consciously collected and used such Private Information for its own gain, including to profit off such Private Information. (Compl. at ¶¶ 134, 135.) Defendant, in exchange for disclosing Plaintiff's Private Information is compensated by Facebook, Google, and other third parties. (*Id.* at ¶ 87; *see also id.* at ¶ 91) (alleging that the Private Information Inova Health obtained through its websites and patient portal "is a lucrative source of profit.")). Further, Plaintiff alleges that Defendant unjustly retained those benefits when it failed to safeguard such information without providing any commensurate compensation to Plaintiff; that it would be inequitable under unjust enrichment principles in Virginia for Defendant to retain such profits or other benefits derived from its data collection and disclosure practices; and that Defendant should be compelled to disgorge all inequitable proceeds. (*Id*. at ¶¶ 136-138.) Such allegations are analogous to those in *In re Capital One Consumer Data Security Breach Litigation*, which similarly dealt with the improper handling of valuable data, and dissimilar to Defendant's cited authorities as Plaintiff here has clearly established that he conferred a benefit on Defendant. *See Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144 (4th Cir. 2012) (dismissing unjust enrichment claim where plaintiff failed to

allege they conferred a benefit on Google); *see also In re Hackman*, 534 B.R. 867 (Bankr. E.D. Va. 2015) (finding that plaintiff's alleged benefit conferred on defendant-bank was too attenuated from the nature of the wrong that occurred). Accordingly, the Court should similarly allow Plaintiff's unjust enrichment claim to go forward, as he has clearly alleged that he conferred a benefit upon Defendant, as Defendant accepted the benefits accompanying his data and did so at Plaintiff's expense by not implementing adequate safeguards, making it inequitable and unconscionable to retain the benefits derived from that data. *See In re Capital One Consumer Data Security Breach Litigation*, 488 F.Supp.3d at 412.

## CONCLUSION

For the foregoing reasons, Plaintiff asks that this Court deny Defendant's Motion to Dismiss in its entirety.

Date: July 29, 2024

Respectfully submitted,

By:/s/ *Kyle McNew*

Kyle McNew (Va. Bar # 73210)
MICHIE HAMLEET
310 4th St. NE
Charlottesville, VA 22902
T: (434) 951-7234
F: (434) 951-7254
kmcnew@michiehamlett.com

Eugene Y. Turin (*pro hac vice*)
Jordan R. Frysinger (*pro hac vice*)
William Kingston (*pro hac vice*)
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Floor
Chicago, IL 60601
Tel: (312) 893-7002
eturin@mcgpc.com
jfrysinger@mcgpc.com
wkingston@mcgpc.com

*Attorneys for Plaintiff and the putative class*

**CERTIFICATE OF SERVICE**

I certify that on July 29, 2024, a copy of *Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss* was filed electronically with the Clerk of Court. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

/s/ *Kyle McNew*