IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| PEDRO LUGO, *Individually and on Behalf of a Class of Similarly Situated Individuals,* | ) | CASE NO.: 1:24-CV-00700 |
| | ) | JUDGE PATRICIA TOLLIVER GILES |
| Plaintiff, | ) | |
| v. | ) | |
| INOVA HEALTH CARE SERVICES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

Laurie L. Kirkland, VSB No. 75320
lkirkland@bklawva.com
Ian J. McElhaney, VSB No. 94888
imcelhaney@bklawva.com
BLANKINGSHIP & KEITH, P.C.
4020 University Drive, Suite 300
Fairfax, Virginia 22030
(703) 691-1235 (telephone)

Bryan T. Kostura *pro hac vice*
bkostura@mcdonaldhopkins.com
Timothy J. Lowe *pro hac vice*
tlowe@mcdonaldhopkins.com
MCDONALD HOPKINS LLC
600 Superior Avenue, East, Suite 2100
Cleveland, Ohio 44114
(216) 348-5400 (telephone)

*Attorneys for Defendant*
*Inova Health Care Services*

# TABLE OF CONTENTS


I. INTRODUCTION ....... - 1 -

II. ARGUMENT ....... - 2 -

A. Plaintiff Failed to State a Violation of the Electronic Communications Privacy Act ("ECPA"). ....... - 2 -

1. Plaintiff failed to plead that Inova's Primary Motivation or Purpose Was to Injure Plaintiff Criminally or Tortiously. ....... - 4 -

2. Plaintiff has not Alleged a Separate Tortious or Criminal Act as Required by the ECPA's Crime-Tort Exception. ....... - 8 -

B. Plaintiff Has Not Adequately Alleged His Breach of Implied Contract Claim. ....... - 10 -

1. Plaintiff Has Not Alleged Mutual Assent. ....... - 10 -

2. Plaintiff Has Failed to Allege Consideration. ....... - 12 -

C. Plaintiff Has Not Sufficiently Pled Unjust Enrichment. ....... - 13 -

III. CONCLUSION ....... - 16 -

CERTIFICATE OF SERVICE ....... - 18 -

## I. INTRODUCTION[1]

Inova is Northern Virginia's leading nonprofit healthcare provider. It is ranked and recognized as a national healthcare leader in safety, quality and patient experience. Its world-class care is made possible by the strength and breadth of its people, technology and professionalism.[2] Inova is continuously investing in the growth of its team members, technology and equipment in order to train the next generation of top-tier providers, nurses and clinicians and provide them the tools they need to best serve their patients. The website and the common data analytics tools it uses is another outward example of its investment in technology to enhance its ability to improve the patient experience. Despite the claims of the Plaintiff, Inova is not selling patient data. The purpose of any analytics used, are to better address the needs of the patients and create a better healthcare experience. Plaintiff seeks to condemn Inova for using technology in a supposedly nefarious manner couching it in terms of an illegal data disclosure. Although Plaintiff does not claim to have suffered identity theft or other tangible harm as a result of the alleged disclosure, he nevertheless asserts a litany of tort, contract, and statutory claims against Inova and seeks to impose crippling statutory damages on it despite the absence of any financial loss.

Plaintiff brings three claims against Inova:

1) Violation of the Electronic Communications Privacy Act (the "ECPA") (Count III);

2) Breach of Implied Contract (Count I); and,

3) Unjust Enrichment (Count II, pled in the alternative to Count I).

[1] Capitalized terms not otherwise defined herein have the meaning ascribed to them in Inova's Memorandum in Support of Defendant's Rule 12(b)(6) Motion to Dismiss (the "Memo."). (ECF No. 22.) Plaintiff's Response in Opposition to Inova's Motion to Dismiss is referred to herein as the "Opposition" and cited herein as "(Opp. at __)." (ECF No. 29.)

[2] https://www.inova.org/about-inova

Generally, a party to a communication cannot violate the ECPA; however, a narrow exception exists where that party *can* be liable under the ECPA if that party's primary purpose was to injure a plaintiff tortiously or criminally. (Memo. at PAGEID 83-85). Plaintiff's ECPA claim fails because he clearly pled in his Complaint that Inova acted "with the goal of increasing profitability," and "to increase the success of its profitability, advertising, and marketing." (Compl. at PAGEID 5, ¶¶ 16-17). Those purposes do not meet the ECPA's crime-tort exception because, simply put, they are not crimes or torts. (*See* Memo. at PAGEID 84-85).

