UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| PEDRO LUGO, individually and on behalf of similarly situated individuals,<br><br>*Plaintiff*,<br><br>v.<br><br>INOVA HEALTH CARE SERVICES,<br><br>*Defendant*. | No. 1:24-cv-00700-PTG-WEF<br><br>Hon. Patricia T. Giles |

**PLAINTIFF'S *UNOPPOSED* MEMORANDUM OF LAW IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Dated: April 6, 2026

Eugene Y. Turin (*pro hac vice*)
Jordan R. Frysinger (*pro hac vice*)
William Kingston (*pro hac vice*)
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Floor
Chicago, IL 60601
Tel: (312) 893-7002
eturin@mcgpc.com
jfrysinger@mcgpc.com
wkingston@mcgpc.com

*Counsel for Plaintiff and Class Counsel*

Kyle McNew (Va. Bar # 73210)
MICHIE HAMLETT PLLC
310 4th St. NE
Charlottesville, VA 22902
T: (434) 951-7234
F: (434) 951-7254
kmcnew@michiehamlett.com

## I. INTRODUCTION

Pursuant to Rule 23 of the Federal Rules of Civil Procedure and the Court's December 17, 2025 Order Preliminarily Approving this Class Action Settlement Agreement[1] ("Preliminary Approval Order"), Plaintiff Pedro Lugo ("Plaintiff") respectfully submits this memorandum of law in support of final approval of the proposed Settlement Agreement.[2] Defendant Inova Health Care Services ("Inova" or "Defendant")[3] does not oppose the relief sought herein.[4]

Plaintiff commenced this putative class action lawsuit by filing a complaint asserting various claims based on his allegations that Defendant installed, configured, and used certain tracking tools on its websites that collected and transferred the Personally Identifiable Information and Protected Health Information (collectively, "Private Information") of Plaintiff and the Class to third parties. As set forth in Plaintiff's Motion for Preliminary Approval, the Parties have reached a proposed Settlement that establishes a non-reversionary Settlement Fund of $3,147,390.04, from which each Settlement Class Member who submits a valid Claim will receive an equal, *pro rata* distribution in connection with the alleged disclosure of their Private Information to third parties in violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2510 *et seq*. ("ECPA").

On December 17, 2025, the Court preliminarily approved the Settlement, finding the Settlement within the range of reasonableness for which final approval could ultimately be granted. (Dkt. 56.) As a result, and per the Court-approved Notice Program, Direct Notice of the Settlement

---

[1] The Court initially preliminarily approved the Settlement Agreement on December 12, 2025, then issued an amended Order preliminarily approving the Settlement Agreement on December 17, 2025. For the purposes of this memorandum, Plaintiff considers the entry of the amended Order the date for which this Court preliminarily approved the Settlement Agreement.

[2] Unless otherwise stated, capitalized terms used herein have the same meaning as those terms used in the Settlement Agreement, attached hereto as Exhibit 1. (Dkt. 48-2.)

[3] Plaintiff and Defendant hereafter are collectively referred to as the "Parties."

[4] A Proposed Final Approval Order is attached hereto as Exhibit 2.

was disseminated via e-mail to the Settleement Class on January 9, 2026.[5] Out of the 817,199 unique identified Settlement Class Members, email notice was delivered to 758,720 individuals, demonstrating that these efforts reached approximately 92.8% of the Settlement Class. (Azari Decl., ¶ 27.) Over 32,000 Claim Forms have been submitted, and if the Settlement is granted final approval, Plaintiff estimates that each of the Settlement Class Members will receive a net payment between $55-$65.[6]

On February 6, 2026, Plaintiff filed his Motion and Memorandum of Law in Support of Approval of Attorneys' Fees, Expenses, and Service Award (Dkts. 57, 58.), which was then posted to the Settlement Website for Settlement Class Members to review (Azari Decl., ¶ 28). Importantly, *no Settlement Class Member has objected to any portion of the Settlement*, including Plaintiff's fee petition. (*Id.* at ¶ 31.) In addition, the Settlement has been overwhelmingly supported by the Settlement Class, as only 17 Settlement Class Members have elected to exclude themselves from participating in the Settlement. (*Id.*)

As demonstrated below, the significant relief provided by the Settlement, along with the robust direct notice and the equitable and effective method of distribution, is an excellent result for the Settlement Class, particularly in view of the risks and delays involved in litigating the substantive merits of their claims. Accordingly, Plaintiff respectfully requests that the Court enter an Order: (i) finding that the Settlement is fair, reasonable, and adequate; (ii) granting final approval of the Settlement; and (iii) approving Plaintiff's requested attorneys' fees, reimbursement of litigation costs and expenses, and Service Award.