Plaintiff's breach of implied contract claim fails because Plaintiff did not sufficiently allege the existence of an implied contract between the Parties. (*See Id*. at PAGEID 87-92). Similarly, his claim for unjust enrichment should be dismissed because he fails to allege that 1) *he* conferred a benefit upon Inova; and, 2) Inova should reasonably have expected to pay Plaintiff—both of which are required by law. (*See Id*. at PAGEID 93-97).

In its Motion to Dismiss, Inova demonstrated the reasons Plaintiff's claims fail under applicable law. In his Opposition, Plaintiff conveniently overlooks the requirements set forth in ECPA and mischaracterizes Inova's arguments in an attempt to mislead the Court. (*See generally,* Opp.). These bait and switch tactics should have no application here and Plaintiff's claims should be dismissed in total.

## II. ARGUMENT

Counts I through III of the Complaint should be dismissed because they fail to state a claim for relief. Each count is addressed below.

### A. Plaintiff Failed to State a Violation of the Electronic Communications Privacy Act ("ECPA").

Plaintiff has failed to plead a violation of the ECPA and his claim should be dismissed as a result. Generally, a party to a communication cannot violate the ECPA, and here, Plaintiff admits

that Inova was a party to the communications at issue. (Opp. at PAGEID 124-125). Thus, Plaintiff's only available avenue is the crime-tort exception-to-the-exception, which is not applicable here because Plaintiff has not fulfilled the pleading requirements to establish that:

1) The primary motivation or purpose or determining factor in Defendant's actions must be to injure Plaintiff criminally or tortiously[3]; and,

2) The recording must be an independent act from the alleged crime or tort itself. [4] (*See generally*, Memo at PAGEID 78-85).

Nonetheless, in his Opposition, Plaintiff floods this Court with a haphazard deluge of inapposite case law and analysis, treating these issues as one in the same and focusing only on Inova's alleged purpose – which, even as pled, is not tortious or criminal, and thus, not a violation of the ECPA. (*See* Opp. at PAGEID 124-131).

As Inova explained in its Memorandum, Plaintiff's argument is contrary to

a) the plain language of the Wiretap Act[5];

b) the case law interpreting the Wiretap Act[6]; and

---

[3] *Roe v. Amgen Inc.*, No. 2:23-CV-07448-MCS-SSC, 2024 WL 2873482, at *6 (C.D. Cal. June 5, 2024); *In re Meta Pixel Healthcare Litig.*, 647 F.Supp. 3d 778, 797 (N.D. Cal 2022); *Mekhail v. N. Mem'l Health Care*, No. 23CV00440KMMTNL, 2024 WL 1332260, at *5 (D. Minn. Mar. 28, 2024) (Citing *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010); *Sussman v. American Broadcasting Cos.*, 186 F.3d 1200, 1201-03 (9th Cir. 1999)).

[4] *Mekhail v. N. Mem'l Health Care*, No. 23CV00440KMMTNL, 2024 WL 1332260, at *5 (D. Minn. Mar. 28, 2024) (Citing *United States v. Dale*, 991 F.2d 819, 842 (D.C. Cir. 1993); I*n re Meta Pixel Healthcare Litig.*, 647 F.Supp. 3d 778 (N.D. Cal. 2022); and *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 514-515 (S.D.N.Y.).)

[5] *See* 18 U.S.C. § 2511(2)(d) (to invoke the crime-tort exception, the "communication [must be] intercepted for the purpose of committing any criminal or tortious act").

[6] *E.g.*, *Roe v. Amgen Inc.* No. 2:23-CV-07448-MCS-SSC, 2024 WL 2873482, at *6 (C.D. Cal. June 5, 2024)(finding "the crime-tort exception is inapplicable where a defendant's primary motivation is to make money rather than to injure plaintiffs tortiously or criminally"); *In re Meta*

c) the policy rationale for the Wiretap Act's imposition of draconian statutory penalties of up to $10,000 per violation – namely, the "evil purposes" requirement against that of the plaintiff which the statute governs[7] and for which the Plaintiff's pleadings are deficient.

### 1. Plaintiff failed to plead that Inova's Primary Motivation or Purpose Was to Injure Plaintiff Criminally or Tortiously.