---

[5] *See* Declaration of Cameron R. Azari ("Azari Decl."), attached hereto as Exhibit 3, ¶ 23.

[6] Plaintiff's estimate is based on a *pro rata* distribution of the Settlement Fund after deductions of $73,310.73 in settlement administration costs (Azari Decl., ¶ 34), $1,058,625.22 representing Class Counsel's requested fee and expenses award, and $5,000 representing the requested Service Award for Plaintiff.

## II. BACKGROUND

### A. Plaintiff's Claims

Plaintiff and the proposed Settlement Class are all individuals who visited Defendant's public facing websites and who had an Inova MyChart account during the relevant time period. Plaintiff's Complaint alleges that Defendant, a health provider, unlawfully disclosed Plaintiff's Private Information to third parties, including Google and Facebook, without authorization, in violation of the ECPA. (Ex. 1, ¶ 2.) Plaintiff further alleges that the receiver of the Private Information would be able to know that a specific patient was seeking specific medical care and the type of medical care being sought. Defendant has denied these allegations.

### B. Procedural History and Settlement Negotiations

Plaintiff filed his Complaint on April 29, 2024. (Dkt. 1-1.) On July 1, 2024, Defendant filed a motion to dismiss Plaintiff's Complaint, pursuant to Fed. R. Civ. P. 12(b)(6). On March 25, 2025, after full briefing and oral argument on Defendant's motion to dismiss, this Court denied defendant's motion in part, allowing Plaintiff's claims under the ECPA to proceed. (Dkt. 34.) On April 7, 2025, following the Court's order denying Defendant's motion to dismiss, the Parties filed a joint motion to stay the case pending the outcome of mediation.

On June 9, 2025, in an effort to reach a resolution to the litigation, the Parties engaged in a full-day mediation session with Bruce Friedman of JAMS. The Parties did not reach an agreement that day but agreed to continue settlement discussions. On July 28, 2025, after continued, extensive, arm's-length negotiations with the continued assistance of Mr. Friedman, the Parties reached an agreement in principle on the terms of a class action settlement, the terms of which are reflected in the proposed Settlement Agreement which this Court preliminarily approved on December 17, 2026. Plaintiff now seeks final approval of the Settlement.

## III. SETTLEMENT TERMS

### A. The Settlement Class

In granting preliminary approval, the Court conditionally certified a Settlement Class defined as follows:

> All individuals who may have visited an Inova public facing website from April 29, 2022 through April 29, 2024 and had an Inova MyChart Account and whose Private Information could have been disclosed from the public facing websites to third parties through the Facebook or Google pixel and other related tracking technology without their authorization.

(Dkt. 56, ¶ 4.)

### B. The Settlement Fund and Settlement Payments

The proposed Settlement will establish a non-reversionary Settlement Fund of $3,147,390.04 (three million one hundred forty-seven thousand three hundred ninety dollars and four cents). (Ex. 1, ¶ 20(a).) Following the entry of the Court's order granting preliminary approval of the Settlement, Defendant created a Class List consisting of the names and email addresses for the identified Settlement Class Members. (Azari Decl., ¶ 22.) The Settlement Administrator then deduplicated the records, resulting in 817,199 unique Settlement Class Member records (of these, 4,847 records did not have a valid email address and were not sent Notice). (*Id.*) The Settlement Fund will be distributed directly to Settlement Class Members on a *pro rata* basis after deductions for the costs of settlement administration, a fee and expenses award, and a Service Award to Plaintiff. (Ex. 1, ¶ 31.) The Settlement Fund will be fully paid out with no amount reverting to Defendant. (*Id.* at ¶¶ 35–36.)