The ECPA claim should be dismissed because Plaintiff fails to allege Inova's primary motivation or purpose was to harm him or the putative class criminally or tortiously. (Memo. at PAGEID 82-85). Rather than confront this point, Plaintiff attempts to waive off his obligation under the ECPA's crime-tort exception. He does this by inserting his own bastardization of Inova's arguments, writing: "In other words, Defendant argues that because it generates profits from the illegal disclosures of its patients' Private Information, it cannot face liability under the ECPA." (Opp. at PAGEID 128). This is plainly not a faithful restatement of Inova's arguments or the relevant case law those arguments are based on. It is, however, indicative of Plaintiff's failure to appreciate the intricacies of his own claim, specifically that the purpose he alleged is not criminal or tortious under the ECPA's crime-tort exception. As described in Inova's Memorandum, the crime-tort exception is to be construed narrowly, and only applies when a defendant's primary motivation or purpose was to criminally or tortiously harm another. (Memo. at PAGEID 82-85).

---

*Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022) ("Under this exception, plaintiffs must allege that either the 'primary motivation or a determining factor in [the defendant's] actions has been to injure plaintiffs tortiously.'") *Boddie v. ABC, Inc.*, 881 F.2d 267, 270 (6th Cir. 1989) ("We think it is the use of the interception with intent to harm . . . that is critical to liability . . . ."); *see also Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010) ("But Congress limited the cause of action to instances where one party to the conversation deliberately seeks to harm the other participant through the information intercepted."); *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 515 (S.D.N.Y. 2001) (key distinction between permissible and impermissible disclosures is whether "defendant's intent . . . was to injure another party").

[7] *Boddie*, 881 F.2d at 270; (Memo. at PageID 95 & n.2).

A purpose of patient engagement, increasing profitability, marketing, and advertising is not criminal or tortious. (*Id.*) Here, even a reading of the Complaint in a light most favorable to Plaintiff reveals Inova's alleged primary purpose in using pixels was commercial—not criminal or tortious. (See Compl. at PAGEID 19-20, ¶ 86 ("The purpose and end-outcome of Inova Health's use of Facebook and Google's pixels, as well as other related tracking technology was marketing and profits); *Id*. at PAGEID 5, ¶ 16-17). Plaintiff's baseless legal conclusions cannot salvage his claim because even if this Court were required to accept them as true, Plaintiff still did not allege that Inova (a nonprofit healthcare provider) acted with the primary motivation or purpose of harming its patients and prospective patients criminally or tortiously. (*Id*. at PAGEID 31, ¶ 158). To be clear: there was no illegal disclosure in this case, and Plaintiff's Opposition is replete with misapplication of the case law concerning a defendant's primary motivation or purpose.

First and foremost, Plaintiff opts to not address the case law in Inova's Memorandum, which makes clear that the alleged commercial purpose does not result in a violation of the ECPA. (*See* Memo. at PAGEID 84; *Roe v. Amgen Inc.,* No. 2:23-CV-07448-MCS-SSC, 2024 WL 2873482, at *6 (C.D. Cal. June 5, 2024)(finding "the crime-tort exception is inapplicable where a defendant's primary motivation is to make money rather than to injure plaintiffs tortiously or criminally")(emphasis added); *In re Meta Pixel Healthcare Litig.*, 647 F.Supp. 3d 778, 797 (N.D. Cal 2022)("Multiple courts in this district have found that the crime-tort exception... is inapplicable where the defendant's primary motivation was to make money, not to injure plaintiffs tortiously.")).

To circumvent those cases, Plaintiff asserts Inova's alleged actions rose to the level of a HIPAA or VHRPA violation (which they do not). However, what is key to the ECPA "[u]nder section 2511, the focus is not upon whether the interception itself violated another law; it is upon

whether the purpose for the interception—its intended use—was criminal or tortious. *** Where the purpose is not illegal or tortious, but the means are, the victims must seek redress elsewhere." *Sussman v. Am. Broad. Companies, Inc.,* 186 F.3d 1200, 1202–03 (9th Cir.1999). Again, Plaintiff has not pled that Inova's primary motivation or purpose was to harm him criminally or tortiously, thus no ECPA claim can exist. Instead of addressing the relevant case law on this point, Plaintiff puts forth a slew of legal conclusions in an attempt to confuse this Court into allowing his poorly-pled ECPA claim to go forward. (Opp. at PAGEID 126-131). Critically, though, this Court is not required to accept Plaintiff's legal conclusions as true – even at this motion to dismiss stage. *See, e.g. Jackelyn Rodriguez v. FastMed Urgent Care, P.C.*, No. 5:23-CV-403-D, 2024 WL 3541582 (E.D.N.C. July 24, 2024).