Checks sent to Settlement Class members will remain valid for 120 days from the date of their issuance. (Ex. 1, ¶ 35.) If administratively practical, the amount of any uncashed checks following expiration of the 120-day period will be redistributed to Settlement Class Members who cashed their checks. (*Id.*) Checks from any second distribution will remain valid for 60 days from

the date of their issuance. (Ex. 1, ¶ 35.) Any uncashed checks and/or unclaimed funds after the second distribution of checks (or following the first distribution if only one distribution is made) will be distributed to a *cy pres* recipient selected by the Parties and approved by the Court. (*Id.*)

### C. Additional, Non-Monetary Relief

In addition to monetary relief, without admitting any liability, Defendant has agreed to implement all remedial measures necessary to ensure its use of Tracking Pixels materially complies with the ECPA and the Health Insurance Accountability Act (HIPAA), provided that nothing shall limit its right to use such technologies consistent with that guidance or when otherwise authorized by patients, pursuant to a valid business associate agreement, or as otherwise permitted by the ECPA and HIPAA. (*Id*. at ¶ 37.)

### D. Notice and Settlement Administration

In accordance with Section XI of the Settlement Agreement and the Court's Preliminary Approval Order, notice of the proposed Settlement was sent by email to all Settlement Class Members with a valid email address. (Azari Decl., ¶ 23.)

The Notice included the following information: (1) a description of the class action and the proposed Settlement; (2) the rights of Settlement Class Members, including the rights to request exclusion from the Settlement Class, to object to the Settlement, and to file a claim form, and instructions about how to exercise those rights and all related deadlines; (3) specifics on the date, time, and place of the Final Approval Hearing; and (4) information regarding Class Counsel's anticipated fee petition and the anticipated request for the Class Representative's Service Award.

The Notice also included a link to the Settlement Website, www.HealthPixelSettlement.com, which included the following: (1) a more detailed Long Form Notice in English and Spanish as well as the Claim Form; (2) contact information for the

Settlement Administrator and Class Counsel; (3) important case documents, including the Settlement Agreement, the Court's Preliminary Approval Order, and Class Counsel's fee petition; (4) important case dates and deadlines, including the deadlines to file a claim, opt out, and object; and (5) the date, time, and location of the Final Approval Hearing.

### E. Release

In exchange for the monetary and non-monetary relief described above, the Settlement Class Members who did not exclude themselves from the Settlement will provide Defendant and its affiliated entities and other Released Parties a full release of all Released Claims (as more fully described in the Settlement Agreement), including any claim based upon, connected to, or related to the Pixel Disclosure or Defendant's use of Tracking Pixels, or that were or could have been asserted in the litigation. (Ex. 1, ¶¶ 13, 38–41.)

### F. Attorneys' Fees, Litigation Expenses, and a Service Award

The Settlement Agreement provided for Plaintiff to petition the Court for a Service Award. (*Id*. at § XVII.) Given the Plaintiff's significant role in prosecuting this action on behalf of the Settlement Class – which has included serving as the Class Representative, assisting in the pre-suit investigation, reviewing pleadings filed on his behalf, reviewing and executing the Settlement Agreement, and otherwise making himself available to Plaintiff's Counsel from this case's inception – and given the excellent result for the Settlement Class, Plaintiff has requested a Service Award in the amount of $5,000.

Class Counsel also petitioned the Court for an award of attorneys' fees and costs. (Dkts. 57, 58.) As addressed in Class Counsel's motion for approval of attorneys' fees and costs, in light of the extraordinary result obtained for the Settlement Class Members, the requested fee of 33% of the total Settlement Fund, plus reimbursement of their litigation costs and expenses, is

appropriate to compensate Class Counsel here for the work they have performed in achieving the Settlement for the Settlement Class, as well as the work remaining to be performed in overseeing the full implementation and administration of the Settlement and assisting Settlement Class Members.

As explained in Plaintiff's motion for attorneys' fees, there was no clear sailing agreement with respect to the fee request. Further, the Notice informed the Settlement Class Members that Class Counsel would seek up to 33% of the Settlement Fund. There were no objections from the Settlement Class to either the requested fee award or Service Award. (Azari Decl., ¶ 31.)