To that point, Plaintiff's Opposition ignores a July 24, 2024 ruling from the Eastern District of North Carolina (which involved the same facts and ECPA claim that Plaintiff alleges here) where the court granted the defendant's motion to dismiss for failure to state a claim. *See id*. In dismissing the plaintiff's claim for an alleged ECPA violation, the court found that it "need not accept [Plaintiff's] legal conclusions in her complaint about [Defendant's] alleged purposes for intercepting and disclosing her data to Meta. (Citing *Ashcroft v. Iqbal*, 556 U.S. 662 at 677-80; *Bell All. Corp. v. Twombly*, 550 U.S. 544, at 554-63). The 'mere possibility' that [Defendant] intercepted and disclosed [Plaintiff's] data to Meta 'for the purpose of committing any criminal or tortious act' does not suffice. *** Even viewing [Plaintiff's] complaint in the light most favorable to [her], [Defendant] intercepted and disclosed the class members' information for commercial use or gain, not to commit a crime or tort." *Id.* at *5. (Citing *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125 (3d Cir. 2015); *Caro v. Weintraub*, 618 F.3d 94 (2d Cir. 2010); *Sussman v. Am. Broad. Cos.*, 186 F.3d 1200 (9th Cir. 1999); *Kurowski v. Rush Sys. For*

*Health*, 659 F.Supp. 3d 931 (N.D. Ill. 2023).) Though Plaintiff disregards this ruling from within the Fourth Circuit, *FastMed* makes clear that Inova's arguments in its Memo are on point. "[M]erely alleging that [Inova] intercepted and disclosed [Plaintiff's] information to Meta for commercial use or gain [internal citations removed] does not equate to [Inova] intercepting and disclosing [Plaintiff's] information 'for the purpose of committing any criminal or tortious act.'" *Id*. at *6.

Just as in *FastMed*, this Court need not accept Plaintiff's legal conclusions as true – even at the motion to dismiss stage. Plaintiff has not alleged that Inova's primary purpose was to harm him tortuously or criminally, and has not even pled a specific harm that befell him or the putative class. At most, Plaintiff alleged that Defendant had a commercial interest in the information, which is a far cry from a criminal act or tortious or criminal purpose. As a result, Plaintiff has failed to properly allege a violation of the ECPA and his claim should be dismissed.

Further, Plaintiff's seminal case is not applicable to this matter. Plaintiff makes the general claim that "the party exception does not apply where the interceptor acts 'for the purpose of' committing any crime or tort in violation of state or federal law *i.e.* the 'crime-tort exception.' 18 U.S.C. § 2511(2)(D)," and curiously cites to *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020) in support of his argument that he has met the pleading requirements for this narrow exception. However, *In re Facebook* does not even address the crime-tort exception at issue in this case, and does not involve pixels. *See generally, Id*. In fact, it only discusses whether the defendant Facebook was a party to the communication at all. *Id*. *See also Nienaber v. Overlake Hosp. Med. Ctr.*, No. 2:23-CV-01159-TL, 2024 WL 2133709, at *15 (W.D. Wash. May 13, 2024)("Whereas in *In re Facebook* the plaintiffs alleged Facebook recorded communications between the plaintiffs and third parties to which Facebook was *not* a party. . . .") (Emphasis in

original). Here, Plaintiff admits that Inova is a party to the communications at issue. (Opp. at PAGEID 124-125). Further, courts have pointed out that *In re Facebook*'s holding is based on a misinterpretation of First and Seventh Circuit law. *See, e.g. Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931, 938 (N.D. Ill. 2023) (Disputing *In re Facebook* because the "'understanding' reached by the First and Seventh Circuits, and then relied on by the Ninth, involved whether an interception occurred at all, not whether the defendants could be considered a party to the intercepted communication."). Thus, Plaintiff's purpose arguments fall flat.