## IV. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND WARRANTS FINAL APPROVAL.

### A. The Standard for Assessing Whether the Settlement Is Fair, Reasonable, and Adequate.

Under Rule 23 of the Federal Rules of Civil Procedure, a class action should be approved if the court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Courts in the Fourth Circuit have recognized a strong policy favoring settlements, especially in class action cases. *See Scott v. Fam. Dollar Stores, Inc.*, No. 08-cv-00540, 2018 WL 1321048, at *3 (W.D.N.C. Mar. 14, 2018) ("There is a strong judicial policy in favor of settlements, particularly in the class action context"); *Robinson v. Carolina First Bank NA*, No. 18-cv-02927, 2019 WL 719031, at *8 (D.S.C. Feb. 14, 2019) ("There is a strong judicial policy in favor of settlement to conserve scarce resources that would otherwise be devoted to protracted litigation") (citing *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158–59 (4th Cir. 1991)); *Haney v. Genworth Life Ins. Co.*, No. 22-cv-55, 2023 WL 2213420, at *2 (E.D. Va. Jan. 6, 2023) (same).

Rule 23(e)(2) provides that in determining whether a settlement is "fair, reasonable, and adequate," the Court must consider whether:

(A) the class representatives and class counsel have adequately represented the class;

> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

In addition to the foregoing, when determining the fairness of a settlement, the Fourth Circuit has specified the following criteria be considered: "(1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel." *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, No. 18-mn-2873, 2024 WL 1341122, at *9 (D.S.C. Mar. 29, 2024) (citing *In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 952 F.3d 471, 484 (4th Cir. 2020)); *Jiffy Lube*, 927 F.2d at 158–59. Similarly, the Fourth Circuit has articulated the following factors when determining the adequacy of a settlement: "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *Id.*; *Jiffy Lube*, 927 F.2d at 158–59. These factors overlap with Rule 23(e)'s considerations.

**B. The Settlement Class Was Adequately Represented.**

The Court must weigh if "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). "[T]he adequacy requirement is met when: (1) the named plaintiff does not have interests antagonistic to those of the class; and (2) plaintiff's

attorneys are qualified, experienced, and generally able to conduct the litigation." *Brown v. Transurban USA, Inc.*, 318 F.R.D. 560, 567 (E.D. Va. 2016) (citation omitted).

Here, the Class Representative is adequate. He has no conflicts with other Settlement Class Members and has vigorously and competently represented the Class thus far in this litigation. Indeed, Plaintiff's interests are identical to the interests of the other Settlement Class Members, as it is alleged that they all had Personal Information disclosed to third parties through the Facebook or Google pixel without their authorization, and they all seek to recover damages related to the alleged disclosure.

Further, Class Counsel are highly experienced in litigation complex class actions and have adequately represented the Settlement Class. They have been appointed as class counsel in scores of complex class actions, including many privacy statute-related class actions, in state and federal courts across the country. (Declaration of Eugene Turin, attached hereto as Exhibit 4, "Turin Decl.," ¶¶ 2, 3). This experience enabled Class Counsel to provide excellent representation in prosecuting claims and negotiating on behalf of the Class. Class Counsel's substantial experience with complex class actions generally, and in data privacy litigation in particular, helped guide the negotiations that resulted in this Settlement. *See Lumber Liquidators*, 952 F.3d at 485 (finding counsel's experience in complex civil litigation supported fairness of settlement). Accordingly, this factor weighs in favor of final approval.

### C. The Settlement Is Procedurally Fair.

The procedural fairness analysis under *Jiffy Lube* is intended to confirm that a settlement was "reached as a result of good-faith bargaining at arm's length, without collusion..." 927 F.2d at 159; *Haney*, 2023 WL 2596845, at *1 (same). Under *Jiffy Lube*, considering the posture of the case, the extent of discovery, and the circumstances surrounding the negotiations "allows the Court

to determine whether the case has progressed far enough to dispel any wariness of possible collusion among the settling parties." *Brown*, 318 F.R.D. at 571 (E.D. Va. 2016) (citation and internal quotation marks omitted). It also "enables the [c]ourt to ensure that the case is well-enough developed for [c]lass [c]ounsel and [the class representative] alike to appreciate the full landscape of their case when agreeing to enter into th[e] [s]ettlement." *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 254 (E.D. Va. 2009). These factors overlap with Rule 23(e)(2)(B)'s consideration of whether the settlement was negotiated at arm's length. *See Donaldson v. Primary Residential Mortg., Inc.*, No. 19-cv-1175, 2021 WL 2187013, at *4–5 (D. Md. May 28, 2021). Under these criteria, the assistance of an experienced, neutral mediator weighs in favor of the reasonableness of the settlement. *See Lewis v. Precision Concepts Grp. LLC*, No. 18-cv-64, 2021 WL 7185505, at *3 (M.D.N.C. Mar. 23, 2021) (finding the participation of a neutral mediator supported a finding of the settlement being procedurally fair).