**2. Plaintiff has not Alleged a Separate Tortious or Criminal Act as Required by the ECPA's Crime-Tort Exception.**

Another requirement of a well-pled ECPA claim is that a plaintiff must establish the alleged recording was an independent act from the alleged crime or tort itself.[8] *See* (Memo. at PAGEID 80-82); *see also Okash v. Essentia Health*, No. 23 Civ. 482 (JRT) (LIB), 2024 WL 1285779, at *4 (D. Minn. Mar. 26, 2024)("[Plaintiff] alleges that [defendant] acted for the purpose of criminally violating HIPAA and tortiously invading [his] privacy. <u>But because neither the alleged HIPAA nor privacy violations were independent of the interception, the crime-tort exception does not apply</u>.")(Emphasis added)). Plaintiff sluffs off this requirement in his Opposition and instead attempts to shift the goalposts, writing: "Defendant's attempt to curb Plaintiff's ECPA claim because the tortious or criminal violation occurred 'at the very moment' the communications were intercepted holds no argumentative value because the proper inquiry asks whether Defendant had

[8] *See e.g., Doe v. Kaiser Foundation Health Plan, Inc.*, 2024 WL 1589982 (N.D. Cal., Apr. 11, 2024); *Caro v. Weintraub*, 618 F.3d 94, at 100-01 (2d. Cir. 2010); *In re Google Inc.*, 806 F.3d 125, 145 (3d Cir. 2015)("[A]ll authority of which we are aware indicates that the criminal or tortious acts contemplated by § 2511(d) are acts secondary to the acquisition of communication involving tortious or criminal use of the interception's fruits.); *Pena v. Gamestop*, 670 F. Supp. 3d 1112, 1119 (S.D. Cal. 2023) (A plaintiff must plead sufficient facts to support an inference that the defendant "intercepted the communication for the purpose of a tortious or criminal act that is independent of the intentional act of recording or interception itself.").

a criminal or tortious intention that existed." (Opp. at PAGEID 126). As support for his weighty conclusion, Plaintiff provides no authority disavowing the separate act requirement described in Inova's Memorandum. (*Id.*; Memo. at PAGEID 80-82). And, as described earlier, the alleged purpose to which the Plaintiff clings does not even meet the crime-tort exception – because a commercial purpose is not inherently criminal or tortious.

In yet another attempt to conflate the issues and confuse this Court, Plaintiff takes aim at *Kaiser Foundation* and *Nienaber*, claiming both cases are distinguishable because "neither case contemplates whether the crime-tort exception can be invoked for the disclosure of [PHI] when used for commercial gain or any other purpose that would invoke the crime-tort exception." (Opp. at PAGEID 127). To put it plainly, that has nothing to do with the separate act requirement described in Inova's Memorandum. (Memo. at PAGEID 80-82).

Plaintiff then cites to a litany of case law concerning the primary motivation or purpose requirement described above without substantively addressing Inova's arguments on this issue. In doing so he supposes without evidence several (apparently nefarious) commercial purposes that Inova might have had in using pixels, and attempts to tie those purposes to a separate violation of HIPAA. However, Plaintiff has not pled a specific use that is separate from the alleged instantaneous retrieval and disclosure of the supposed PHI at issue here that would violate HIPAA or VHRPA, and he cannot now build additional facts into his Complaint via his Opposition Brief. *See Caballero v. Am. Mortg. Network*, No. 1:11CV622 JCC/JFA, 2011 WL 3440025, at *5 (E.D. Va. Aug. 8, 2011)("[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss."); *see also Campbell ex rel. Equity Units Holders v. Am. Int'l Grp., Inc.*, 86 F. Supp. 3d 464, fn 9 (E.D. Va.), aff'd sub nom. *Campbell v. Am. Int'l Grp., Inc.*, 616 F. App'x 74 (4th Cir. 2015); *see also Sykes v. Bayer Pharms. Corp.*, 548 F. Supp. 2d 208, 214

(E.D. Va. 2008); *Doe v. Cmty. Coll. Of Baltimore Cnty.*, 595 F. Supp. 3d 392, 417 (D. Md. 2022); *Sadler v. Pella Corp.*, 146 F. Supp. 3d 734, 760 (D.S.C. 2015); *Bratcher v. Pharm. Prod. Dev., Inc.*, 545 F. Supp. 2d 533, 542 (E.D.N.C. 2008). Thus, the fact remains that Plaintiff has not pled a specific action that Inova took to meet the separate act requirement, and his ECPA claim fails as a result.