Here, the Court can safely conclude this Settlement was procedurally fair and negotiated at arm's length, without collusion, based on the terms of the Settlement itself; the adversarial nature of the negotiations; and the involvement of an experienced mediator. The Settlement Agreement that was preliminarily approved by this Court was negotiated by counsel following a full year of contested litigation regarding the merits of Plaintiff's claims and after the Parties briefed and argued a motion to dismiss, which was granted in part by this Court. *See In re NeuStar, Inc. Sec. Litig.*, No. 14–cv 885, 2015 WL 5674798, at *10 (E.D. Va. Sept. 23, 2015) (adversarial encounters support a finding of arm's-length negotiations). Following the Court's decision on Defendant's motion to dismiss, the Parties engaged in a full-day mediation session with Bruce Friedman of JAMS, a highly-experienced neutral. For the next several months – into October 2025 – the Parties continued to negotiate the contours of the instant Settlement, including the appropriate relief to be

provided to the Settlement Class Members, as well as the scope of the release and details about the notice to be provided to the Settlement Class Members. These efforts were at arm's length and non-collusive. Moreover, the attorneys' fees were negotiated separately after relief to the class was determined, there is no "clear sailing" provision, and under no circumstances will any amount of the Settlement Fund revert to Defendant, demonstrating that the Settlement Agreement lacked any collusion between the Parties.

Prior to mediation, Counsel conducted extensive factual investigation, including forensic analysis of Defendant's public-facing websites, to determine whether internet communications disclosed protected Private Information and violated the privacy rights of Plaintiff and the Class. Information was also disclosed prior to and during the mediation, including data bearing on the merits of Plaintiff's claims and the size of the class. (Turin Decl., ¶ 8.) Thus, during negotiations, Class Counsel – attorneys with considerable experience in prosecuting privacy class actions – were well-informed about the strengths and risks of Plaintiff's claims, as well as their value. Therefore, the Parties exchanged sufficient information over the course of the litigation and mediation process to ensure that both sides were making an informed decision regarding the adequacy of the Settlement Agreement. Accordingly, this factor also supports final approval of the Settlement.

**D. The Settlement Is Substantively Fair, Reasonable, and Adequate.**

The relief offered to Settlement Class Members in the proposed Settlement is more than adequate under the factors outlined in Rule 23(e)(2) (C)-(D) and *Jiffy Lube*.

1. <u>The Settlement Provides Meaningful Relief to the Settlement Class.</u>

When determining if the relief provided for the Settlement Class is adequate, courts must consider "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). These factors are informed by the factors espoused in *Jiffy Lube*. Here, all factors weigh in favor of final approval.

i. *The Merits of Plaintiff's Case Balanced Against the Terms of the Settlement, and the Costs, Risks, and Delays of Continued Litigation Through Trial and Appeal.*

This is a complex class action that has been, and would continue to be, very costly to litigate through trial and any appeals. (Turin Decl., ¶ 8.) While Plaintiff is confident in the merits of his case, the number of complex issues involved in this case, which centers on a developing area of law (third-party tracking technology/pixel litigation), creates significant uncertainty. *See, e.g.*, *Sweat v. Houston Methodist Hospital*, No. H-24-775, 2025 WL 2697111 (S.D. Tex. Sep. 22, 2025) (granting summary judgment for the defendant in a tracking pixel ECPA class action). In the absence of settlement, the time and cost of continuing litigation would be immense: the Parties would engage in lengthy discovery, contested class certification briefing, and substantial dispositive motion practice. The Parties would then prepare and try the case, and regardless of the outcome of trial, one Party would likely notice an appeal to the Fourth Circuit. This process would be very costly and would take years to resolve, with no guarantee that the Class members would recover anything whatsoever.