Inova respectfully requests this Court grant an Order dismissing Plaintiff's ECPA claim because he has failed to adequately plead his claim. Even as alleged, Inova's primary motivation or purpose was not to harm Plaintiff criminally or tortiously, and Plaintiff cannot identify a tortious or criminal act that is separate from the alleged ECPA violation itself. As such, Plaintiff's ECPA claim should be dismissed.

**B. Plaintiff Has Not Adequately Alleged His Breach of Implied Contract Claim.**

Plaintiff argues that because in his complaint, he "plainly alleges that when Plaintiff provided his Private Information to Defendant in exchange for its services, the parties entered into an implied contract pursuant to which Defendant agreed to safeguard and not disclose his Private Information without his consent," he alleged both consideration and mutual assent. (Opp. at PageID 133; Compl. at ¶ 68.) However, by Plaintiff's own admission, mutual assent requires clear intent to contract by the expressions communicated between the parties. He also acknowledges that consideration requires a mutual exchange of promises. Plaintiff's allegations do not demonstrate these requirements, and so, his claim for breach of implied contract must be dismissed.

**1. Plaintiff Has Not Alleged Mutual Assent.**

Plaintiff cites *Soucie v. Virginia Utility Protection Service*, *Inc.* for the proposition that "mutual assent is a distinct intention common to the parties to a contract to create enforceable, reciprocal obligations governing their relationship as determined from the interaction between, and

manifested intention of, the parties." No. 7:22-cv-00552, 2023 WL 2991487, at *4 (W.D. Va. Apr. 18, 2023). In *Soucie*, the Western District of Virginia found evidence of a distinct intent to contract where an employee had to press "mark as read" on an agreement that her employer required her to receive, read, and acknowledge. *Id*. at *1. The agreement in *Soucie* was not only express and definite in its terms, but there was clear evidence of each party's intention to assent to its terms: the employer sending the agreement to the employee and requiring her acknowledgement, and the employee by pressing "mark as read." *Id*. These are patent affirmative acts demonstrating both parties' intent. Here, Plaintiff cannot and has not pointed to any similar evidence of intent by either party. Notably, Plaintiff does not even allege that he read the privacy policy on Inova's website, the 'agreement' that he and Inova supposedly assented to. Unlike *Soucie*, acknowledging the privacy policy is not a pre-requisite for a user to use Inova's website or services because it is not intended to be a contract.

Next, Plaintiff cites *Moorman v. Blackstock, Inc.* for the proposition that mutual assent is determined "exclusively from those expressions of [the parties'] intentions which are co*mmunicated* between them." 276 Va. 64 (2008). In his Brief in Opposition, Plaintiff conveniently chose to de-italicize[9] the most important word in that sentence: *communicated*. (Opp. at PageID 134). Plaintiff does not cite any communication that occurred between him and Inova that showed mutual assent or a meeting of the minds that he and Inova were entering into a contract. Plaintiff's reference to the privacy policy here is unpersuasive. The privacy policy, in which Inova states its obligations under the Health Insurance Portability and Accountability Act (HIPAA), is nothing more than a recitation of its legal obligations, which does <u>not</u> form a contract

[9] Notably, Plaintiff did not note that the court's decision to italicize *communicated* had been removed for the purpose of his Opposition.

under Virginia law. *Bojorquez-Moreno v. Shores & Ruark Seafood Co.*, 92 F. Supp. 3d 459, 468 (E.D. Va. 2015). And in an even more feeble attempt to demonstrate a meeting of the minds, he cites Inova's Code of Conduct for its employees as evidence of a meeting of the minds – something with which Plaintiff would be completely uninvolved. Because Plaintiff has not and cannot allege facts that demonstrate that either party had intent – and communicated this intent – to contract, he has not adequately alleged mutual assent.

**2. Plaintiff Has Failed to Allege Consideration.**

Plaintiff argues that there was sufficient consideration between him and Inova because "there was a mutual exchange of promises" between them. (Opp. at PageID 134). Specifically, that "Plaintiff promised to provide his Private Information and monetary compensation to Defendant who promised to safeguard such Private Information and provide health services." (Opp. At PageID 134-35). The first case that Plaintiff cites for support of this proposition is *Reynolds v. USAA Life Insurance Company*, a case from the Eastern District of Virginia in which the court found consideration based on a clear mutual exchange of promises in an express contract: "USAA promised to cancel the Insured's Policy upon his request and stop carrying the risk of the Policy, and the Insured would cease paying monthly premiums." 678 F. Supp. 3d 736, 746-47 (E.D. Va. Jun. 22, 2023).