Additionally, the risk of maintaining class status through trial in this case is significant. While, the Court has not yet determined whether the putative class is certifiable in this matter, briefing on the issue would be highly contentious. And, even if the Court were to certify the Class (and deny efforts to decertify it thereafter), Defendant would likely seek appellate review of this Court's decision, adding further delay. *See Robinson v. Nationstar Mortg. LLC*, No. 14-cv-03667, 2020 WL 8256177, at *4 (D. Md. Dec. 11, 2020), *aff'd sub nom. McAdams v. Robinson*, 26 F.4th

149 (4th Cir. 2022) (approving settlement as fair, reasonable, and adequate after consideration of risk of not maintaining class action status throughout trial).

In contrast, the Settlement provides immediate, certain, and substantial relief to the Settlement Class and eliminates many of the risks inherent in continued litigation. Each Settlement Class Members who submits a valid claim is entitled to a *pro rata* share of the $3,147,390.04 Net Settlement Fund. In addition to the monetary relief, the Settlement also includes valuable non-monetary relief—namely, that Defendant agrees to implement all remedial measures necessary to ensure its use of Tracking Pixels materially complies with the ECPA and HIPAA. (Ex. 1 ¶ 37.) Class Counsel believe this is an exceptional result for the Settlement Class and compares very favorably to class settlements in similar cases. (*See* Turin Decl., ¶¶ 8, 9); *see also Luna v. Yummy, LLC*, No. 23-cv-01784, 2024 WL 3554969, at *3 (D. Md. July 26, 2024) ("Counsel's opinion that the expense and potential duration of litigation weigh in favor of early settlement lends credence to a proposed settlement agreement"); *see also e.g., Reedy et. al v. Everlywell, Inc*., 1:24-cv-02713, Dkt. 38 (N.D. Ill. Apr. 30, 2025) (approving ECPA tracking pixel class action settlement that created a $5,000,000 common fund for approximately 2,000,000 class members); *Fiorentino v. FloSports, Inc*., Case No. 1:22-cv-11502 (D. Mass. Mar. 5, 2024) (approving tracking pixel privacy class action settlement that created a $2,625,000 common fund for approximately 639,000 class members); *Gregory v. Tubi, Inc*., No. 2024LA0000209 (Cir. Ct. Winnebago Cnty., Ill.) (approving data privacy class action settlement establishing $19.99 million fund for approximately 75 million class members); *Sellers, et al. v. Bleacher Report, Inc*., 2024-003537-CA-01, slip opinion (August 8, 2024) (granting final approval to $4,800,000 VPPA settlement yielding per settlement class member recoveries of $1.78); *Ade et al. v. Viki, Inc*., No. 3:23-cv-02161 (N.D.

Cal.) (approving tracking pixel privacy class action settlement that created a $7.8 million common fund for approximately 1,900,000 class members). Accordingly, this factor favors final approval.

ii. *Effectiveness of Any Proposed Method of Distributing Relief to the Class.*

Rule 23(e)(2)(C)(ii) requires that the "proposed method of distributing relief to the class" be "effective." Under the Settlement, any Settlement Class Member who submits a valid claim is entitled to a *pro rata* share of the Net Settlement Fund (*i.e*. the Settlement Fund less any court-approved attorneys' fees and expenses, service awards, and costs of settlement notice and administration). The claims process involves a simple and straightforward Claim Form, written in plain language (and provided in both English and Spanish) to encourage Settlement Class Members to file claims. The Claim Form is streamlined, requiring only the minimal information necessary to confirm the person is a member of the Settlement Class and to direct financial payments to Settlement Class Members without requiring the submission of additional documents. (*See* Ex. 1, Exhibit A.) Settlement Class Members are able to submit their Claim Forms online via the Settlement Website or by mail. (Azari Decl., ¶ 32.) With either method of filing a Claim Form, Settlement Class Members have the option of receiving a digital payment or a traditional paper check. (*Id*.) Thus, the methods of processing Claim Forms and distributing relief to Settlement Class Members are effective and non-burdensome. As such, this factor weighs in favor of final approval.

iii. *The Requested Attorneys' Fees and Costs are Reasonable, Reflective of the Quality of Counsel's Skills and Work, and In Line with Similar Awards Approved in the Fourth Circuit.*