The *Reynolds* court, and Plaintiff, go on to cite to *Price v. Taylor* for the proposition that "mutual promises in a contract constitute valuable consideration." 251 Va. 82, 85 (1996). Unfortunately, for Plaintiff, that rule was clearly intended for a context in which there is an express contract. To argue otherwise is, frankly, nonsensical. Plaintiff is tasked with proving that there is an implied contract between him and Inova; he cannot prove an element for implied contract exists, in this case consideration, by reason of his desired conclusion. In other words, there is no express

contract that Plaintiff can point to that contains mutual promises to prove consideration for an implied contract; in fact, he does not even argue that an express contract existed between him and Inova. Therefore, Plaintiff has failed to allege the elements of an implied contract and his claim must be dismissed.

### C. Plaintiff Has Not Sufficiently Pled Unjust Enrichment.

As an initial matter, Plaintiff curiously takes issue with and refutes the fact that he pled his unjust enrichment claim in the alternative to his breach of implied contract claim. Inova only raised this because that is how Plaintiff pled it in his complaint: in the alternative. (Compl., PAGEID 27, ¶ 133). By arguing otherwise in his Opposition, Plaintiff is really arguing against himself. (Opp. at PageID 135-36).

Plaintiff then pivots to the first and third elements of an unjust enrichment claim by almost entirely relying on *In re Capital One Consumer Data Security Breach Litigation* to demonstrate that he conferred a benefit on Inova and that Inova unjustly retained that benefit. 488 F.Supp.3d 374, 412 (E.D. Va. 2020). *In re Capital One* is about a data breach, an incident in which cybercriminals infiltrated a defendant's system with the intent to access and exfiltrate individuals' personal data for criminal purposes. To state the obvious, this is not a data breach claim. It is true that the tracking pixels on a website can share patients' communications with third parties like Facebook and Google, but there is no criminal aspect. These communications are not messages between patients and doctors; rather, they allegedly include web addresses, page views, search terms, providers, conditions, button clicks, and so on. (Compl., PAGEID 22, ¶ 3; *see also id.* ¶¶ 20, 35, 43, 61-62.) In contrast, in *In re Capital One Consumer Data Security Breach Litigation*, cybercriminals potentially had access to "names, addresses, zip codes, phone numbers, email addresses, dates of birth, self-reported income, approximately 140,000 Social Security Numbers, 80,000 bank account numbers, credit scores, credit card limits, credit card balances, credit card

payment history, and fragments of transaction data from 23 days during 2016, 2017, and 2018." 488 F. Supp. 3d at 416. The plaintiffs alleged injuries that included attempted identity theft or fraud and an increased risk of future identity theft. *Id*. at 402. Here, Plaintiff alleges nothing of the sort.

Inova raised, and Plaintiff was quick to dismiss, a case that was far more analogous to these facts than a data breach, proving that he did not properly allege that he conferred a benefit on Inova and that Inova unjustly retained this benefit. In *In re Hackman*, the plaintiff alleged the defendant-bank had been unjustly enriched as a result of another party's embezzlement of funds into an account at the defendant-bank. 534 B.R. 867 (Bankr. E.D. Va. 2015). Plaintiffs suggested that the defendant-bank was unjustly enriched from this transaction because the bank's rate of return on the improperly-deposited funds "would have exceeded the amount of interest [the bank] paid to its depositor." *Id*. at 878. This benefit, the court found, was "too attenuated from the nature of the wrong," such that "[c]ertainly, the [p]laintiffs did not confer this benefit" on the defendant-bank. *Id*. Because the plaintiff did not confer a benefit upon the defendant, the plaintiff's claim for unjust enrichment was dismissed. Similarly, any alleged benefit that Inova retained in this matter is a result of analytics and reports provided by Meta and Google, which Inova can use to determine whether it should adjust its marketing strategy aimed at increasing patient satisfaction. Plaintiff and the putative class are in no position to provide such benefit.