As set forth in greater detail in Plaintiff's motion for attorneys' fees and expensese (Dkts. 57, 58), Class Counsel are seeking an award of attorneys' fees of 33% of the total Settlement Fund, or $1,038,638.71, plus reimbursement of their litigation costs and expenses. This fee and expense

request is reasonable compared to the benefits Class Counsel have achieved for Settlement Class Members, the experience and ability of Class Counsel, and is consistent with fees awarded in similar class litigation in the Fourth Circuit. *See, e.g., Moog v. The Christian Broadcasting Network, Inc*. 1:24-cv-00501-PTG, Dkt. 35, (E.D. Va. August 7, 2025) (Giles, J.) (awarding attorneys' fees of 33%, plus expenses, from a $4,000,000 common fund); *Six v. LoanCare, LLC*, No. 5:21-cv-00451, 2022 WL 16747291, at *8 (S.D.W. Va. Nov. 7, 2022) (awarding attorneys' fees of one-third of a $4,500,000 settlement, plus expenses); *Robinson v. Nationstar Mortg. LLC*, No. 8:14-cv-03667-TJS, 2020 WL 8256177, at *4 (D. Md. Dec. 11, 2020), *aff'd sub nom. McAdams v. Robinson*, 26 F.4th 149 (4th Cir. 2022) (awarding attorneys' fees of $1,300,000, or 43%, of a $3 million settlement); *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 483 (D. Md. 2014) (awarding attorneys' fees of one-third of a $3,050,000 settlement, plus expenses); *see also Kirkpatrick v. Cardinal Innovations Healthcare Sols.*, 352 F. Supp. 3d 499, 505 (M.D.N.C. 2018) ("The requested 33.39 percent award is within the range of percentages that have been approved in other cases in this circuit"). Similarly, the service award in the amount of $5,000 for serving as the Class Representative is both reasonable and consistent with similar awards approved in the Fourth Circuit. (*See* Dkt. 58 at 16.)

iv. *There Is No Agreement Required to Be Identified under Rule 23(e)(3).*

Rule 23(e) mandates that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal," and that the Court must then take into account any such agreements when determining whether the relief provided in the settlement is adequate. *See* Fed. R. Civ. P. 23(e)(2)–(3). The Parties here have not made any agreement in connection with this proposal, other than what is set forth in the Settlement Agreement.

v. *Defendant's Financial Condition is Adequate.*

Defendant is a solvent company, and there is no indication that it will be unable to pay or will incur undue hardship because of the Settlement. Nonetheless, there was no guarantee that Defendant would be able to satisfy any judgment entered in his case. Thus, consideration of Defendant's financial condition weighs in favor or is neutral to the fairness analysis.

2. <u>The Settlement Treats All Settlement Class Members Equitably.</u>

The Settlement treats all Settlement Class Members equitably relative to each other. Each Settlement Class Member has an identical ECPA claim against Defendant, which is why they have received and will continue to receive identical treatment under the Settlement. Specifically, the Settlement provides Class members with the same notice and an opportunity to file a Claim Form to receive an identical *pro rata* share of the Net Settlement Fund. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999) (where class members are similarly situated with similar claims, equitable treatment is "assured by straightforward pro rata distribution of the limited fund"). Because there is no disparate treatment between members, this factor also favors final approval.

3. <u>The Reaction of the Settlement Class Supports Final Approval.</u>

The Court-approved Notice Program was implemented, and the objection and exclusion deadlines have passed without a single person objecting to the Settlement, and only 17 Settlement Class Members electing exclusion.[7] (Azari Decl., ¶ 31.) The lack of opposition to the Settlement further weighs in favor of final approval. *See Mills*, 265 F.R.D. at 257 ("[A]n absence of objections and a small number of opt-outs weighs significantly in favor of the settlement's adequacy.").

[7] An exclusion report is attached to the Azari Decl., Attachment 7.

## V. FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE AND WARRANTED.

In its Preliminary Approval Order, the Court previously determined that certification of the action for settlement purposes is appropriate. Specifically, the Court found that the Settlement Class preliminarily satisfied each of the requirements of Federal Rule of Civil Procedure 23(a) and (b)(3) in that "the Class is so numerous that joinder of all Class Members is impracticable; Plaintiff's claims are typical of the Class's claims; there are questions of law and fact common to the Class, which predominate over questions affecting only individual Class members; and class certification is superior to other available methods for the fair and efficient adjudication of the controversy." (Dkt. 55, ¶ 4.) The Court also found "that the Plaintiff and Class Counsel have and will fairly and adequately represent and protect the interests of the absent members of the Settlement Class in accordance with Rule 23 of the Federal Rules of Civil Procedure." (Dkt. 55, ¶ 7.) For these same reasons, this Court should finally certify the Settlement Class for settlement purposes.