Plaintiff provides no facts in support of his allegation that Inova sold Plaintiff's Information, or was monetarily compensated for Plaintiff's Information throughout the Complaint. (*See generally*, Compl.) While Plaintiff describes the purported "tremendous economic value" of Plaintiff's Information in the Complaint, he makes no allegation that Inova actually benefitted from that economic value. (*Id*. PAGEID 20-21, ¶¶90-91.) Moreover, a plain reading of the

Complaint makes clear that any "benefit" to Inova under Plaintiff's telling of the facts was not conferred by Plaintiff at all, but rather, by non-parties to this litigation.

Finally, and fatal to his success, Plaintiff does not address the second element required for an unjust enrichment claim, nor does he address the cases Inova cited that unequivocally reject his position under Virginia law. Plaintiff was quick to dismiss *Rosetta Stone Ltd. v. Google*, misinterpreting it as only a case where an unjust enrichment claim failed because plaintiff failed to allege they conferred a benefit on to Google. 676 F.3d 144 (4th Cir. 2012); (Opp. At PageID 137-38). There, defendant Google, through its "AdWords" program, allowed companies to "purchase" specific words and phrases for the purpose of boosting the companies' search engine optimization. Rosetta Stone purchased several more terms through AdWords. Google then allowed other companies to purchase those same words. Rosetta Stone claimed unjust enrichment against Google, arguing that Rosetta Stone conferred a benefit to Google by initially purchasing its trademarks through AdWords, thus increasing the value that Google could receive from the "sale" of those same words from other companies. Even though Google had actually profited from the "benefit" Rosetta Stone alleged to have bestowed upon Google—and despite the fact that Google was in turn profiting off of Rosetta Stone's registered trademarks—the Fourth Circuit found that Rosetta Stone committed error fatal to its own claim when it "failed to allege facts showing that it 'conferred a benefit' on Google for which Google 'should reasonably have expected' to repay." *Id*. at 166.

Plaintiff in this case has made no allegation that Inova should have reasonably expected to pay for any information allegedly disclosed via the Google or Meta Pixel. Plaintiff does not allege that Inova pays other users for information gathered by pixels, nor that other companies pay users for such information. Incredibly, Plaintiff does not even allege that he expected to be paid for this

information. Because Plaintiff has failed to adequately allege all three elements for unjust enrichments, his claim must be dismissed.

## III. CONCLUSION

Plaintiff has not met his pleading requirements for any of the three claims he levies against Inova. His ECPA claim fails because Inova was a party to the communications at issue, and its alleged purpose of "increasing profitability," and "increas[ing] the success of its profitability, advertising, and marketing" is simply not criminal or tortious and does not evidence any intention on Inova's part to harm Plaintiff criminal or tortiously. His breach of implied contract claim fails because there was no requisite consideration or meeting of the minds between Plaintiff and Inova in order to form a contract. Finally, Plaintiff's unjust enrichment claim should be dismissed because Plaintiff did not meet his requirement to plead that Inova should have reasonably expected to pay him, and because any alleged benefit Inova received was not bestowed by Plaintiff but rather by a third party. For the foregoing reasons, Inova respectfully requests that the Court grant the Motion, dismiss Counts I through III of Plaintiff's Class Action Complaint, and award Inova such other and further relief as is appropriate.

Dated: August 12, 2024

Respectfully submitted,

*/s/ Ian J. McElhaney*

Laurie L. Kirkland, VSB No. 75320
lkirkland@bklawva.com
Ian J. McElhaney, VSB No. 94888
imcelhaney@bklawva.com
BLANKINGSHIP & KEITH, P.C.
4020 University Drive, Suite 300
Fairfax, Virginia 22030
(703) 691-1235 (telephone)
(703) 691-3913 (facsimile)

Bryan T. Kostura *pro hac vice*
bkostura@mcdonaldhopkins.com
Timothy J. Lowe *pro hac vice*
tlowe@mcdonaldhopkins.com
MCDONALD HOPKINS LLC
600 Superior Avenue, East, Suite 2100
Cleveland, Ohio 44114
(216) 348-5400 (telephone)

*Attorneys for Defendant*
*Inova Health Care Services*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of August 2024, the foregoing *Defendant's Reply in Support of Its Motion to Dismiss* was filed electronically with the Clerk of Court. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

*/s/ Ian J. McElhaney*
Ian J. McElhaney, VSB No. 94888