## VI. THE METHOD AND FORM OF CLASS NOTICE SATISFIES RULE 23(e).

FRCP 23(e) requires that notice of a proposed class settlement be given to all members of the class in such manner as the court directs. Generally, notice need only be "reasonably calculated, under the circumstances, to apprise the Settlement Class Members: (1) of the pendency of the Lawsuit; (2) of their right to exclude themselves from the Settlement Class and the proposed settlement; (3) that any judgment, whether favorable or not, will bind all Settlement Class Members who do not request exclusion; and (4) that any Settlement Class Member who does not request exclusion may object to the settlement and, if he or she desires, enter an appearance personally or through counsel." *Truesdale v. Nationwide Affinity Ins. Co. of Am.*, No. 11-cv-467,

2012 WL 12892879, at *6 (M.D.N.C. Oct. 19, 2012); *see also Stark v. Blue Cross & Blue Shield of N. Carolina*, 740 F. Supp. 3d 441, 444 (M.D.N.C. 2024).

Here, notice was accomplished through direct email notice to all Settlement Class Members via their last known email address; the establishment of a Settlement Website where Settlement Class Members can view important information and documents regarding the Settlement and file a Claim Form; and the establishment of a toll-free number where Settlement Class Members can contact the Court-approved Settlement Administrator and obtain additional information. (*See* Azari Decl. generally); (*see also* Ex. 1, §§ VI, XI.) Based on this Notice Program, it is estimated that notice successfully reached approximately 92.8% of Settlement Class Members, which far exceeds the range deemed reasonable by the Federal Judicial Center. (*See* Azari Decl., ¶ 27); *see also* Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*, at 3 (describing a notice plan as "reasonable" if it has a "reach between 70-95%").

Moreover, the content of the notices sufficiently advised Settlement Class Members of the essential terms of the Settlement; the rights of Settlement Class Members to share in the recovery, to request exclusion from the Settlement Class, or to object to the Settlement; and the date, time, and place of the final approval hearing. (Ex. 1, Exhibits B, C.) Thus, the notices provided the necessary information for Settlement Class Members to make an informed decision regarding the proposed Settlement. The notices also contained information regarding Class Counsel's application for attorneys' fees and reimbursement of litigation expenses, the proposed plan for allocating the Settlement proceeds among Settlement Class Members, and the application for a Service Award to the Settlement Class Representative.

In short, the form and manner of Notice Program fulfill the requirements of FRCP 23 and due process and favor final approval.[8]

## VII. CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that the Court enter an Order: (i) finding that the Settlement is fair, reasonable, and adequate; (ii) granting final approval of the Settlement; and (iii) approving Plaintiff's requested attorneys' fees, reimbursement of litigation costs and expenses, and Service Award.

Dated: April 6, 2026

Respectfully submitted,

PEDRO LUGO, individually and on behalf of similarly situated individuals

By: /s/ *Kyle McNew*
*One of Plaintiff's Attorneys*

Eugene Y. Turin (*pro hac vice*)
Jordan R. Frysinger (*pro hac vice*)
William Kingston (*pro hac vice*)
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Floor
Chicago, IL 60601
Tel: (312) 893-7002
eturin@mcgpc.com
jfrysinger@mcgpc.com
wkingston@mcgpc.com

*Counsel for Plaintiff and Class Counsel*

Kyle McNew (Va. Bar # 73210)
MICHIE HAMLETT PLLC
310 4th St. NE
Charlottesville, VA 22902
T: (434) 951-7234
F: (434) 951-7254
kmcnew@michiehamlett.com

[8] On October 27, 2025, CAFA notice was timely sent out. (Azari Decl., ¶ 19.)

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that on April 6, 2026, a copy of the foregoing *Plaintiff's Unopposed Memorandum of Law in Support of Final Approval of Class Action Settlement* was filed electronically with the Clerk of Court, with a copy sent by electronic mail to all counsel of record.

/s/ *Kyle McNew*